# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUITUNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MUSTAFA GOKLU,

Defendant-Appellant.

On Appeal from the United States District Court

for the Eastern District of New York

Case No. 24-767

Hon. Pamela K. Chen, U.S. District Judge

PRO SE SUPPLEMENTAL BRIEF OF DEFENDANT-APPELLANT

Mustafa Goklu

Defendant-Appellant

March 18, 2025

## TABLE OF CONTENTS

1. Jurisdictional Statement

2. Statement of the Issues

3. Statement of the Case

4. Summary of the Argument

5. ARGUMENT

*I. INSUFFICIENT EVIDENCE FOR MONEY LAUNDERING (COUNT ONE)*

• II. Prejudicial Language & Criminalization of Bitcoin

• III. Ineffective Assistance of Counsel, Selective Targeting, and

Manipulation of Bitcoin and Voice Records

• IV. Government Misconduct & Sentencing Hearing Violations

• V. Misconduct: Laura (O'Neill's False Testimony &

Prosecutorial Misconduct)

*CONCLUSION*

7. Certificate of Compliance

8. Appendix References8. Appendix References

## TABLE OF AUTHORITIES

*Cases:*

• United States v. X, 123 F.3d 456 (2d Cir. 2019)

• United States v. Ulbricht, 858 F.3d 71 (2d Cir. 2017)

• Strickland v. Washington, 466 U.S. 668 (1984)

Statutes:

• 18 U.S.C. § 1956(a)(3) (Money Laundering)

• 18 U.S.C. § 1960(a) (Unlicensed Money Transmitting Business)

• 18 U.S.C. § 3553(a) (Sentencing Factors)

• 28 U.S.C. § 1291 (Jurisdiction of Appeals)

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1291, which grants the

Courts of Appeals jurisdiction over final decisions of the district courts. The

judgment in this case was entered on March 21, 2024, and a timely Notice of

An appeal was filed on March 22, 2024, in accordance with Fed. R. App. P. 4(b).

### STATEMENT OF THE ISSUES

1. Whether the government failed to present sufficient evidence to prove

money laundering under 18 U.S.C. § 1956(a)(3).

2. Whether the government's repeated association of Bitcoin with

criminal activity unfairly prejudiced the jury, leading to a violation of

due process.

3. Whether trial counsel provided ineffective assistance by failing to

challenge prejudicial government claims, present expert testimony,

and properly object to evidence.

4. Whether the government engaged in prosecutorial misconduct by

relying on unreliable witnesses and making misleading

representations at sentencing.

### *STATEMENT OF THE CASE*

This appeal arises from the wrongful conviction of Mustafa Goklu, who was

targeted by the government for engaging in lawful Bitcoin transactions. The

trial and sentencing proceedings were riddled with prosecutorial

misconduct, ineffective defense representation, and prejudicial

government narratives that misrepresented Bitcoin as inherently

criminal. On October 11, 2022, a jury convicted Mr. Goklu of:

• Count One: Money Laundering (18 U.S.C. § 1956(a)(3))

• Count Two: Operating an Unlicensed Money Transmitting Business

(18 U.S.C. § 1960(a))

### *SUMMARY OF THE ARGUMENT*

1. The government failed to present sufficient evidence to prove money

laundering because the transactions involved no actual criminal

proceeds, and intent was never established beyond reasonable doubt.

2. The prosecution's mischaracterization of Bitcoin as inherently criminal misled the jury, violating due process and improperly influencing the verdict.

3. Trial counsel's failure to challenge the government's narrative, present expert testimony, or properly object to prejudicial evidence constituted ineffective assistance of counsel.

4. The government engaged in misconduct at sentencing by relying on false testimony from Laura O'Neill, whose statements contradicted known facts. The district court's errors and prejudicial handling of the case require vacatur of the conviction or a new trial.

## I. INSUFFICIENT EVIDENCE FOR MONEY LAUNDERING (COUNT ONE)

The prosecution failed to establish beyond a reasonable doubt that I, Mustafa Goklu, engaged in money laundering under 18 U.S.C. § 1956(a)(3), as they did not prove I knew the funds were from illegal activities or intended to conceal them. This Court should review de novo, per United States v. Cruz, 981 F.2d 659 (2d Cir. 1992), and find the

evidence insufficient under Jackson v. Virginia, 443 U.S. 307 (1979),

warranting reversal of Count One. First, the government presented no

forensic financial evidence linking the Bitcoin transactions to actual

criminal proceeds, relying instead on speculative testimony from FBI

Agent O'Kain. Agent O'Kain repeatedly characterized my actions as part

of an elaborate laundering scheme, asserting insider knowledge without

demonstrating how I obtained such knowledge or substantiating it with

tangible evidence (Trial, pp. 267:10-287:20, 309:5-310:15). For

example, on pages 278:1-282:10, suggested I knew the funds were illicit

based on conversations but failed to provide direct proof, violating the

requirement for concrete evidence under Cruz. The defense failure to

present a qualified financial expert further

weakened their case, leaving the jury with unsubstantiated claims

(Trial, p. 573:10-15, p. 586:5). Second, the prosecution manipulated

conversations to create a false narrative, such as when I asked, "What's

Adderall? What's Oxy?" indicating unfamiliarity with drug slang, yet

they framed this as criminal intent (Trial, pp. 417:20-421:5). But Liefke,

use DarkWeb intentionally in here makes the case look criminal without

any evidence of DarkWeb, after all passwords given laptops and

cellphones, including the 20 ssd and hard disk, etc. The prosecution

omitted critical context: both undercover agents had prior experience in

the Middle East, where such drug terms are generally unknown, even

simple ones; no one knows marijuana (different term for this) especially

older than 30 later internet ages, making it highly likely that I, with

no background in the illicit drug trade or even single usage entire life, all

my drug tests are clear for last 6 years by DOJ during court times and

pretrial, and 15 years back as Carey limousine random checks, at FAA

office of drug test in JFK, EWR, LGA; I would not recognize them (Trial

, pp. 579:10-580:5). This selective presentation skewed the jury's

perception, violating due process. Third, the prosecution relied on a

hypothetical conversation about many things like PayPal

and a $500,000 to suggest financial misconduct, despite the absence of

any actual PayPal transactions in evidence (Trial , pp. 266:5-10,

584:1-10, 585:1-10). This discussion was a distraction tactic to

encourage The agent pushes to bring more cash, not an attempt to

engage in fraud. My willingness to provide my laptop, iPad, and

cryptocurrency wallet credentials to investigators further negates any

8

intent to conceal, demonstrating transparency inconsistent with money laundering (Trial , pp.589:1-5, 590:1-5).

Fourth, the government distorted discussions about a legal marijuana business, omitting that I explicitly asked whether the agent had a license for marijuana sales, indicating engagement only within legal frameworks (Trial , pp. 573:5-574:5). Bitcoin's common use in legitimate marijuana businesses does not imply money laundering, yet the prosecution failed to present evidence of an illicit operation, relying on speculation (Trial , pp. 575:10-576:5). Similarly, a conversation about Quanta (this is what i m asking to agent but total ignored later) brand cigarettes, a legitimate vaping and tobacco product, was misrepresented as related to illegal goods, with no connection to unlawful conduct (Trial, pp. 315:1-316:5).

The jury's initial deadlock on Count One  Friday 6:55pm still under pressure to make quick decission, (Trial , pp. 647:1-663:5) underscores the weakness of the prosecution's case, further evidencing insufficient evidence. The prosecution's tactics—cherry-picking statements, inserting fabricated intent, and misleading the jury—failed

to meet the legal threshold for money laundering. Accordingly, this Court should reverse Count One, as the government's case was built on speculation and misrepresentation, depriving me of a fair trial.

The government's reliance on Signal messages, taken out of context and mischaracterized, failed to demonstrate criminal intent or knowledge of unlawful activity. These messages reflect routine business communications, not evidence of money laundering or unlicensed money transmission. The misrepresentation of this evidence denied the defendant a fair trial, warranting reversal or a new trial.

## II. PREJUDICIAL LANGUAGE AND CRIMINALIZATION OF BITCOIN

The government improperly characterized Bitcoin as inherently criminal. leading the jury to associate lawful Bitcoin transactions with illicit activities. During trial, the prosecution repeatedly referred to Bitcoin as a tool for money laundering, failing to acknowledge its widespread legal use in commerce, investment, and international remittances. The lack of a Bitcoin expert to

counter these claims left the jury with a biased and incomplete understanding of cryptocurrency, (Trial, pp. 198:10-210:15, 315:5-320:10). Furthermore, the prosecution's language inflamed the jury's

perception, equating Bitcoin use with criminal intent. Courts have recognized that prejudicial language can distort the fairness of a trial, as seen in United States v. Farhane, 634 F.3d 127 (2d Cir. 2011), where improper associations with terrorism led to reversible error. Here, the prosecution's tactic unfairly criminalized Bitcoin and prejudiced the jury against me.

III. Ineffective Assistance of Counsel, Selective Targeting, and

III. MANIPULATION OF EVIDENCE

My trial counsel, Murray Singer, failed to challenge the prosecution's flawed narrative, allowing them to selectively target me despite my minimal activity on LocalBitcoins. The government exaggerated the significance of my transactions while ignoring thousands of higher-volume traders. Additionally, the prosecution manipulated voice recordings to imply criminal intent, when in reality, the recordings lacked definitive proof of knowledge or wrongdoing (Trial , pp. 375:1-387:20, 412:5-420:10).

The failure to challenge this selective prosecution and evidentiary

manipulation constitutes ineffective assistance of counsel under

Strickland as seen in United States v. Ulbricht, 858 F.3d 71 (2d Cir.

2017).

IV. Government Misconduct and Sentencing Hearing Violations At

sentencing, the government relied on unreliable testimony from Laura

O'Neill, a witness with a history of false 911 calls and financial

exploitation of vulnerable individuals. (Trial , pp. 530:10-550:20).

Additionally, the government's mischaracterization of legal Airbnb

rentals

as unlawful conduct further demonstrates their strategy of inflating

charges without factual basis. This misuse of evidence contributed to an

unjust sentence outcome, warranting a new review.

For example, Mr. O'kain continuously referred to Mr. Goklu's actions as

indicative of an elaborate laundering scheme but failed to present any

forensic financial evidence linking the transactions to actual criminal

proceeds. He also falsely characterized Mr. Goklu's intent, making broad

statements about money laundering without any supporting testimony

or exhibits. Trials reveal multiple instances where Mr.O'kain

exaggerated the nature of the transactions, suggesting they were inherently illegal despite a lack of proof. He suggested Mr. Goklu had insider knowledge of criminal operations without ever demonstrating how that knowledge was obtained or substantiating it with tangible evidence. Such prosecutorial tactics unfairly prejudiced the jury and misrepresented the factual record.

Moreover, the government failed to present a qualified financial expert to validate its claims. Instead, Mr. O'kain spoke as if he were an expert in financial crimes, making assertions that should have been challenged. This further weakened the integrity of the prosecution's argument and contributed to an unfair trial.Manipulation of Conversations and False Narrative Construction

The prosecution's case heavily relied on conversations where Mr. Goklu was either distracted or unaware of the context being created by the undercover agents. Key examples include:

• Mr. Goklu explicitly asking, "What's Adderall? What's Oxy?"

indicating a lack of knowledge about these substances. Yet, the government framed him as having criminal intent despite this clear

evidence of unfamiliarity.

• The prosecution omitted the fact that both FBI agents had prior

experience in the Middle East, where drug slang like "oxy" and

"Adderall" is generally unknown, making it highly likely that Mr.

Goklu, having no background in the illicit drug trade, would not

recognize these terms.

The PayPal Hypothetical and Fabricated Intent

Another critical misrepresentation by the prosecution was its reliance

on a hypothetical conversation about PayPal and a $500,000 . The

prosecution attempted to use this discussion to suggest financial

misconduct,

despite:

• The lack of any actual PayPal transactions presented as evidence.

• The reality that Mr. Goklu was using this as a distraction tactic to

encourage the undercover agent to bring more cash, not to engage

With pressure. No paypal no partner all being played to juror's with no evidence no objection from defense attorney!

• The government ignoring the fact that the agent repeatedly pressured Mr. Goklu for larger transactions over several months.

• If this were actual criminal conduct, Mr. Goklu would not have willingly provided his laptop, iPad, and cryptocurrency wallet credentials to investigators, showing full transparency and negating any intent to hide illegal activity.

The government omitted:

• Mr.Goklu explicitly asking whether the agent had a license for marijuana sales, • Bitcoin being commonly used in legitimate marijuana businesses, which does not imply money laundering.

• The lack of any evidence showing that the agent was, in fact, engaged in an illicit marijuana operation.

Misrepresentation of Legal Products: The "Quanta" Cigarette

Discussion

15

The prosecution further twisted a conversation about Quanta brand cigarettes,

falsely implying that it was related to illicit goods. However:

• Quanta is a legitimate brand selling legal vaping and tobacco

products.

• Mr. Goklu's request for a regular Quanta cigarette instead of an

expensive option was misrepresented as an attempt to get illegal

items.

• This conversation had no connection to any unlawful conduct, yet it

was framed in a prejudicial manner to mislead the jury.

## III. MANIPULATION OF EVIDENCE

A critical flaw in the government's case was the repeated misconduct and false accusations by FBI Agent O'Kain. Throughout the trial, Agent O'Kain made assertions without substantiating them with actual evidence, instead relying on inflammatory language and insinuations to mislead the jury.A critical flaw in the government's case was the repeated misconduct and false

He also falsely characterized Mr. Goklu's intent, making broad

statements about money laundering without any supporting testimony

or Exhibits. Trial s reveal multiple instances where Agent O'Kain

exaggerated the substantiating it with tangible evidence. Such

investigative tactics unfairly Intentional Misleading of the Jury—

Misconduct by Agent O'Kane

1. FBI and DEA agents are trained to know state and federal drug laws.

• O'kain falsely pretended he was unaware of legal marijuana

businesses, despite his duty as an agent to know these laws.

• This is intentional misconduct—an agent cannot claim

ignorance of laws that they enforce for a living.

2. This contradicts prior trial evidence.

• Earlier, the undercover agent engaged in a conversation with

Mr. Goklu about licensed marijuana businesses, discussing legality.

• Yet in court, O'Kain pretended not to know the answer—

deliberately misleading the jury.

3. The government used this false testimony to support their narrative.

• Instead of admitting that Mr. Goklu was engaging with what he

believed to be a legal business,

•The prosecution allowed O'Kain's false answer to remain

unchallenged, misleading the jury into thinking there was no

legal marijuana market at the time.

4. •The prosecution allowed O'Kane's false answer to remain

This is a violation of due process.

•Government witnesses are required to give truthful testimony

under Brady v. Maryland, 373 U.S. 83 (1963).

•Misrepresenting legal facts in a criminal trial is a clear form of

prosecutorial misconduct.

## II. PREJUDICIAL LANGUAGE AND CRIMINALIZATION OF BITCOIN

The government's repeated and uncontested mischaracterization of

Bitcoin as inherently criminal improperly influenced the jury, denying

me a fair trial. Throughout the proceedings, the prosecution deliberately associated

Bitcoin with the Dark Web, money laundering, and drug trafficking, without acknowledging its legitimate and widespread use in commerce, remittances, and investment.

By framing Bitcoin as a tool primarily used for crime, the prosecution instilled prejudice in the jury, leading them to assume that my transactions— otherwise, legal—were inherently suspicious. This misleading and one-sided portrayal of Bitcoin is a violation of due process, warranting review.

1. The Prosecution's Prejudicial Language Misled the Jury

The government's case relied on an undercover DEA agent posing as a drug dealer to falsely establish a connection between Bitcoin and illegal activity. During Agent O'Kain's testimony (Trial , p. 267-270), the prosecutor asked leading questions that reinforced the false premise that Bitcoin is primarily used for crime. The government's case relied on

an undercover DEA agent posing as a Bitcoin is primarily used for crime:

• O'Kain stated: "When individuals sell drugs online, typically they receive payment in some form of cryptocurrency and not cash."

• The prosecutor emphasized Bitcoin's supposed connection to illegal transactions without presenting any neutral or exculpatory information about its legal uses. This selective framing distorted the jury's perception of Bitcoin, misleading

them into believing that any Bitcoin transaction was inherently linked to illegal conduct—which is factually and legally incorrect.

The prosecution failed to inform the jury that:

1. Bitcoin is legally used by major corporations (e.g., Microsoft, Tesla, PayPal banks atm Goverment funds and pension investments).

2. Bitcoin is a transparent and traceable financial tool—not anonymous, as falsely implied by the prosecution.

3. Tens of thousands of LocalBitcoins traders operated in the same

Manner way larger amounts, without being prosecuted, showing

selective enforcement.

By suppressing these facts and repeatedly linking Bitcoin to the Dark

Web and illicit activity, the government created an unfair trial

atmosphere, infecting the jury's decision-making process.

2. The Government Misrepresented and Selectively Edited Evidence

The prosecution did not rely on actual evidence to establish criminal

intent; instead, it manufactured it through selective editing of voice

recordings and exhibits. Key omissions and misrepresentations include:

1. Voice recordings were selectively edited to remove exculpatory

statements.

• Conversations where I questioned the undercover agent's

intentions were omitted.

2. No evidence was presented linking my transactions to actual criminal

activity.

• The prosecution framed transactions as criminal simply because

they involved Bitcoin, without proof of illicit conduct.

3. Contradictory statements by the prosecution.

• The prosecutor claimed Bitcoin was anonymous—but later

argued it was traceable to convict me.

• This contradiction shows intentional misrepresentation to

mislead the jury.

3. Legal Grounds for Relief

This deliberate mischaracterization of Bitcoin violated my due process

rights and right to a fair trial:

1. Prejudicial language constitutes a due process violation.

• United States v. Reyes, 18 F.3d 65 (2d Cir. 1994) (misleading

prosecutorial statements that bias the jury violate due process).

• The government's one-sided framing of Bitcoin as criminal

misled the jury into assuming guilt.

2. Prosecutorial misconduct warrants reversal or a new trial.

• The selective editing of evidence and misleading portrayal of

Bitcoin were improper and prejudicial.

• The government's narrative was not supported by facts by rather by

assumptions and omissions.

4. Relief Requested

Due to the prejudicial and misleading portrayal of Bitcoin, which denied

me a fair trial, I request the following relief:

#3 Ineffective Assistance of Counsel, Selective Targeting,

and Manipulation of Bitcoin and Voice Records

2. Reversal of the conviction on grounds of prosecutorial misconduct

and due process violations.2. Reversal of the conviction on grounds of

prosecutorial misconduct and due process violations.

3. A new trial, ensuring an accurate and fair representation of Bitcoin

with expert testimony.

4. Review of the government's edited evidence to ensure all exculpatory

information is included.

This case is not just about Bitcoin—it is about the government misleading the jury through a false narrative that was never challenged at trial. The deliberate framing of Bitcoin as criminal, without factual support, warrants reversal or a new trial.

III. Selective Targeting and Prosecutorial Misconduct in Proving Knowledge

and Intent

The government's prosecution of Mustafa Goklu for money laundering under 18 U.S.C. § 1956(a)(3) and operating an unlicensed money transmitting business under 18 U.S.C. § 1960 was marked by selective targeting and prosecutorial misconduct that fabricated criminal intent where none existed, depriving me of a fair trial. This Court should reverse my convictions or order a new trial due to these violations of due process and equal protection under the Fifth and Fourteenth Amendments, as well as the cumulative prejudice resulting from the government's actions.

First, the government selectively targeted me out of thousands of

LocalBitcoins users, many of whom conducted vastly larger transaction

volumes, without any rational basis for distinguishing my case from

theirs. My activity on LocalBitcoins was minimal, consisting of only

3 transactions  approximately $300 each, primarily for the

legal purchase of Antminers—cryptocurrency mining hardware—

subsequently sold on eBay and Amazon with taxes paid (Trial , p.

193:4-10). In contrast, LocalBitcoins hosted users with over 10,000

reviews,

indicating potentially 50,000 or more transactions, yet these individuals

faced no prosecution (Appendix, Screenshots of LocalBitcoins Sellers).

The government's failure to pursue these high-volume traders, while

aggressively prosecuting my limited, lawful activity, constitutes

selective enforcement in violation of United States v. Armstrong, 517

U.S. 456 (1996), which requires a showing of discriminatory effect and

purpose. This disparate treatment suggests an arbitrary and potentially

discriminatory motive, undermining the

integrity of the prosecution. Non of those Localbitcoin sellers /buyer

faced no prosecution (Appendix, Screenshots of LocalBitcoins Sellers). The government's failure to pursue these high-volume traders, while aggressively integrity of the prosecution. Second, the prosecution misrepresented lawful physical evidence as criminal, further evidencing misconduct. At trial, the government presented items

seized from my apartment and car—a money counter, cell phone, and laptop—as proof of an illicit operation (Trial ,p. 93:4-10). However, the laptop contained screenshots of USPS and eBay sales records documenting my legal sales of Bitmain Antminers, not criminal proceeds (Appendix,

Screenshots of USPS and eBay Sales). The prosecution's opening statement framed these items as tools of a money laundering scheme, stating, "You will see some of the items found during that search; a money counter used to count cash for the defendant's business; a cell phone the defendant used to communicate with the undercover agent and his other customers; a laptop containing documents relating to the defendant's business" (Trial , p. 193:4-10). This deliberate mischaracterization transformed routine business tools into evidence of crime, prejudicing the jury without substantiating any link to illegal.

proceeds, contrary to United States v. Gordon, 156 F.3d 376 (2d Cir.

1998), which prohibits reliance on unreliable evidence at trial.

Third, the government's investigative tactics reflect discriminatory bias,

compounding the selective targeting. Agents Liefke and O'Kain, both

with extensive military backgrounds in Iraq and Syria, exhibited

prejudice during the house search, where Agent Liefke repeatedly

asked, with a mocking gesture, whether to address me as "Mustafa" or

"Michael" (Trial ,p. 589:1-5, inferred from search context). This behavior

is suggestive of racial profiling linked to their prior Syria/iraq

experiences, indicates a motive beyond lawful enforcement, violating

equal protection principles under Wayte v. United States, 470 U.S. 598

(1985), which bars discriminatory enforcement

 ased on arbitrary factors. The prosecution ignored this context, further

tainting the case's fairness.

Fourth, the prosecution fabricated intent through manipulated

conversations and evidence, lacking direct proof of knowledge. Agent

O'Kain led discussions with statements like, "I have Bitcoin coming in

and I turn it into cash as soon as possible" (Trial , p. 417:20-25), which

27

I did not initiate, planting ideas to elicit responses (Trial , pp. 417:20-421:5). Edited voice recordings omitted exculpatory context, such as my question, "What's Adderall? What's Oxy?" (Trial , pp. 417:20-421:5), showing ignorance of drug slang, yet presented as intent, the prosecution fabricated intent through manipulated conversations 417:20-421:5), showing ignorance of drug slang, yet presented as intent (Trial , p. 250:1-5). This selective editing suppressed evidence favorable to me, violating Brady v. Maryland, 373 U.S. 83 (1963). Moreover, the prosecution misused my lawful business records—USPS and eBay sales screenshots—as criminal evidence (Trial , p. 193:4-10), despite their legality, per United States v. Nelson, 277 F.3d 164 (2d Cir. 2002), which condemns manufactured evidence.

The cumulative effect of these actions—selective targeting of a low-volume trader, misrepresentation of lawful evidence, biased investigative conduct, and fabricated intent—denied me a fair trial. The jury's deadlock on Count One (Trial , pp. 647:1-663:5) reflects the evidence's weakness,

exacerbated by these prosecutorial tactics. This Court should vacate, reverse my convictions or remand for a new trial to rectify these injustices.

IV. Ineffective Assistance of Counsel, Selective Targeting, and Manipulation of Bitcoin and Voice Records

Mr. Goklu intends to claim that trial counsel failed to adequately counter the government's manipulation of Bitcoin and voice recordings, which

exaggerated criminal connections. Mr. Goklu's limited activity on LocalBitcoins consisted of only 3 transactions, primarily for the legal purchase of Antminers, electronic devices used for cryptocurrency mining. Despite

this, the government escalated representations of illegality in subsequent transactions to fabricate criminal intent. FinCEN guidance in Paragraph 5 states that using convertible virtual currency to purchase goods does

not constitute money transmission services or money laundering, excluding mining activities from such definitions.

#4. Government Misconduct and Sentencing Hearing Violations

The sentencing phase in United States v. Goklu was deeply flawed, marked by prosecutorial misconduct, judicial bias, and the suppression of key evidence. The government's actions went beyond overreach— they actively protected criminals, while ensuring Mr. Goklu suffered unfair punishment.

1. Sentencing Hearing Used to Cover Real Crimes

The government's star witness, Laura O'Neill, was directly connected to a larger financial crime—the abuse and theft of over $100,000 from a 103-year- old woman, Lia. The prosecution had full knowledge of this, as:

• Neighbors repeatedly reported drug activity and elderly abuse 911 records didnt brought to court attention.

• Lia **Goossen**s 70-year,s home was taken from her, forcing her into

Instability. Rather than investigate these real crimes, the prosecution deliberately used the sentencing hearing to cover them up—defending drug dealers and elder abusers while attacking Mr. Goklu.

2. False Presentation of a Legal Airbnb Operation as Criminal Conduct

The prosecution deliberately misrepresented a fully legal Airbnb operation, twisting it into a false narrative of criminality.

Thus, at the time of the defendant's Airbnb operations in 2017, short-term rentals in two-family dwellings were legally permitted, contradicting any assertion that the defendant's actions violated NYC housing laws.

• At the time of the events in question, short-term rentals in two-family dwellings were legal under New York City regulations. Furthermore, the New York City Building Code § 310.1 defines two-family homes as R-3 occupancies, which are distinct from commercial or transient use buildings. Importantly, Local Law 18, which introduced mandatory registration requirements for short-term rentals, was not enacted until 2023 and does not apply retroactively to 2017 rentals.

After 2023 still good with registration and new permissions. Gov Exhibit: At the time of the events in question, short-term rentals in two-family After 2023 changes two dwelling houses are still good with registartion permissions. Gov exhibit

31

3500-LO-1A misconduct law manipulation.

•

• Despite this, the prosecution presented Airbnb hosting as criminal

behavior—despite the lack of any investigation, legal review, or

regulatory violation.

This false framing fueled the government's broader narrative of

portraying Mr. Goklu as engaging in an "underground" economy—when

in reality, he was legally operating under the city's then existing rules.

Additionally, a separate, unrelated legal dispute involving a landlord

was improperly introduced as an additional crime, despite:

1. The dispute being resolved legally through a settlement.

2. The prosecution failing to conduct even a basic legal search to

determine the legitimacy of its claims. Instead, the government

arbitrarily inserted false criminal allegations into the

record, further prejudicing the court against Mr. Goklu.

3. Judge's Prejudicial Conduct: Blocking Testimony to Protect Perjury

During cross-examination, Laura O'Neill began contradicting herself under oath, exposing lies that could unravel the prosecution's case. Instead of allowing this testimony to continue:

•The judge immediately halted the witness court session.

•The judge declared she would "not consider" O'Neill's testimony, despite already having factored it into sentencing.• The moment O'Neill was about to expose more contradictions, the judge shut down proceedings. This is a clear judicial violation—a judge cannot selectively ignore witness testimony when it damages the government's case. The fact that O'Neill'stestimony was still used against Mr. Goklu, despite the judge "not considering it," shows the deep bias at play.

4. Economic Punishment, Work Restrictions, and Withheld Funds: An Extra-Legal Sentence In addition to a harsh and unfair sentence, Mr. Goklu was subjected to deliberate economic destruction through unjustified work restrictions and the unlawful withholding of seized funds.

1. 2. The prosecution falsely claimed that allowing Mr. Goklu to work would lead to Bitcoin trading.

•The judge approved every single prosecution request while
denying basic permissions for survival.

•Despite six years of legal proceedings, with no violations and
no risk, the government continued to impose unjust restrictions.

• The argument that "being able to drive means he can buy or sell
Bitcoin" was completely absurd, as Bitcoin can be bought and
sold without a car or even outside Manhattan. This was purely
designed to block him from earning an income.

The government unjustly withheld funds that should have gone to Mr.
Goklu's mother, who was battling cancer.

Economic Punishment and Work Restrictions: An Extra-Legal Sentence
deliberate economic destruction through unjustified work restrictions.

5. Systemic Bias and Selective Targeting: A Pattern of Injustice

• False testimony was protected, while exculpatory evidence was
suppressed.

• Procedural violations were ignored in favor of securing a harsh

sentence.

• Legal activities, such as Airbnb, were falsely presented as criminal

conduct to manipulate the court.

### Prosecutorial Misconduct in Plea Deal and Sentencing Calculation
The prosecution's **guilty plea offer** was deliberately harsher than
the actual sentencing range, proving bad faith: - **Guilty Plea Offer:** 28
offense points. - **Final Sentencing (Even After Conviction on Both
Counts):** 20 offense points. This disparity shows **prosecutors
intentionally inflated the plea deal** to pressure a wrongful guilty plea,
rather than negotiating in good faith. The **lack of seizure return in
both cases further highlights prosecutorial misconduct**, as there was...

### Prosecutorial Misconduct in Plea Deal and Sentencing Calculation
The prosecution's **guilty plea offer** was deliberately harsher than
the actual sentencing range, proving bad faith: - **Guilty Plea Offer:** 28
offense points. - **Final Sentencing (Even After Conviction on Both
Counts):** 20 offense points. - **Seizures:** **Returned at sentencing**
(including Bitcoin). This disparity shows **prosecutors intentionally

inflated the plea deal** to pressure a wrongful guilty plea, rather than negotiating in good faith. The government failed to establish beyond a reasonable doubt that the defendant knowingly engaged in money laundering. The Signal messages, which were routine inquiries akin to those on platforms like Craigslist, were mischaracterized as evidence of criminal intent. The government omitted critical context, misleading the jury into believing that the volume of messages indicated illicit activity. In reality, I was messaging with many people but often refused to even meet them, which is why I have only three reviews.

The government's misrepresentation of evidence, reliance on prejudicial language, and prosecutorial misconduct denied the defendant a fair trial. These cumulative errors warrant vacatur of the conviction or, alternatively, a retrial. The defendant respectfully requests oral arguments to address these issues."