# 24-767

*To Be Argued By*:
FRANCISCO J. NAVARRO

## United States Court of Appeals

### For the Second Circuit

❖ ❖ ❖

UNITED STATES OF AMERICA,

*Appellee,*

—against—

MUSTAFA GOKLU, also known as MUSTANGY,

*Defendant-Appellant.*

_____

**On Appeal From The United States District Court
For The Eastern District of New York**

## BRIEF AND APPENDIX FOR THE UNITED STATES

JOSEPH NOCELLA, JR.,
*United States Attorney*,
*Eastern District of New York*
271-A Cadman Plaza East
Brooklyn, New York 11201
(718) 254-7000

DYLAN A. STERN,
FRANCISCO J. NAVARRO,
*Assistant United States Attorneys*,
*Of Counsel.*

i

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ....................................................................... 3

    I.    The Superseding Indictment ..................................... 3

    II.   Trial ................................................................................. 3

         A.   Goklu's Bitcoin/Cash Exchange Business ...................... 3

         B.   Goklu Feared Police Scrutiny and Knew
              He Was Transacting with Drug Dealers ...................... 8

         C.   The UC Told Goklu He Was a Drug Dealer ................. 9

         D.   Goklu's Business Was Unlicensed ............................... 11

    III.  Conviction and Sentencing ........................................ 12

ARGUMENT ...................................................................................... 14

    I.    The District Court Did Not Abuse Its Discretion
        When It Declined to Excuse a Prospective Juror
        For Cause ..................................................................... 14

         A.   Relevant Facts ............................................................. 14

         B.   Applicable Law ............................................................ 17

         C.   Discussion .................................................................... 18

    II.   The Evidence Was Legally Sufficient to
        Establish that Goklu Operated an Unlicensed
        Money Transmitting Business ................................... 23

         A.   Standard of Review ..................................................... 24

ii

B.  Discussion........................................................25

    1.  Relevant Statutes and Regulations
       Establish a Broad Definition for
       "Money Transmitting Business" .........................25

    2.  The Government Proved at Trial that
       Goklu Operated a Money
       Transmitting Business ....................................30

    3.  The District Court Did Not Abuse Its
       Discretion by Denying Goklu's
       Motion for Acquittal ...........................................39

III.  The District Court Did Not Err When It
    Modified Its Jury Charge to Correct
    Misstatements in Defense Counsel's Summation ...............41

    A.  Relevant Facts ..............................................42

    B.  Applicable Law...............................................45

    C.  Discussion.....................................................46

IV.  Count One Was Not Impermissibly Duplicitous .................49

    A.  Applicable Law...............................................49

    B.  Discussion.....................................................51

V.  The District Court Did Not Err at Sentencing by
    Including the Proceeds of the First Three
    Meetings in the Guidelines Calculation.............................55

    A.  Relevant Facts ..............................................55

    B.  Applicable Law...............................................57

iii

C.   Discussion........................................58

1.   The District Court Did Not Commit
Procedural Error by Including the
Proceeds of the First Three Meetings
in the Total Value of Laundered
Funds........................................58

2.   Any Procedural Error at Sentencing
Was Harmless.............................62

VI.   The Error in the Presentence Report is
Immaterial..........................................64

VII.   The Arguments Raised in Goklu's Pro Se Brief
Are Meritless ........................................65

A.   Goklu's Challenges to the Sufficiency of the
Proof Are Meritless .............................65

B.   Goklu's Claims of Government Misconduct
or Mischaracterizations Are Meritless ........67

C.   Goklu's Claims of Ineffective Assistance of
Counsel Are Meritless ..........................69

CONCLUSION ........................................74

iv

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Cuevas v. Henderson,*
    801 F.2d 586 (2d Cir. 1986) .............................................................. 70

*Herring v. New York,*
    422 U.S. 853 (1975) ........................................................................ 45

*Johnson v. United States,*
    520 U.S. 461 (1997) ........................................................................ 51

*Kimmelman v. Morrison,*
    477 U.S. 365 (1986) ........................................................................ 70

*Pham v. United States,*
    317 F.3d 178 (2d Cir. 2003) .............................................................. 70

*Skilling v. United States,*
    561 U.S. 358 (2010) ........................................................................ 37

*Thompson v. Altheimer & Gray,*
    248 F.3d 621 (7th Cir. 2001) ............................................................ 23

*Triana v. United States,*
    205 F.3d 36 (2d Cir. 2000) ............................................................... 69

*United States v. $215,587.22 in U.S. Currency,*
    306 F. Supp. 3d 213 (D.D.C. 2018) ................................................. 29

*United States v. Armstrong,*
    517 U.S. 456 (1996) ........................................................................ 72

*United States v. Banki,*
    685 F.3d 99 (2d Cir. 2012) ............................................................... 29

*United States v. Bautista,*
    252 F.3d 141 (2d Cir. 2001) ............................................................. 45

v

*United States v. Breen,*
   243 F.3d 591 (2d Cir. 2001) ................................................................17

*United States v. Cavera,*
   550 F.3d 180 (2d Cir. 2008) ...............................................................57

*United States v. Civelli,*
   883 F.2d 191 (2d Cir. 1989) ...............................................................46

*United States v. Darrah,*
   132 F.4th 643 (2d Cir. 2025) ..............................................................62

*United States v. Dawkins,*
   999 F.3d 767 (2d Cir. 2021) ........................................................40, 41

*United States v. Dupree,*
   870 F.3d 62 (2d Cir. 2017) .................................................................50

*United States v. E-Gold, Ltd.,*
   550 F. Supp. 2d 82 (D.D.C. 2008) ................................................26, 29

*United States v. Faiella,*
   39 F. Supp. 3d 544 (S.D.N.Y. 2014)..............................32, 34, 35, 38

*United States v. Finkelstein,*
   229 F.3d 90 (2d Cir. 2000) .................................................................61

*United States v. Gahagen,*
   44 F.4th 99 (2d Cir. 2022) ..................................................................57

*United States v. Gonzalez,*
   214 F.3d 1109 (9th Cir. 2000)............................................................23

*United States v. Harmon,*
   474 F. Supp. 3d 76 (D.D.C. 2020) .................................29, 34, 36, 37

*United States v. Houtar,*
   980 F.3d 268 (2d Cir. 2020) ...............................................................37

*United States v. Jass,*
   569 F.3d 47 (2d Cir. 2009) .................................................................62

vi

*United States v. Kandic,*
  134 F.4th 92 (2d Cir. 2025) ................................................. 50

*United States v. Kechedzian,*
  902 F.3d 1023 (9th Cir. 2018) ....................................... 21, 22

*United States v. Klein,*
  913 F.3d 73 (2d Cir. 2019) ................................................. 24

*United States v. Mandell,*
  752 F.3d 544 (2d Cir. 2014) .............................................. 63

*United States v. Martoma,*
  894 F.3d 64 (2d Cir. 2017) ................................................ 24

*United States v. McCrimon,*
  788 F.3d 75 (2d Cir. 2015) ................................................ 57

*United States v. Modica,*
  663 F.2d 1173 (2d Cir. 1981) ............................................ 46

*United States v. Moloney,*
  287 F.3d 236 (2d Cir. 2002) ............................... 49, 50, 54, 55

*United States v. Murgio,*
  209 F. Supp. 3d 698 (S.D.N.Y. 2016) ............................ 32, 38

*United States v. Murray,*
  826 F. App'x 97 (2d Cir. 2020) ......................................... 50

*United States v. Nelson,*
  277 F.3d 164 (2d Cir. 2002) .............................................. 20

*United States v. Nieves,*
  58 F.4th 623 (2d Cir. 2023) .............................................. 17

*United States v. Olmeda,*
  461 F.3d 271 (2d Cir. 2006) ........................................ 49, 54

*United States v. Patterson,*
  2022 WL 17825627 (2d Cir. Dec. 21, 2022) ........................ 46

vii

*United States v. Peterson,*
  385 F.3d 127 (2d Cir. 2004) ................................................................ 17

*United States v. Ploof,*
  464 F.2d 116 (2d Cir. 1972) ......................................................... 18, 22

*United States v. Pristell,*
  941 F.3d 44 (2d Cir. 2019) ................................................................ 63

*United States v. Ramos,*
  979 F.3d 994 (2d Cir. 2020) ............................................................. 57

*United States v. Stetkiw,*
  No. 18-20579,
  2019 WL 417404 (E.D. Mich. Feb. 1, 2019) ........................... 34, 35, 36

*United States v. Strickland,*
  466 U.S. 668 (1984) ..................................................................... 69, 70

*United States v. Sturdivant,*
  244 F.3d 71 (2d Cir. 2001) ........................................................... 52, 53

*United States v. Tellier,*
  83 F.3d 578 (2d Cir. 1996) ................................................................ 51

*United States v. Torres,*
  128 F.3d 38 (2d Cir. 1997) ................................................................ 18

*United States v. Towne,*
  870 F.2d 880 (2d Cir. 1989) ............................................................. 22

*United States v. Traficante,*
  966 F.3d 99 (2d Cir. 2020) ............................................................... 58

*United States v. Velastegui,*
  199 F.3d 590 (2d Cir. 1999) ............................................................. 41

*United States v. Weiss,*
  930 F.2d 185 (2d Cir. 1991) ............................................................. 70

viii

*United States v. Williams,*
 553 U.S. 285 (2008) ...................................................................37

*United States v. Young,*
 470 U.S. 1 (1985) ................................................................46, 65, 67

## FEDERAL STATUTES

18 U.S.C. § 1956(a)(1)..............................................................66

18 U.S.C. § 1956(a)(3)(B)......................................................1, 66

18 U.S.C. § 1960.............................................................. passim

18 U.S.C. § 3553(a) ................................................................58

31 U.S.C. § 5330..........................................................27, 28, 32

## STATE STATUTE

N.Y. Banking Law § 641 .........................................................26

## GUIDELINES

U.S.S.G. § 2B1.1(b)(1)........................................................55, 64

U.S.S.G. § 2S1.1(a)(2) .............................................................59

U.S.S.G. § 2S1.1(b)(1) .............................................................56

U.S.S.G. § 2S1.3........................................................64, 65

ix

## <u>FEDERAL REGULATIONS</u>

31 C.F.R. § 1010.100....................................................................29, 33

31 C.F.R. § 1022.380.........................................................................28

## <u>OTHER AUTHORITIES</u>

2A Charles Alan Wright & Arthur R. Miller,
   *Federal Practice and Procedure* § 466 (4th ed. 2022) ..........................40

FinCEN, Guidance FIN-2013-G001:
   Application of FinCEN's Regulations to Persons
   Administering, Exchanging, or Using Virtual
   Currencies (Mar. 18, 2013) .................................................29, 30, 34, 35

FinCEN, Guidance FIN-2019-G001:
   Application of FinCEN's Regulations to Certain
   Business Models Involving Convertible Virtual
   Currencies (May 9, 2019)........................................................................33

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Docket No. 24-767

UNITED STATES OF AMERICA,

*Appellee,*

-against-

MUSTAFA GOKLU, also known as MUSTANGY,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

BRIEF FOR THE UNITED STATES

## PRELIMINARY STATEMENT

Defendant-Appellant Mustafa Goklu appeals from a judgment entered on March 21, 2024 in the United States District Court for the Eastern District of New York (Chen, J.) convicting him, after a jury trial, of money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B) (Count One), and operation of an unlicensed money transmitting

2

business, in violation of 18 U.S.C. § 1960(a) (Count Two), and sentencing him to 16 months' imprisonment.

Goklu argues that (1) the district court abused its discretion in declining to excuse a prospective juror for cause; (2) the evidence was legally insufficient to establish that Goklu's conduct amounted to a violation of 18 U.S.C. § 1960; (3) the court erred in instructing the jury regarding the definition of a transfer under 18 U.S.C. § 1960; (4) the money laundering charge was impermissibly duplicitous; and (5) the court erred in calculating the advisory Guidelines range for Count One. For the reasons set forth below, these arguments are meritless. The Court should also reject Goklu's supplemental pro se arguments as frivolous. Goklu is correct that the Presentence Investigation Report contained a calculation error as to Count Two; however, that error did not affect Goklu's sentencing and does not require a resentencing.

3

## STATEMENT OF FACTS

### I.    The Superseding Indictment

In October 2020, a grand jury in the Eastern District of New York returned a superseding indictment (the "Indictment") charging Goklu with money laundering and operating an unlicensed money transmitting business.  (DE:28).

### II.    Trial

#### A.    Goklu's Bitcoin/Cash Exchange Business

The trial evidence established that, in 2018 and 2019, Goklu owned and operated a peer-to-peer cryptocurrency exchange business. Goklu advertised his business on localbitcoins.com under the name "Mustangy."  He offered to communicate with customers via Signal[1] and to meet in person to exchange up to $99,999 worth of Bitcoin[2] into cash,

---

[1]    Signal is an encrypted messaging application typically accessed via cellphone.

[2]    Bitcoin or "BTC" is a digital currency (also known as cryptocurrency) that can substitute for fiat currency (i.e., currency created and regulated by a government).  (*See* A:287).  Bitcoin transactions are recorded on an online public ledger called the blockchain.  (*See* A:292).

4

or vice versa, for a fee.[3]  (GA:367-69; A:971).[4]  Goklu formally incorporated his business as a New York corporation named "MUSTANGY CORP USA." (GA:6-8).  Goklu received business mail at his home in Queens, listed himself as president on corporate paperwork, and maintained a corporate bank account. (*See* GA:10-11, 371-77; A:519).

From August 28, 2018 through April 30, 2019, Goklu met with an undercover Drug Enforcement Administration ("DEA") agent (the "UC") on seven occasions, during which Goklu exchanged $133,190 worth of Bitcoin for cash though six separate transactions.[5]  (*See* GA:378-84;

---

[3]  Individuals can acquire Bitcoin in many ways, including through a commercial exchange, such as Coinbase, or through a peer-to-peer exchange, such as the service Goklu offered. (*See* A:293-94). Commercial exchanges typically have an identity verification process, which requires users to provide a driver's license, social security number, date of birth, and proof of address. (*See* A:294). Peer-to-peer exchanges like Goklu's do not require users to provide identifying information. (*See* A:297-98).

[4]  "Br.," "Pro Se Br.," and "A" refer to Goklu's brief, pro se brief, and appendix, respectively. "GA" refers to the government's appendix. "PSR" refers to the Presentence Investigation Report, which was filed under seal with this Court.

[5]  During the seventh meeting, Goklu was exchanging approximately $50,000 worth of Bitcoin but was arrested before completing the transaction. (*See* GA:384; A:916-27).

5

A:446-47, 453, 458, 471, 753-85, 799-863, 895-928).  The transactions occurred in Goklu's Mercedes-Benz at parking lots and other locations in New York City.  (*See id.*; *see also* A:364, 376, 387).  In each transaction, the UC electronically transferred Bitcoin from the UC's cryptocurrency wallet to Goklu's cryptocurrency wallet;[6] Goklu then charged a 7-8% commission, calculated the remaining amount in cash, counted that sum using an electronic money counter, and handed the cash to the UC. (GA:378-84; A:354-56, 376-82, 799-927).  The amounts exchanged in each transaction ranged from approximately $5,000 to $50,000.  (A:928).

Goklu's business had dozens of customers other than the UC, as evidenced by his statements to the UC and Signal messages.  (*See, e.g.,* GA:382; A:780 ("I have 25k today…have 8% guy ready will give him if

---

[6]     A cryptocurrency wallet is a software application that a user can download to a cellphone and use to store and transact in Bitcoin without using a commercial exchange.  (A:290).  The UC testified that he "would open up [his] cryptocurrency wallet" and "[Goklu] would open up his cryptocurrency wallet and his QR code," after which the UC "would pull up the amount [he] wanted to send…to [Goklu's] QR code and that would populate the recipient's address in [the UC's] phone."  (A:356).  The UC would then hit "send," and the Bitcoin would be transferred to Goklu's address via the blockchain.  (*Id.*).  Goklu would then check his phone to confirm that he had received the Bitcoin.  (A:473).

6

you don't want it."), 872 ("There was somebody who took 50,000 for 10…This guy keeps buying from me. He's asking 10K, so, no money.")). Over Signal, Goklu and his customers discussed past, ongoing, and future Bitcoin transactions. (*See, e.g.*, GA:34 (Customer: "Hey, can you do 65K? Seller here." Goklu: "Yes I can."), 60 ("Thanks for the easy trade the other day. I'm interested in selling another 0.16btc today, are you around?"), 253 (Customer: "hey mustang, wanted to trade coin for $1160 cash…looking to sell btc.")). Goklu completed many of the transactions with other customers in a similar manner and timeframe as his transactions with the UC. (*See id.*).

Trial evidence also demonstrated that Goklu obtained cash for his Bitcoin exchange from several sources. For example, Goklu worked both sides of the exchange business, receiving cash from customers when he exchanged cash into Bitcoin. (*See, e.g.*, GA:384; A:920 (UC: "Where do you get all this cash?" Goklu: "I have a guy who takes Bitcoins only.")). Some of these transactions were listed on Goklu's localbitcoins.com advertisement. (GA:367). Former DEA Special Agent Allan Liefke testified that he witnessed one such exchange when he saw Goklu meet a woman who had "what looked to be a weighted bag" containing U.S.

7

currency; after Goklu and the woman parted ways, Goklu "advised the [UC] that he had $25,000 to do a deal the next day." (A:500). Goklu confirmed that he did an exchange with this woman, as well as with other customers, in his post-arrest interview. (A:501).

Goklu also obtained cash from a business partner. (*See* GA:380; A:829 ("My partner is in judgment...[t]hey caught him 50K...they weren't tracking for Bitcoins, they were tracking some idiot guy who buys and sells drugs."); *see also* GA:383; A:902-04 ("[H]e has the money. I have a lot of money with him...I keep texting him, 'Hey, bring money, bring money.'")). Goklu often transferred cash to himself from his other accounts, some of which were in Turkey. (*See* GA:380; A:817-18 ("I can give you some more tomorrow because bank is getting pissed when you withdraw...too much."); *see also* GA:382; A:866, 870, 876 (stating Goklu got cash for UC "from the Bank of America yesterday" and explaining, "I have money in Turkey...I usually buy on the exchange in Turkey and transfer money to here")).

8

B.    Goklu Feared Police Scrutiny and Knew
       He Was Transacting with Drug Dealers

Goklu's conduct showed that he knew drug dealers used his services to exchange Bitcoin for cash, he understood exchanging drug money was illegal, and he was worried about the police. For example, at the initial meeting with the UC, Goklu warned about cameras and police looking for drug dealers. (GA:378; A:801, 805 ("[C]lose the door, man, the cops, we are not drug dealers, we're buying [B]itcoin…. I don't want to come here, you know, these fucking malls all have the cameras…they called me, 'Hey, are you a drug dealer?'")).

At their third meeting, Goklu explained to the UC that he was afraid of cars with tinted windows because they might be police. (GA:380 ("The black, the black window scares me…. How the hell do you know if the cops come out of fucking black."); *see also* GA:382; A:865 ("[S]cary, man…. Two fucking Ford black tinted car is there.")). Goklu also explained that his business partner was arrested in Manhattan after exchanging $50,000 of Bitcoin with a drug dealer. (GA:380; A:829). As a result, Goklu told the UC, "I don't want to count money in Manhattan…. Even [when] you're staying in [the car], there is a fucking…camera on

9

the top.  It's watching traffic, but…they're going to say, 'What's going on there?  Are these some drug guys?'"  (A:847-48; *see also* GA:381; A:861 ("I don't go fucking Manhattan.  Even a homeless I saw, he's working for NYPD.")).

Goklu also theorized how the police might build a case against him.  When searching for his Bitcoin wallet online, Goklu stated, "I'm exposing myself…[i]f something goes wrong, they can catch your history and say 'Hey, let me see your wallet.'"  (GA:382; A:873).  Goklu also characterized his money counter as "fucking…evidence that you're a drug dealer."  (GA:378; A:806).

In one telling instance, Goklu began arguing with a customer and, without prompting, threatened to report him to the police as a "drug dealer[]."  (GA:23-31).  The customer responded, "I did 8 transactions all over 3000 [a]nd still got to wash another 29k…. Only a matter of time before you snitch on the wrong person and get killed."  (GA:33).

C.    The UC Told Goklu He Was a Drug Dealer

At the third meeting, the UC began telling Goklu that his business was illegal drug trafficking.  The UC first asked Goklu to confirm that the police were not investigating him.  (GA:380; A:832 ("So

10

the police never looked at you, right?")).  He then told Goklu that he needed to turn Bitcoins "into cash as soon as possible," because he had "to pay people...in cash."  (A:826).  The UC also told Goklu that part of his business was selling marijuana from California.  (*See* A:839-41, 854, 877).

In ensuing meetings, the UC repeatedly told Goklu that the Bitcoin he was exchanging came mostly from selling pills to college students, including Adderall and "oxys," or oxycodone.  (GA:382; A:877 ("[M]y business partners are in California, that's where we get our shit and I bring it back here....I've got Adderall, Oxies, all that stuff."); GA:384; A:918 ("[T]he real money is in...Adderall and the pills.")).  The UC also told Goklu that he made money selling marijuana, which is illegal under federal law.  (GA:384; A:922 ("Still risky, though.  My buddy got arrested the other day... he got arrested by the Feds.")).  Goklu acknowledged this and replied, "Oh you...got to be in California.  If you go out...it's trouble right?"  (*Id.*).  Immediately after this conversation, Goklu exchanged another $50,000 of Bitcoin for the UC.  (A:924).

The trial evidence further established that Goklu observed, commented on, and deliberately ignored indicia that the UC obtained

11

Bitcoin from illegal drug trafficking.  The UC told Goklu in December 2018 that he had "just got a shipment in" and may need to exchange as much as $200,000 worth of Bitcoin "depending on how much we sell." (GA:381; A:860).  The next month, the UC told Goklu, "you have no idea how much money we have coming in.  It's insane…. These college kids cannot get enough."  (GA:382; A:837).  The UC also explained to Goklu that he had to convert so much Bitcoin to cash because he had "to go back to California to pay" individuals who were "not great people."  (GA:381-82; A:857, 881).  Warning Goklu about what would happen to the UC if he did not pay the people in California, the UC claimed, "if I get seized with this, I'm going to get my fucking head chopped off or something." (GA:382; A:875).  And more generally, Goklu knew that the UC traveled to meet him in a parked car to exchange tens of thousands of dollars of Bitcoin at higher fees than were available through easily accessible commercial exchanges.  (GA:378-84).

D.    Goklu's Business Was Unlicensed

During trial, Robert Tarwacki, a criminal investigator at the New York State Department of Financial Services, testified that the state's licensing requirements for the business of transmitting money

12

applied to individuals exchanging cryptocurrency for cash.  (A:533-34). He further testified that individuals who engage in a business of exchanging Bitcoin with cash for a fee in New York are required to obtain a license.  (A:534-35).

Theodore Vlahakis, a compliance officer at the Department of Treasury Financial Crimes Enforcement Network ("FinCEN"), likewise testified that a digital currency exchange business qualifies as a "money transmitter" under federal laws and regulations.  (A:541-57). Specifically, he stated that the "money transmitter" definition included "somebody that engages in the business of exchanging cryptocurrency, specifically Bitcoin, for cash."  (A:544).

Tarwacki and Vlahakis additionally testified that Goklu never obtained a license from New York or registered his business with the Treasury Department.  (A:538-39, 554-57; *see* GA:1-5).

III.   Conviction and Sentencing

In October 2022, following an eight-day trial, a jury convicted Goklu on both counts of the Indictment.  (DE:72; A:13).

13

The district court conducted a sentencing hearing on January 29, 2024 and March 14, 2024. (A:17). At the hearing, the court noted that the information provided to Goklu by the UC

> made it clear that the UC was purporting to be a drug dealer and that all of the funds he had provided were drug proceeds, yet the defendant continued to convert the undercover's alleged drug proceeds or purported drug proceeds…. So certainly the jury had ample reason to find that he was willingly and knowingly money laundering and running an unlicensed money transmitting business…sort of bolstering the notion that he believed it before but just didn't care.

(A:1020-21). The court further stated, "I heard the tapes…. It's clear to me the defendant was not concerned about the source of the funds from all the conversations that I heard between him and the undercover and some of the comments that he made in general." (A:1024).

The district court determined that Goklu's offense level was 22, which yielded a range of imprisonment under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 41 to 51 months (A:1032, 1056), and sentenced Goklu "to a substantially downwardly varied sentence of 16 months['] incarceration," (A:1102).

This appeal followed.

14

## ARGUMENT

I.    The District Court Did Not Abuse Its Discretion When
      It Declined to Excuse a Prospective Juror For Cause

This Court should reject Goklu's claim that the district court abused its discretion in declining to excuse a prospective juror for cause. A district court has broad discretion in evaluating for-cause challenges of prospective jurors, and appellate courts defer to trial court decisions on juror impartiality. The jury selection record here shows a careful voir dire of the juror and a thoughtful explanation by the court as to why it determined that the juror could serve fairly and impartially.

### A.    Relevant Facts

At jury selection, the district court asked potential jurors, "Does anyone have any [bias], prejudice, or other feelings for or against the United States Department of Justice, the United States Attorney's Office, the Drug Enforcement Administration or DEA, the New York City Police Department or any other law enforcement agency, positive or negative?" (A:105). Prospective Juror Number 30 ("Juror 30") responded affirmatively and explained at sidebar that he worked for the New York City Parks Department and that many of his friends and coworkers were

15

officers of its police force (the "Parks Police"). (A:120). Juror 30 also expressed a general "positive outlook towards police." (*Id.*).

The district court then asked Juror 30 if, despite his positive feelings about the Parks Police, he could be fair and objective. (A:120-21). Juror 30 responded, "I don't know honestly," noting that he "remember[ed]...the Bernie Madoff scandal" and had a friend whom it affected. (A:121). The court then asked Juror 30 if he would be able to consider only the evidence presented at trial, including some from law enforcement, and decide whether the government had proved its case beyond a reasonable doubt. (*Id.*). Juror 30 responded, "I'm not sure." (*Id.*). When the court asked why, Juror 30 mentioned his "life experiences," his interactions with law enforcement officers, and his "[i]nteractions with [his] friends...affected by matters related to money," but he concluded "I guess I will try my best." (*Id.*). The court then asked Juror 30 if he was "certainly willing to try [his] best," and Juror 30 responded affirmatively. (*Id.*).

The district court explained that during trial, law enforcement witnesses would testify and that jurors would be tasked with weighing those witnesses' credibility like they would for any other

16

witness. (A:122). When the court asked Juror 30 whether he would be able to do that, he said, "[p]ossibly." (*Id*.). But when the court asked Juror 30 whether he could view law enforcement testimony against all other evidence submitted at trial and decide whether to believe it, Juror 30 responded, "if it's presented in a neutral manner. Okay." (*Id*.). The court then asked Juror 30 if he could put aside any feelings about "friends who lost money and decide…the case based on the evidence," and he responded, "I believe so" and "I'll try my best." (A:122-23).

Defense counsel moved to excuse Juror 30 for cause, but the district court denied the application, stating, "he said he would try his best and seems sincere about that…I think he can be objective." (A:123). The court noted that its larger concern, based on its observation of Juror 30's demeanor, was not bias or lack of impartiality, but rather that Juror 30 seemed to be looking for a way to avoid jury service. (*See id*.). The court further noted that one of Juror 30's hesitations related to "a friend that was affected" by Madoff's scheme (A:121-23), but "this case is nothing like a Madoff scam, so I don't think that's even going to raise any issues to the extent that he generally feels aggrieved for them." (A:123).

17

Juror 30 was empaneled as Alternate Juror 1 and later empaneled as Juror 12 after an original juror could no longer serve. (A:240, 253-54).

B.    Applicable Law

A district court's determination on juror impartiality is reviewed for abuse of discretion. *United States v. Peterson*, 385 F.3d 127, 134 (2d Cir. 2004).[7] "This is because the trial judge is in a unique position to ascertain an appropriate remedy, having the privilege of continuous observation of the jury in court." *Id.*   Only upon a finding of bias or substantial prejudice will an appellate court conclude that a trial court abused its discretion in denying a motion to dismiss a juror. *See United States v. Breen*, 243 F.3d 591, 597 (2d Cir. 2001).  This standard of review is "deferential" to the trial court's discretion, and a "district court abuses its discretion when its decision incorporates an error of law, rests on a clearly erroneous factual finding, or cannot be located within the range of permissible decisions." *United States v. Nieves*, 58 F.4th 623, 632 (2d Cir. 2023).

---

[7]    Unless otherwise noted, citations, internal quotation marks, and footnotes are omitted, and all alterations are adopted.

18

C.   Discussion

Goklu argues that the district court abused its discretion in declining to excuse Juror 30 because he harbored "actual bias" or "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." (Br.25).  Goklu claims that Juror 30's responses to questions about whether he could be fair and impartial so clearly demonstrated his inability to be impartial that the court abused its discretion by failing to excuse him for cause. (*See* Br.25-26).  Goklu is wrong.

As an initial matter, a finding of actual bias "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *United States v. Torres*, 128 F.3d 38, 44 (2d Cir. 1997).  A district court's finding on this issue "is accorded great deference, since an appellate court cannot easily second-guess the conclusions of the decisionmaker who heard and observed the witnesses." *Id.*  As this Court has explained, "There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empaneling of a jury." *United States v. Ploof*, 464 F.2d 116, 118 n.4 (2d Cir. 1972).

19

There was no clear abuse of discretion here. The issue raised by Juror 30 regarding potential impartiality was twofold: first, he regarded police positively because some of his friends and coworkers were members of the Parks Police, and second, he had a friend who was affected by Bernie Madoff's scheme. (A:120-21). The district court thoroughly questioned Juror 30 about these points and was satisfied that any biases held by Juror 30 would not affect his ability to serve impartially. (*See* A:120-23). Specifically, when the court asked Juror 30 whether he could weigh law enforcement testimony against all other evidence and decide whether to believe it, despite his positive feelings toward police, he responded, "If it's presented in a neutral manner. Okay." (A:123). Any concern about the second potential source of bias was cured when the court asked whether he could put aside any feelings about friends who had been affected by Madoff's scheme and decide the facts in Goklu's case based on the evidence presented at trial, and Juror 30 responded, "I believe so." (A:122-23). Further, the court noted that "this case is nothing like a Madoff scam, so I don't think [the second concern is] even going to raise any issues." (A:123). Declining to excuse Juror 30 on these facts was not an abuse of discretion.

20

Goklu likens his case to *United States v. Nelson*, 277 F.3d 164 (2d Cir. 2002), where the trial court improperly declined to excuse a juror for cause despite the juror's statements that he was biased.  (Br.25-26). This comparison is inapt.  In *Nelson*, the juror "never even asserted that he could *probably* be impartial," never "promised that he would try to decide the case based on the evidence presented," and never said "that he would do his best."  277 F.3d at 203.  Here, Juror 30 said that he could set aside any potential biases and make his own decisions about law enforcement testimony "[i]f it's presented in a neutral manner" and affirmed multiple times that he would "try [his] best" to decide the facts based on the evidence.  (A:122-23).  The difference between Juror 30 and the *Nelson* juror is stark, and Goklu's attempt to analogize the two should be rejected.

Moreover, the *Nelson* Court explained that "the principal reason for which jurors are dismissed for cause is that they are unwilling or unable to follow the applicable law."  277 F.3d at 203.  Whereas the *Nelson* juror admitted to being unwilling or unable to be unbiased and "did not adequately take [it] back," *id.*, Juror 30 stated that he could decide the facts based solely on the evidence (A:123)  This was not a case

21

where Juror 30 consistently said that he was "unwilling or unable" to follow the law; rather, Juror 30 initially expressed reservations, but after questioning from the district court, said he would endeavor to act fairly and impartially. It was entirely appropriate—and certainly not an abuse of discretion—for the court not to excuse Juror 30.

Goklu also argues that Juror 30's statements that he would "try [his] best" to serve impartially are insufficient, relying on *United States v. Kechedzian*, 902 F.3d 1023 (9th Cir. 2018), to argue that such statements are inadequate to assuage concerns about personal bias. (*See* Br.26-27). But this argument omits critical context. While the *Kechedzian* court wrote that "a response of 'I'll try' is not an unequivocal statement," in that case, the juror's statement that "I would try to be fair" was the only statement that she made; the court determined that such a statement, standing alone, was not a sufficient guarantee of impartiality. 902 F.3d at 1029. The record in this case, however, shows that Juror 30's statement of "I'll try my best" immediately followed his response of "I believe so" to the question of whether he could put his personal feelings aside. (A:123). And the *Kechedzian* court noted that it was appropriate to defer to a district court's determination of whether to excuse a juror

22

who says she "believed" she could be impartial "based on [the juror's] demeanor and [the court's] assessment of her credibility." 902 F.3d at 1029-30. Here, Juror 30 stated that he "believed" he could set his biases aside, and the court found that he "seem[ed] sincere about that." (A:123). Declining to strike Juror 30 was thus more consistent with *Kechedzian* than contrary to it.

Finally, *Kechedzian* is a Ninth Circuit case, and binding precedent from this Court supports the district court's determination that statements like those made by Juror 30 are satisfactory to cure prospective juror bias. *See Ploof*, 464 F.2d at 118 (holding that "[g]iven the broad discretion granted to trial judges in this Circuit to determine bias of jurors on challenges for cause…[the district court] acted well within that grant of discretion" in declining to excuse for cause a prospective juror who initially raised a concern of bias but later said "that he would do his best"); *United States v. Towne*, 870 F.2d 880, 885 (2d Cir. 1989) (concluding that court did not err in failing to remove prospective juror for cause where juror initially expressed reservations about ability

23

to be impartial but later promised to try to decide the case based on evidence presented).[8]

Ultimately, the district court declined to excuse Juror 30 after conducting an extensive colloquy regarding his potential biases, observing his demeanor and behavior at sidebar, and receiving assurances that he would try his best to be fair and impartial. This determination was appropriate on the facts, consistent with the law, and far from an abuse of discretion.

## II. The Evidence Was Legally Sufficient to Establish that Goklu Operated an Unlicensed Money Transmitting Business

The Court should reject Goklu's argument that the evidence presented at trial was insufficient to prove that he operated an unlicensed money transmitting business, as charged in Count Two. The evidence before the jury was clear and overwhelming: Goklu ran a business that converted Bitcoin to cash for a profit, and such an operation

---

[8] Likewise, Goklu's reliance on other out-of-Circuit cases like *Thompson v. Altheimer & Gray*, 248 F.3d 621 (7th Cir. 2001), and *United States v. Gonzalez*, 214 F.3d 1109 (9th Cir. 2000), conflicts with the binding case law in this Circuit supporting the district court's determination that Juror 30's statements were satisfactory to cure concerns of bias. (Br.26-27).

24

fits cleanly within the definition of a "money transmitting business" under Section 1960's broad statutory definition, as interpreted by courts in this Circuit and elsewhere.

A.  Standard of Review

A challenge to the sufficiency of the evidence supporting a conviction is reviewed de novo. *See United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019).  The appellant bringing a sufficiency challenge "bears a heavy burden," as "the standard of review is exceedingly deferential." *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017).  The reviewing court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence."   *Id.* Furthermore, affirmance is appropriate "so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt." *Klein*, 913 F.3d at 78.

25

B.    Discussion

1.    Relevant Statutes and Regulations Establish a
      Broad Definition for "Money Transmitting Business"

Goklu did not dispute at trial that (1) he owned and controlled a peer-to-peer digital currency exchange business; (2) he did not license or register his business with state or federal authorities; and (3) his business affected interstate and foreign commerce.  Nonetheless, Goklu argues that his business was not a money transmitting business under Section 1960 because he did not transfer the Bitcoin he received from the UC to a third party.  This argument fails.

As an initial matter, Section 1960 establishes criminal liability for anyone who "knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business."  18 U.S.C. § 1960(a).  Section 1960 broadly defines "money transmitting" to include "transferring funds on behalf of the public by any and all means."  *Id.* § 1960(b)(2).  The statute also states that a business is an "unlicensed money transmitting business" if it is "a

26

money transmitting business which affects interstate or foreign commerce in any manner or degree" and, in relevant part:

> (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law…[or]

> (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section.

*Id.* § 1960(b)(1)(A) and (B). Thus, "[i]n order to be guilty of a violation of Section 1960…an entity must first, as a prerequisite, be a business that engages in 'money transmitting' as so defined in Section 1960(b)(2)," and "must also either operate without a state license, [or] fail to comply with the registration requirements of Section 5330…." *United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 90 (D.D.C. 2008).

The jury convicted Goklu under the (A) and (B) provisions of 18 U.S.C. § 1960(b)(1), finding that he failed to adhere to both the state licensing and federal registration requirements. (DE:72). The (A) provision applies New York law, which provides that "[n]o person shall…engage in the business of receiving money for transmission or transmitting the same, without a license." N.Y. Banking Law § 641. The

27

(B) provision deals with federal regulations and refers expressly to 31 U.S.C. § 5330.  Section 5330, in turn, required money transmitting businesses to register with the Secretary of the Treasury, *see* 31 U.S.C. § 5330(a), and included the following definitions:

> (1) Money transmitting business — The term "money transmitting business" means any business other than the United States Postal Service which —
>
>> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;
>
> [...]
>
> (2) Money transmitting service — The term "money transmitting service" includes accepting currency or funds denominated in the currency of any country and transmitting the currency or funds, or the value of the currency or funds, by any means through a financial agency or institution, a Federal reserve bank or other facility of the Board

of Governors of the Federal Reserve System, or an electronic funds transfer network.

31 U.S.C. § 5330(d) (2017).

One of the regulations prescribed under Section 5330 is 31 C.F.R. § 1022.380, which requires money services businesses to register with FinCEN. *See* 31 C.F.R. § 1022.380(a)(1). Subsection (e) of that regulation, titled "Consequences of failing to comply with 31 U.S.C. [§] 5330 or the regulations thereunder," states that 18 U.S.C. [§] 1960 provides "a criminal penalty for failure to comply with the registration requirements of 31 U.S.C. [§] 5330 or this section." Further, under the same set of regulations, a "[m]oney services business" is defined to include a "[m]oney transmitter," which is in turn defined as:

> (A) A person that provides money transmission services. The term "money transmission services" means the acceptance of currency, funds, or other value that substitutes for currency from one person *and* the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means. "Any means" includes, but is not limited to, through a financial agency or institution; a Federal Reserve Bank or other facility of one or more Federal Reserve Banks, the Board of Governors of the Federal Reserve System, or both; an electronic funds transfer network; or an informal value transfer system; or

(B) Any other person engaged in the transfer of funds.

31 C.F.R. § 1010.100(ff)(5)(i).

While these provisions contain multiple definitions related to "money transmitting," courts have generally construed them together, and broadly.  *See, e.g., United States v. Banki*, 685 F.3d 99, 113 (2d Cir. 2012) ("Section 1960 defines 'money transmitting' broadly."); *United States v. Harmon*, 474 F. Supp. 3d 76, 101 (D.D.C. 2020) ("Money transmitting[]…is broadly defined at § 1960(b)(2)."); *United States v. $215,587.22 in U.S. Currency*, 306 F. Supp. 3d 213, 219 (D.D.C. 2018) ("courts have broadly construed the definition of…a 'money transmitting business'"); *E-Gold, Ltd.*, 550 F. Supp. 2d at 92 n.10 ("[T]here is virtually no substantive difference, nor did Congress intend there to be a substantive difference, between the terms 'money transmitting' in Section 1960 and 'money transmitting business' in Section 5330."), 96 (statutory language and legislative history confirm "the inclusiveness of the term 'money transmitting business' under Section 5330").

Finally, FinCEN has issued guidance, consistent with the statutory scheme, stating that virtual currency exchanges are "money

30

transmitters" under its regulations. *See* FinCEN, Guidance FIN-2013-G001: Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies (Mar. 18, 2013) (the "2013 FinCEN Guidance"), at 1 ("[A]n administrator or exchanger *is* [a money services business] under FinCEN's regulations, specifically, a money transmitter, unless a limitation to or exemption from the definition applies to the person."), 4 ("[A]n exchanger (acting as a 'seller' of the convertible virtual currency) that accepts real currency or its equivalent from a user (the 'purchaser') and transmits the value of that real currency to fund the user's convertible virtual currency account…[engages in] money transmission."), 5 ("[A] person that…sells [virtual currency] to another person for real currency or its equivalent is engaged in transmission to another location and is a money transmitter.").

### 2.    The Government Proved at Trial that Goklu Operated a Money Transmitting Business

Goklu's operation of a money transmitting business was as clear as the jury's unanimous verdict.  Goklu did not contest that he met the UC on seven occasions to exchange Bitcoin for cash, nor that he collected a fee for his services.  (*See* A:356, 360, 362).  Goklu also did not

31

contest that he had other customers for whom he provided similar services (*see, e.g.*, GA:12-366, 382; A:776-86, 865, 870-72), or that he obtained cash to fund his business from his business "partner" and other individuals (*see, e.g.*, GA:380; A:500, 829). Based on these facts alone, Goklu operated an unlicensed money transmitting business under Section 1960.

Nevertheless, Goklu argues that the statute "[o]n its face…has no obvious application to a person in the business of buying bitcoin to hold in their own account." (Br.31). This argument mischaracterizes the evidence and the law. Goklu did not merely buy Bitcoin for his own account; he ran a business, which he widely advertised, where he charged significant fees for a currency exchange service. The plain language of 18 U.S.C. § 1960 defines a "money transmitting business" as one that "includes transferring funds on behalf of the public by any and all means." Bitcoin is a form of digital currency—an alternative to traditional fiat currency—that fits into the plain

32

meaning of "funds."[9]  Goklu transferred funds as the core practice of his business, placing him squarely within the ambit of Section 1960.

Goklu also argues that the definition of "money transmitting business" under 31 U.S.C. § 5330 sets forth "dual requirements of acceptance and transmission" of currency or funds, and that the conduct at issue here does not satisfy those requirements. (Br.32-33). But to the extent Section 5330 articulates these two elements, Goklu's conduct meets them, as he (1) accepted currency or funds in the form of Bitcoin from the UC and then (2) participated in the transmission of the Bitcoin through the blockchain from the UC's cryptocurrency wallet to Goklu's. Thus, even if Section 5330 required the transmission of funds to a "remote party or location" (Br.32), that occurred when Goklu effectuated the transfer of Bitcoin from the UC's cryptocurrency wallet to his own via

---

[9]     Courts in this Circuit have recognized that Bitcoin qualifies as "funds" under Section 1960. *See United States v. Murgio*, 209 F. Supp. 3d 698, 707 (S.D.N.Y. 2016) ("[I]t is clear that bitcoins are funds within the plain meaning of that term."); *United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014) ("the text of Section 1960 refers not simply to 'money,' but to 'funds,'" and Bitcoin "can be easily purchased in exchange for ordinary currency, acts as a denominator of value, and is used to conduct financial transactions," it "clearly qualifies as 'money' or 'funds'").

33

the blockchain.  *See also* FinCEN, Guidance FIN-2019-G001: Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies (May 9, 2019), at 13-14 ("FinCEN interprets the term 'another location' broadly…. For example, transmission to another location occurs when an exchanger selling [virtual currency] accepts real currency or its equivalent from a person and transmits the [virtual currency] equivalent of the real currency to the person's [virtual currency] account with the exchanger.").

Goklu also erroneously argues that his conduct does not constitute a "transfer" or "transmittal" of funds, claiming that he engaged in "the simple act of paying cash for bitcoin."  (*See* Br.32-33 (citing 31 C.F.R. §§ 1010.100(w), (ddd))).  The problem with Goklu's argument is that he did not just pay cash for Bitcoin; rather, he operated a business to transmute Bitcoin into cash for a 7-8% fee, well above the fees "under 2 percent" generally offered by commercial exchanges.  (A:355).  Had Goklu simply bought Bitcoin for cash without retaining such a high cut of the value, he may have had some argument that his conduct was entirely personal.  But the fact that Goklu charged customers a substantial fee—higher than the rates charged by commercial exchanges

(which are indisputably money transmitting businesses)—indicates that he ran a money transmitting business that cleaned Bitcoin into cash.

Moreover, Bitcoin exchangers like Goklu have been identified in this Circuit and elsewhere as money transmitting businesses under Section 1960. *See, e.g., Faiella*, 39 F. Supp. 3d at 545-57; *United States v. Stetkiw*, No. 18-20579, 2019 WL 417404, at *1-2 (E.D. Mich. Feb. 1, 2019); *Harmon*, 474 F. Supp. 3d at 80. Goklu argues that these cases are distinguishable and therefore irrelevant. (Br.34). He is wrong.

In *Faiella*, the court examined a scheme uncannily like Goklu's: the defendant "received cash deposits from his customers, and then, after exchanging them for Bitcoins, transferred those funds to the customers' accounts." 39 F. Supp. 3d at 546. Following a thorough analysis, including a detailed review of the 2013 FinCEN Guidance, the *Faiella* court found the defendant "clearly qualifie[d] as a 'money transmitter' for purposes of Section 1960" because he ran a virtual currency exchange for profit. *Id.* The same conclusion should follow here.

Goklu argues that his case is distinguishable because his Bitcoin transactions were "in-person payment[s] of cash for bitcoin" rather than online transactions. (Br.35). But this is a distinction without

35

a difference—whether the deal was consummated in person or virtually, Goklu, like Faiella, ran a business that exchanged Bitcoin for profit and transferred funds via the blockchain. *See Faiella*, 39 F. Supp. 3d at 546 (rejecting the argument that the defendant "merely sold Bitcoin as a product in and of itself" and highlighting that his business transferred Bitcoin for profit). That is a money transmitting business under Section 1960.

*Stetkiw* is another case where the defendant, like Goklu, "electronically transferr[ed] the Bitcoins to the purchaser's Bitcoin address or account after the purchaser pa[id] Stetkiw the value of the Bitcoins plus a commission/fee." 2019 WL 417404, at *2. The *Stetkiw* court found that the defendant's actions constituted "money transmitting" under Section 1960, as confirmed by the 2013 FinCEN Guidance. *Id.* It elaborated that Stetkiw operated an unlicensed money transmitting business because he did not just buy and sell Bitcoin "strictly as an investment for his own account," but instead "engaged as a business in the exchange of Bitcoin for real currency" and "charged a per-transaction commission/fee for the exchange and transfer of Bitcoin."

*Id.* at \*3.  There is no meaningful difference between Stetkiw's conduct and Goklu's, and the same result should follow.

With respect to *Harmon*, Goklu argues that the defendant's conduct in that case—operating a Bitcoin "tumbler" that allowed customers to send Bitcoin to recipients while further anonymizing the funds' sources—is different in kind.  (Br.34).  While it is true that Goklu did not engage in identical conduct, both he and Harmon operated businesses that "accept[ed] and transmitt[ed] value from one person to another person or location" by transferring Bitcoin on the blockchain, took a commission, and sent the remaining value to their customers. *Harmon*, 474 F. Supp. 3d at 108-09; *see id.* (rejecting the position that "the Bitcoin blockchain is a single location such that transfer between addresses on the blockchain is not transmission between locations").  For the same reasons that Harmon's tumbler business "fit[s] easily into the definition of a money transmitting service," as Goklu himself acknowledges (Br.34), Goklu's Bitcoin exchange business does as well.

Finally, Goklu argues that applying Section 1960 to his Bitcoin exchange business would render the statute unconstitutionally vague.  (Br.36).  He also analogizes Bitcoin to bullion and coins and

argues that under the government's interpretation of Section 1960, coin dealers could be prosecuted. (*See id.*). This argument fails.

A statute is unconstitutionally vague "if it either fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Houtar*, 980 F.3d 268, 273 (2d Cir. 2020). Courts "presume that acts of Congress are not unconstitutionally vague." *Id.* A statute is not void for vagueness because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or if a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). Rather, a statute is void for vagueness only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306.

Section 1960 is not void for vagueness as applied to Goklu. First, recognizing that Bitcoin exchanges are "money transmitting businesses" under Section 1960 is not a "sweeping construction" that "bears no resemblance to the actual words of the statute and, if adopted,

38

would stretch the reach and meaning of the statute's plain language well beyond its breaking point." (Br.37). Bitcoin is a recognized "pecuniary resource[]," or fiat currency substitute, whose unlicensed transmission for profit Section 1960 specifically protects against. *See Murgio*, 209 F. Supp. 3d at 707. As the world becomes increasingly digital, bringing even our currency online, the law must accommodate such changes. "Indeed, it is likely that Congress designed the statute to keep pace with such evolving threats, which is precisely why it drafted the statute to apply to any business involved in transferring funds by any and all means." *Faiella*, 39 F. Supp. 3d at 546. Identifying Bitcoin exchanges like Goklu's as money transmitting businesses under Section 1960 thus effectuates Congress's intent rather than unlawfully expands the statute.

Second, Goklu's comparison of Bitcoin to bullion and coins is misguided. Unlike bullion and coins, which have value as standalone objects, Bitcoin has no intrinsic value—its sole purpose is its pecuniary design.[10] Goklu's attempted analogy therefore falls flat.

---

[10] *See Making* sense *of bitcoin, cryptocurrency and blockchain*, PwC, https://www.pwc.com/us/en/industries/financial-services/fintech/bitcoin-blockchain-cryptocurrency.html (last visited June 11, 2025).

In sum, Section 1960 unambiguously applies to Bitcoin exchanges of the sort operated by Goklu, and his void-for-vagueness argument should be rejected.

### 3. The District Court Did Not Abuse Its Discretion by Denying Goklu's Motion for Acquittal

Goklu argues that the district court abused its discretion in declining to rule on the substance of his motion for acquittal under Federal Rule of Criminal Procedure 29 and denying it on procedural grounds. (*See* Br.35 n.2). This argument lacks merit.

As the court explained, Goklu's motion "falls outside the narrow confines of Rule 29" because it was "not a sufficiency-of-the-evidence challenge; rather, it [sought] to challenge the [c]ourt's interpretations of Section 1960(a) and the meaning of 'transfer' in the statute." (DE:85 at 7). This analysis was correct: Rule 29 motions are only for the purpose of arguing that "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). It is well within the discretion of a court to deny a Rule 29 motion if it does not challenge whether the jury had sufficient evidence to reach a guilty verdict but instead "relitigate[s] unfavorable rulings, contest[s] jury instructions, or

40

advance[s] new legal theories." (DE:85 at 6); *accord* 2A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 466 (4th ed. 2022) (noting that evidentiary insufficiency is the "only [] ground for a motion for a judgment of acquittal"); *cf. United States v. Dawkins*, 999 F.3d 767, 780 & n.12 (2d Cir. 2021) (noting that a matter is not preserved on appeal where "defendants moved for judgments of acquittal under Rule 29…[but] did not challenge the sufficiency of the evidence" on that issue).

In his Rule 29 motion, Goklu made only one argument: that the district court misunderstood the definition of a "money transmitting business." (*See* DE:77). Because this argument would have been appropriate for appeal but not a Rule 29 motion, the court did not abuse its discretion in denying the motion as procedurally improper.

In addition, the district court stated that "even had it considered [Goklu's] argument…about the proper interpretation of Section 1960, it would have rejected that argument." (DE:85 at 8-9 n.7). The court explained that "nothing on the face of the statute suggests that a transfer of funds from a defendant back to his customer does not qualify as a 'transfer' for Section 1960 purposes." (*Id.*). It then analyzed this

41

Court's precedent and the statutory scheme to conclude that Goklu's arguments were meritless.  (*See id.* (distinguishing *United States v. Velastegui*, 199 F.3d 590 (2d Cir. 1999), upon which Goklu had relied in his motion, and explaining that Goklu's proposed "interpretation of the statute would create a regulatory lacuna: Section 5330 would require currency exchange businesses to be licensed, but Section 1960 would attach no penalty for their failure to do so because such businesses are not engaged in 'transfers'")).  Thus, even if the court erred in rejecting Goklu's Rule 29 argument on procedural grounds—which it did not—it clearly and correctly articulated the reasons why it would have denied his motion on substantive grounds as well.

III.  The District Court Did Not Err When It Modified Its Jury Charge to Correct Misstatements in Defense Counsel's Summation

The Court should reject Goklu's argument that the district court erred when it issued a curative instruction in response to defense counsel's statement during summations that the jury would find the definition of "transfer" in Section 1960 insufficient to convict.  Federal Rule of Criminal Procedure 30, around which Goklu centers his argument, is irrelevant because it relates to jury instructions requested

42

from the district court *before* summation, while the jury instruction issued here was curative and in response to an improper argument made *during* summation.  Additionally, the court's instruction here correctly stated the law in this Circuit, which recognizes that exchanging Bitcoin for U.S. currency can qualify as a transfer within the meaning of Section 1960, and did not improperly undercut defense counsel's argument.  The curative charge also did not direct the jury to decide that Goklu's transactions were transfers within the meaning of Section 1960; rather, it simply explained that Bitcoin-for-cash transactions could qualify as transfers within the meaning of the statute.

A.    Relevant Facts

During his summation, defense counsel stated the following when addressing Count Two:

> On the money transferring business, this is a matter of the language and I'm going to encourage you folks to listen carefully to the Judge as she gives the language of the charge…A money transmitting business is a business which for a fee accepts currency for transfer.  That's the language that you're being given.  And I submit to you under that definition that the judge is giving to you and it's included in the instruction that Mr. Goklu is not operating a money transmitting business, that he is not – that the evidence does not prove beyond

43

> a reasonable doubt that he is accepting currency
> for transfer.

(A:646).

After counsel concluded his summation, the district court

called for a sidebar before rebuttal because it was "concerned…about the

argument [defense counsel] made about the money transmitting charge."

(A:650-51).  The court said to defense counsel:

> You specifically told the jurors to pay attention to
> the jury charge regarding the meaning of transfer.
> Now my concern is that you are suggesting some
> legal argument that quite honestly should have
> been raised…during a motion to dismiss long
> before the trial, or during the jury charge
> conference because you are suggesting to the jury
> that what the Government alleges was illegal
> money transmitting, which is the exchange of
> Bitcoin for cash doesn't qualify as transferring
> funds or transmitting.  And I have not heard that
> argument from you before, nor did we address it in
> the charges that I'm going to give…I am concerned
> that you're setting [the jury] up to question the
> instruction on a legal theory.

(A:651).

The court noted that after the government submitted its

proposed jury charge, "the defense only submitted [one] objection," and

that objection did not include "the basis that [Goklu's] conduct doesn't

constitute money transmitting…or that I should advise the jury that an

44

actual transfer to a third party is required which is what [defense counsel] is suggesting." (A:653-54). The government then requested a curative instruction advising the jury that money transmitting businesses could include those that exchange Bitcoin for cash and vice versa. (A:654-55).

To rectify the situation, the district court added to the jury charge "a sentence saying exchanging Bitcoin for U.S. currency can qualify as a transfer within the meaning of the statute." (A:655). The court explained it was doing so because it was concerned with defense counsel's suggestion that "Goklu is not operating a money transmitting business" because "the evidence does not prove beyond a reasonable doubt that he's accepting currency for transfer." (A:658). The court further explained that it took issue with defense counsel's statement "accepting currency for transfer" because:

> [t]hat made me think it's got to be literally then transferred to someone else. In other words, [defense counsel argued] that the Government's theory is [Goklu] accepted Bitcoin which is currency for transfer to someone, like Western Union…. That is a misleading statement about the law.

(*Id.*).

The district court then told defense counsel, "you've known all along that the Government's theory about the money transmitting business was that he was converting Bitcoin into cash." (A:660). "So the question then," the court continued, "[is] why would you not have raised this issue earlier saying that I don't think that that states a crime under the statute because it's not a transfer.... [M]y concern is that this wasn't properly raised before trial." (*Id.*).

Ultimately, the court delivered the curative instruction it had previewed for the parties: "Exchanging Bitcoin for U.S. currency can qualify as a transfer within the meaning of the statute." (A:707).

B.   <u>Applicable Law</u>

It is well within the discretion of the district court to regulate the scope and content of summations. *See Herring v. New York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in...limiting the scope of closing summations.... He may ensure that argument does not stray unduly from the mark."); *United States v. Bautista*, 252 F.3d 141, 145 (2d Cir. 2001) (per curiam) ("A district court has broad discretion in limiting the scope of summation.").

46

In response to improper summation remarks, district courts have the discretion to issue curative instructions that clarify the law or instruct the jury to disregard inappropriate comments. *See United States v. Patterson*, 2022 WL 17825627, at *4 (2d Cir. Dec. 21, 2022) (summary order) (finding that a curative instruction issued after defense counsel's closing argument "was proper to clear up any potential juror confusion"); *United States v. Modica*, 663 F.2d 1173, 1185 (2d Cir. 1981) ("Once the offending remarks are made, the judge can strike them and forcefully instruct the jury as to their inappropriateness."); *see also United States v. Young*, 470 U.S. 1, 13 (1985) (explaining that district court's response to defense counsel's improper summation properly includes curative instruction). Indeed, "[i]f a supplemental charge is legally correct, the district court enjoys broad discretion in determining how, and under what circumstances, that charge will be given." *United States v. Civelli*, 883 F.2d 191, 195 (2d Cir. 1989).

C.    Discussion

The district court's curative instruction here was entirely proper. The court properly followed the procedure set forth in Rule 30 and informed the parties of its proposed jury charge prior to summations.

47

When defense counsel then advanced an incorrect and misleading legal argument for the first time during summation, the court appropriately exercised its discretion to issue a curative instruction. This instruction could not have been addressed—or even predicted—in advance, and it therefore does not implicate, let alone run afoul of, Rule 30.

Goklu argues that he was prejudiced by the curative instruction because it unfairly prevented him from arguing his defense to the jury. (Br.29). But the instruction did no such thing—it simply added one sentence to the jury charge to address defense counsel's misleading suggestion that the language of Section 1960 required a "transfer" to a third party. The court did not direct a verdict or tell the jury that Goklu operated an unlicensed money transmitting business as a matter of law. Rather, it corrected a misimpression of the law that defense counsel created. This was entirely proper.

Additionally, Goklu's prejudice argument fails because the curative instruction was appropriate to vitiate prejudice *against the government*. During trial, defense counsel did not raise any argument that Goklu's Bitcoin-for-cash exchanges were not "transfers" within the meaning of Section 1960, and after the government submitted its

48

proposed jury charge, defense counsel did not raise any objections or request that the court advise the jury that Bitcoin-for-cash exchanges were not transfers under the statute. (A:654-55). Instead, for the first time during summation, defense counsel "literally said look at the charge to see how transfer is defined" to suggest that the definition of transfer did not cover Goklu's conduct. (A:657). The inclusion of that argument during summation prejudiced the government, which had "never heard this argument before" and stated that it "could have presented the evidence differently" had it been aware that such an argument would be made. (A:661). The district court recognized this effort to "sandbag the jury and [the court]" and acted within its discretion when it added the curative instruction. (A:659).

In sum, the curative instruction was not "expressly designed to blunt the effectiveness" of the defense summation, as Goklu contends. (Br.29). In fact, it was a proper statement of the law designed to blunt a transparent attempt to confuse the jury about a point of statutory construction at the last possible moment. Such an instruction does not violate Rule 30.

49

## IV.  Count One Was Not Impermissibly Duplicitous

Count One charged Goklu with money laundering based on financial transactions that took place between August 2018 and April 2019.  (DE:28 ¶ 1).  The transactions at issue were proven at trial to be part of a unified money laundering scheme, and their inclusion in a single count did not prejudice Goklu.  Count One was therefore not impermissibly duplicitous.[11]

### A.  Applicable Law

This Circuit follows "a general rule that criminal charges may aggregate multiple individual actions that otherwise could be charged as discrete offenses as long as all of the actions are part of a single scheme." *United States v. Moloney*, 287 F.3d 236, 240 (2d Cir. 2002); *see United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) ("[T]his court has long held that acts that could be charged as separate counts of an indictment may instead be charged as a single count if those acts could be characterized as part of a single continuing scheme.").  Specifically, "a

---

[11]    The government understands that Goklu's initial reference to Count Two being impermissibly duplicitous (*see* Br.37) is an error and that he is challenging Count One.

50

single money laundering count can encompass multiple acts provided that each act is part of a unified scheme." *Moloney*, 287 F.3d at 241. This Court has recognized that "many small transactions may also make up one large financial transaction" and "sequences of steps taken as part of a common scheme constitute one transaction for purposes of the money laundering statute." *Id.*

More generally, "not all duplicitous indictments are *impermissibly* duplicitous." *United States v. Kandic*, 134 F.4th 92, 99 (2d Cir. 2025) (emphasis in original). An indictment is impermissibly duplicitous only "where: 1) it combines two or more distinct crimes into one count in contravention of the requirement that there be a separate count for each offense, and 2) the defendant is prejudiced thereby." *Id.* As to the second prong, a defendant is prejudiced by a duplicitous indictment if it deprives him of his "right to a unanimous verdict," "implicates the Double Jeopardy Clause," or "implicates his right to notice of the charge against him." *Id.* at 99-100.

Goklu did not move to dismiss Count One based on duplicity. Therefore, this Court reviews this claim for plain error. *See United States v. Dupree*, 870 F.3d 62, 71 (2d Cir. 2017); *United States v. Murray*, 826 F.

51

App'x 97, 98 (2d Cir. 2020).  To warrant reversal under the plain error standard, there must be "(1) error, (2) that is plain, and (3) that affects substantial rights." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997).  Even where those conditions are met, this Court will reverse "only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 467.  This Court "appl[ies] the plain error doctrine sparingly and use[s] it only to prevent a miscarriage of justice." *United States v. Tellier*, 83 F.3d 578, 581 (2d Cir. 1996).

B.  Discussion

Because all transactions with UC were part of a unified scheme, Count One was not impermissibly duplicitous.  There was no error, let alone plain error, in submitting that count to the jury.  Multiple factors support this conclusion.

*First*, all transactions charged in Count One stemmed from one common point—Goklu's post on localbitcoins.com advertising his Bitcoin exchange service.  (A:342).

*Second*, Goklu represented on his advertisement that the most he would transact at once was $99,999.  (A:333-34).  Therefore, exchanging $133,190 worth of Bitcoin for cash—the total across the

52

transactions between Goklu and the UC—had to occur over the course of several transactions. And during their meetings, Goklu and the UC discussed future meetings to continue the transfer scheme, which would be based, in part, on the amount of drugs the UC said he could sell. (*See* GA:378-84; A:799-927).

*Third*, all transactions were effectuated with one common goal: exchanging the UC's Bitcoin for Goklu's cash through covert, nonpublic means while turning a profit for Goklu. (A:355, 453).

*Fourth*, each transaction took roughly the same form, with Goklu and the UC meeting in Goklu's Mercedes-Benz at a prearranged location, at which point the UC and Goklu transferred Bitcoin to Goklu's cryptocurrency wallet in exchange for cash. (A:353, 356).

*Fifth*, each transaction was part of Goklu's larger, for-profit business operation, which included clients other than the UC. In each transaction, Goklu was not purchasing distinct items that were separately identifiable; rather, each transaction was part of one larger scheme in which Goklu charged a fee for a service.

Goklu argues that his case is like *United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001), in which this Court found impermissible

53

duplicity where one count of possessing and distributing narcotics covered two drug transactions, *id.* at 73. In *Sturdivant*, the district court instructed the jury to return a guilty verdict if the jurors believed that the defendant engaged in either drug sale, but the court assumed at sentencing that the defendant "had been convicted based on both transactions." *Id.* at 75, 77. This Court found prejudice against the defendant because "the jury's verdict is only demonstrably unanimous with respect to one of [the] offenses," and vacated the sentence. *Id.* at 80.

Here, however, the district court did not instruct the jury to consider discrete transactions in deciding guilt; rather, the court instructed that Count One charged Goklu with money laundering based on his "knowingly and intentionally conduct[ing]…one or more financial transactions" involving property represented to be proceeds of specified unlawful activity, with the intent to conceal and disguise the nature, location, source, ownership, or control of the property, over a specified time period. (A:699). Because neither the jury charge nor the Indictment individually listed Goklu's transactions with the UC, the verdict was not ambiguously based on only one or a fraction of the transactions. Instead, the jury found Goklu guilty because it determined that his transactions,

54

collectively, constituted money laundering. Then at sentencing, as discussed more below, the district court found that the jury "had ample reason to find that [Goklu] was willingly and knowingly money laundering" in each transaction with the UC. (A:1020). Goklu was therefore not prejudiced by Count One, and *Sturdivant* is inapposite.

In sum, it was not duplicitous to charge Count One as a single money laundering scheme. Indeed, allowing Goklu's "unified scheme to be covered by a single count eliminate[d] the cumbersome and largely pointless need to charge him with a count of money laundering for every [transaction with] any of his clients." *Moloney*, 287 F.3d at 241.[12]  And given this Court's precedent establishing that it is appropriate to charge one money laundering count when multiple smaller transactions together constitute a unified scheme (*see id.*; *Olmeda*, 461 F.3d at 281),[13] any error in submitting Count One to the jury certainly was not plain.

---

[12]    Goklu argues that his case is distinguishable from *Moloney* because, unlike Moloney, he "was *not* involved in the underlying unlawful activity which alleged generated the funds." (Br.39).  But that point is irrelevant and elides *Moloney*'s fundamental holding.

[13]    Goklu notes that other circuits have concluded that illicit money laundering transactions should be charged under separate counts, but "those courts lack the Second Circuit's general presumption in favor

55

## V. The District Court Did Not Err at Sentencing by Including the Proceeds of the First Three Meetings in the Guidelines Calculation

Goklu argues that the district court committed procedural error by including the money exchanged during the first three transactions between Goklu and the UC in its Guidelines calculation. (Br.43). This argument misses the mark.

### A. Relevant Facts

Prior to sentencing, the PSR calculated Goklu's Guidelines using a loss figure of $133,190, yielding a base offense level of 16. (PSR ¶ 23). Goklu objected to the loss figure, claiming that his first three transactions with the UC "did not involve any discussion of, or reference to, those monies being narcotics proceeds." (A:1003). He therefore argued that those transactions—approximately $48,000 in total—should be subtracted from the loss amount, which would reduce the base offense level to 14. (*See* A:1003-04; U.S.S.G. § 2B1.1(b)(1)).

---

of allowing a common scheme to be treated as part of a single offense." *Moloney*, 287 F.3d at 240. This Court should decline Goklu's invitation to disregard established precedent on this issue.

56

The district court rejected this argument for two reasons. First, the court noted that "based on the defendant's conversations with the undercover…it would be reasonable for the jury to infer that the defendant had reason to believe and also at least was willfully blind to the fact that he was laundering illegal money." (A:1020). Second, the court "read the guidelines as covering all of the funds that were transacted as part of the crime because at least some of them…[Goklu] knew were proceeds of illegal activity after the UC…told the defendant that he was a drug dealer." (A:1021; *see* A:1096 ("[H]aving heard the video recordings of the transactions between the undercover and Mr. Goklu during trial, it's clear to me that Mr. Goklu knew full well that he was laundering drug proceeds for this undercover and proceeds of other criminal activity.")).

The district court's inclusion of the first three transactions yielded a total offense level of 22. (PSR ¶ 29; A:1018-32).[14]  Based on a

---

[14]     In addition to the base offense level of 16, six points were added per U.S.S.G. § 2S1.1(b)(1) because Goklu "knew the laundered funds were the proceeds of narcotics trafficking," and two points were added per § 2S1.1(b)(2)(B) because Goklu was convicted under 18 U.S.C.

57

criminal history category of I, the court calculated Goklu's Guidelines range to be 41-51 months' imprisonment. (A:1032). The court then "substantially downwardly varied" from this range and sentenced Goklu to 16 months' imprisonment. (A:1102).

B.    Applicable Law

This Circuit "review[s] a sentence for procedural and substantive reasonableness, which is akin to a deferential abuse-of-discretion standard." *United States v. McCrimon*, 788 F.3d 75, 78 (2d Cir. 2015) (per curiam); *accord United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). This "standard incorporat[es] *de novo* review of questions of law, including interpretation of the Guidelines, and clear error review of questions of fact." *United States v. Gahagen*, 44 F.4th 99, 107 (2d Cir. 2022).

When reviewing a sentence for procedural reasonableness, this Court "check[s] the sentence to ensure…that the district court followed the right steps in imposing it." *United States v. Ramos*, 979 F.3d 994, 998 (2d Cir. 2020). "A district court commits procedural error when

---

§ 1956. (PSR ¶¶ 23-25). The court reduced Goklu's offense level by two points because he was a "zero point offender." (A:1017-19).

58

it fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the 18 U.S.C. § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Traficante*, 966 F.3d 99, 102 (2d Cir. 2020).

C.    Discussion

1.    The District Court Did Not Commit Procedural Error by Including the Proceeds of the First Three Meetings in the Total Value of Laundered Funds

The district court properly included the money exchanged during the first three meetings in its Guidelines calculation.

*First*, the court considered Goklu's conversations with the UC during their first three transactions and concluded that "it would be reasonable for the jury to infer that the defendant had reason to believe and also at least was willfully blind to the fact that he was laundering illegal money." (A:1020).  The record supports this conclusion, as it reflects multiple instances where Goklu referenced the police and his fear of being caught engaging in deals with the UC.  (*See, e.g.*, A:354, 375, 379, 392).  The court also determined that it "was very clear once the undercover told" Goklu that he was a drug dealer, Goklu "then continued

59

to launder money for the undercover, sort of bolstering the notion that he believed it before but just didn't care." (A:1020-21).  This interpretation of the facts was not clearly erroneous.

*Second*, the court interpreted U.S.S.G. § 2S1.1(a)(2) as saying that "it isn't necessary that all the funds were proceeds of illegal activity for them to be counted and for the [base offense] level to be raised, but that any of the funds were proceeds of illegal activity." (A:1021).  This interpretation accords with the plain language of U.S.S.G. § 2S1.1(a)(2), which states that the base offense level should be calculated "corresponding to the value of the laundered funds."  The total value of the laundered funds here was approximately $133,000, and the district court did not err in using that figure.

Goklu argues that using this number was erroneous because the Guidelines "clearly indicate[] that a sentencing court should distinguish between illicit and non-illicit funds." (Br.44).  In support, he cites Application Note 3(B) to U.S.S.G. § 2S1.1(a)(2), which reads:

> In a case in which a transaction, financial transaction, monetary transaction, transportation, transfer, or transmission results in the commingling of legitimately derived funds with criminally derived funds, the value of the

60

> laundered funds, for purposes of subsection (a)(2),
> is the amount of the criminally derived funds, not
> the total amount of the commingled funds....

But this comment merely instructs courts to distinguish between "legitimately derived funds" and "criminally derived funds" in cases where lawful and unlawful funds have been commingled. Here, there was no commingling: *none* of the Bitcoin that Goklu exchanged into cash for the UC was "legitimately derived." The court and the jury both found that Goklu did not have a reasonable belief that he was working with legitimately derived Bitcoin or cash. Goklu's repeated references to the UC regarding his wariness of the police further this notion.

And even if Goklu was not explicitly told during the first three transactions that the UC's Bitcoin was criminally derived, he certainly knew this fact during the fourth transaction, when the UC informed Goklu that he "sell[s] oxycodone and Adderall." (A:405). Instead of immediately cutting off the transactions with the UC—which would have demonstrated that Goklu was unaware that the Bitcoin was criminally derived and that Goklu was unwilling to launder money—Goklu met and transacted with the UC on multiple subsequent occasions. Goklu's unflinching willingness to continue transacting with the UC further

61

proves that he understood from the beginning—or was at least willfully blind to the fact[15]—that the UC's Bitcoin was criminally derived.

In this case, the district court correctly instructed the jury that (1) the government was not required to prove that the UC affirmatively told Goklu that the property involved was the proceeds of unlawful activity, and (2) in determining whether Goklu believed that the property was the proceeds of narcotics trafficking, it could consider whether Goklu "deliberately closed his eyes…to what otherwise would have been obvious to him." (A:703). The court appropriately followed the same law when it imposed sentence and, based on the totality of the facts known to Goklu during the transactions, it was perfectly reasonable for the district court to find by a preponderance standard that Goklu believed, *ab initio*, that he was laundering illicit funds. Therefore, the district court did not err in including the funds from the first three transactions in calculating Goklu's total offense level.

---

[15] *See United States v. Finkelstein*, 229 F.3d 90, 95 (2d Cir. 2000) ("[T]he knowledge element is established if the factfinder is persuaded that the defendant consciously avoided learning [an elemental] fact while aware of a high probability of its existence.").

62

## 2.    Any Procedural Error at Sentencing Was Harmless

Even if this Court finds that the district court committed procedural error by including the funds from the first three transactions in the calculation of Goklu's Guidelines offense level (which it did not), the error was harmless.

"Where we identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." *United States v. Darrah*, 132 F.4th 643, 648 (2d Cir. 2025); *accord United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009).

Here, when imposing sentence, the court thoroughly considered the Section 3553(a) factors. (*See* A:1094-1102). Regarding the loss figure in particular, the court explained:

> [From] Mr. Goklu's point of view, he was laundering $133,000 in criminal proceeds or at least some portion of it. Maybe not the first couple of transactions, but certainly the bulk of it. But I do think the guidelines overstate the seriousness to an extent of Mr. Goklu's criminal activity…I've really focused on the amounts that were transacted by the undercover, which is what the

> guidelines are based on.  And I still find that it
> overstates the seriousness of the crime.

(A:1100-01).

Thus, the district court acknowledged that, even though the $133,000 total was appropriate for Guidelines purposes, the "first couple of transactions" did not drive its analysis of Goklu's culpability.  Also, the court repeatedly stated that the loss number "overstated the seriousness" of the crime, and Goklu's substantially below-Guidelines sentence reflected this conclusion.  Indeed, even if the first three transactions were excluded from the analysis, Goklu's total offense level would have been 20,[16] yielding a Guidelines range of 33 to 41 months' imprisonment. Goklu's sentence of 16 months' imprisonment falls well below even the reduced Guidelines range.  *See United States v. Pristell*, 941 F.3d 44, 56 (2d Cir. 2019) (affirming a below-Guidelines sentence where the sentencing court stated that a contested enhancement "would not make a great deal of difference in the final analysis"); *United States v. Mandell*, 752 F.3d 544, 553 (2d Cir. 2014) (per curiam) (finding that "any error in

---

[16]   Excluding the first three transactions would move the total losses from Category E ("More than $95,000") to Category D ("More than $40,000").  *See* U.S.S.G. § 2B1.1(b)(1)(D)-(E); (*see also* A:928).

64

the district court's calculations was harmless" where the Guidelines ranges proposed by the appellant "would have still been far in excess of the sentence actually imposed by the district court"). The district court was therefore clear that its "substantially downwardly varied sentence" was not driven by the inclusion in the loss calculation of the first three transactions. To the extent the inclusion of such transactions was error, it was harmless.

VI.   The Error in the Presentence Report is Immaterial

Goklu claims that the PSR erroneously calculated his Guidelines regarding Count Two. Goklu is correct that the PSR contains a calculation error, but that error did not affect the sentence and does not require a resentencing.

The correct guideline for a violation of 18 U.S.C. § 1960(b)(1)(A) and (B) is U.S.S.G. § 2S1.3, which provides a base offense level of 6 plus the number of offense levels from the table in U.S.S.G. § 2B1.1(b)(1), corresponding to the value of the funds involved—here, Goklu is accountable for $133,190, increasing the base offense level by 8. *See* U.S.S.G. § 2B1.1(b)(1)(E). And because Goklu believed that the funds were proceeds of or were intended to promote narcotics trafficking, the

65

offense level is increased by 2.  *See* U.S.S.G. § 2S1.3(b)(1).  This results in a total offense level of 16, not 24 as calculated in the PSR.

However, this discrepancy does not affect Goklu's sentence, because his total offense level remains 22 after his two offenses of conviction are grouped together pursuant to U.S.S.G. § 3D1.2.[17]  As such, there is no need for resentencing on this issue.

VII.  The Arguments Raised in Goklu's Pro Se Brief Are Meritless

A.  Goklu's Challenges to the
Sufficiency of the Proof Are Meritless

Goklu challenges the sufficiency of the proof at trial on multiple grounds.  *First*, he claims that the government failed to present sufficient evidence to prove money laundering because the Bitcoin transactions involved no actual criminal proceeds and intent was never established beyond a reasonable doubt.  (Pro Se Br.6-7).  Specifically, Goklu claims that the government presented no forensic financial evidence linking the Bitcoin transactions to actual criminal proceeds. (*Id.* at 5-7).  *Second*, Goklu claims that the government's failure to call a

---

[17]  This includes the two-level reduction for being a zero-point offender, which was not included in the PSR.

66

qualified financial expert rendered the proof against him insufficient. (Pro Se Br.10). Goklu's claims are baseless.

At bottom, Goklu misapprehends the offense he committed. Goklu was not charged with or convicted of substantive money laundering under 18 U.S.C. § 1956(a)(1), which criminalizes knowingly conducting a financial transaction with actual proceeds from specified unlawful activity. Instead, Goklu was charged with and convicted of violating the money laundering "sting provision" of 18 U.S.C. § 1956(a)(3)(B), which criminalizes conducting or attempting to conduct a financial transaction with money or other property provided by a federal agent that is represented as the proceeds of specified unlawful activity with the intent "to conceal or disguise the nature, location, source, ownership, or control" of the property.

The government agrees with Goklu that the Bitcoin he exchanged for the UC was not actual proceeds of specified unlawful activity; rather, it was property that the UC represented, and Goklu believed, was such. That is enough under § 1956(a)(3)(B). Likewise, the government was not obligated to put on a qualified financial expert or other witness to establish that the money was criminal proceeds, as that

67

issue was irrelevant.  Instead, looking at the evidence in the light most favorable to the government, the jury could easily lawfully convict Goklu based solely on the testimony of the UC or the recordings.[18]

B.    Goklu's Claims of Government Misconduct
        or Mischaracterizations Are Meritless

Goklu raises a series of claims regarding alleged government misconduct or mischaracterization of evidence that boil down to complaints that the government did not argue his side of the case or introduce evidence that favored him.  These claims should be rejected.

Goklu claims that the government "characterized Bitcoin as inherently criminal."  (Pro Se Br.10; *see id.* at 19-20).  Goklu is incorrect: The government called a cryptocurrency expert who testified about legal uses of Bitcoin, the lawful exchange of Bitcoin, and the lawful use of Bitcoin automated teller machines.    (A:287-88, 310, 316-17, 323). Moreover, Goklu's trial counsel established through cross-examination of the expert that the use and exchange of Bitcoin was legal.  (A:308-17).

---

[18]    Notably, Goklu admits that the evidence "suggested I knew the funds were illicit based on conversations…."  (Pro Se Br.7).  Given that the only disputed element at trial was Goklu's knowledge, his admission that the evidence suggested Goklu knew the funds were illicit is fatal to his argument.

68

Similarly, Goklu complains that the government "distorted discussions about [the] legal marijuana business," mischaracterized Goklu's business records, and relied on "Signal messages, taken out of context." (Pro Se Br.9-10). Goklu was free to call other witnesses or testify to emphasize his view of the evidence. He is not entitled, however, to compel the government to do so.[19]

The larger thrust of Goklu's pro se claims is that he wants this Court to order a new trial and suppress information unfavorable to him.[20] This request lacks any legitimate basis and should be rejected.

---

[19]     Goklu also repeatedly exaggerates the evidence and omits context. For example, Goklu repeatedly claims that when the UC mentioned Adderall and "Oxy" to him, he responded by asking "what's Adderall? What's oxy?" (Pro Se Br.13). In reality, Goklu did not raise any questions about Adderall. Instead, Goklu asked, "What's oxys?" The UC responded, "It's like oxycodone, that stuff." Goklu then responded in a manner strongly suggesting he knew exactly what oxycodone was, stating, "Don't bring those. Just bring regular street things." (A:406; *see* A:889; GA:382).

[20]     Goklu also levies allegations about a witness whom the government called at sentencing to rebut Goklu's assertion that he was generally a law-abiding person. (Pro Se Br.30-33). These allegations are irrelevant, unsupported, and unworthy of consideration on appeal.

69

C.   Goklu's Claims of Ineffective
     Assistance of Counsel Are Meritless

In an ineffective-assistance-of-counsel claim, the burden rests on Goklu to show by a preponderance of the evidence that he received ineffective assistance of counsel.  *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000).  He cannot meet that burden.

To warrant relief, Goklu must demonstrate both (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that the poor performance prejudiced the outcome of the proceeding.  *United States v. Strickland*, 466 U.S. 668, 687-88 (1984).  To satisfy the performance prong, Goklu must demonstrate that counsel's performance, measured by an "objective standard of reasonableness," was "deficient" in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*   In assessing the reasonableness of counsel's performance, judicial scrutiny "must be highly deferential" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.   "The reasonableness of counsel's performance is to be evaluated from counsel's

70

perspective at the time of the alleged error and in light of all the circumstances," *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986), bearing in mind that "[t]here are countless ways to provide effective assistance in any given case," *Strickland*, 466 U.S. at 689. Notably, an unsuccessful trial strategy does not by itself amount to ineffective assistance. *See Cuevas v. Henderson*, 801 F.2d 586, 590 (2d Cir. 1986) ("[W]e have repeatedly noted our reluctance to second-guess matters of trial strategy simply because the chosen strategy was not successful.").

The second prong of *Strickland* focuses on the "reasonable probability" of prejudice, that is, whether "but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Speculative arguments about an error's impact do not establish prejudice. *See United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991). Indeed, the Second Circuit generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

71

Goklu claims that his trial counsel was ineffective because he failed to (1) challenge the government's narrative, (2) present testimony from a Bitcoin or financial expert, (3) properly object to prejudicial evidence, (4) file a selective prosecution motion, and (5) challenge "manipulat[ed]…voice recordings"—all of which contributed to Goklu's conviction. (Pro Se Br.7, 11-12, 15, 29).

These claims are contradicted by the record. Trial counsel aggressively challenged the government's proof regarding Goklu's knowledge, extensively cross-examining the UC, offering alternative explanations for the conversations captured on the recordings, and arguing to the jury—at length—that the government had not established that Goklu knew the Bitcoin was from illicit activity. Trial counsel also elicited admissions from the government's cryptocurrency expert that Bitcoin had legitimate uses and that transacting in Bitcoin, in and of itself, was not illegal, rendering unnecessary a defense cryptocurrency or financial expert. (*See* A:310, 316-17).

With respect to the voice recordings, Goklu has put forth no evidence—other than his bare allegation—that the recordings were manipulated. The government introduced the entirety of the available

72

recordings at trial.  At no point did Goklu seek to suppress or otherwise challenge the recordings as manipulated.  His baseless assertions are plainly insufficient now.

Finally, regarding trial counsel's failure to file a selective prosecution motion, there is no legal requirement for counsel to file a frivolous motion.  Selective prosecution occurs when the decision to prosecute is based upon the defendant's race, religion, or another impermissible basis.  *See United States v. Armstrong*, 517 U.S. 456, 464-65 (1996).  Here, there is no evidence that the prosecution was based upon an impermissible basis.  To the contrary, the UC testified that the DEA learned that individuals were using localbitcoins.com to facilitate money laundering and focused on advertisements on the website that charged fees significantly higher than those charged by commercial exchanges.  (A:329-30).  Goklu's advertisement stood out because both he and the UC were based in New York City and Goklu was willing to exchange relatively high amounts of money and Bitcoin.  (A:331).[21]  The UC further

---

[21]     Goklu's localbitcoins.com advertisement did not identify Goklu's name, race, religion, or other similar information.  (GA:367-69).

73

testified that he did not meet Goklu until their first recorded conversation.  As such, there is no basis in the record for trial counsel to have filed a selective prosecution motion.

74

## CONCLUSION

For the reasons stated above, the judgment should be affirmed in all respects.

Dated:      Brooklyn, New York
            June 17, 2025

                              Respectfully submitted,

                              JOSEPH NOCELLA, JR.,
                              *United States Attorney,*
                              *Eastern District of New York.*

                    By:   /s/ FRANCISCO J. NAVARRO
                          FRANCISCO J. NAVARRO
                          Assistant U.S. Attorney


DYLAN A. STERN,
FRANCISCO J. NAVARRO,
*Assistant United States Attorneys,*
      (*Of Counsel*).

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Rule 32.1(a)(4) because the brief contains 13,945 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated:  Brooklyn, New York
        June 17, 2025

              /s/ Dylan A. Stern
              Dylan A. Stern
              Assistant United States Attorney

APPENDIX

# TABLE OF CONTENTS

Page

Government Exhibits,
  *United States v. Goklu*, No. 19-CR-386 (PKC)

GX101 ................................................................ GA1

GX102 ................................................................ GA4

GX103 ................................................................ GA5

GX104 ................................................................ GA6

GX215 ................................................................ GA10

GX217 ................................................................ GA11

GX228 ................................................................ GA12

GX401 ................................................................ GA367

GX763 ................................................................ GA371


## Submitted Separately On Disc

GX801 ................................................................ GA378

GX802 ................................................................ GA379

GX803 ................................................................ GA380

GX804 ................................................................ GA381

GX806 ................................................................ GA382

GX807 ................................................................ GA383

GX809 ................................................................ GA384

GA001



July 23, 2020

████████████████████████

Drug Enforcement Administration
99 10th Avenue
New York, NY 10011

Dear ████████

In response to your request for certified Bank Secrecy Act records, please find attached FinCEN Form 082 -Document Transmittal Form along with your requested records.

Please acknowledge receipt of these records by completing the blank fields at the bottom of the Document Transmittal form and email a PDF copy of the completed form to CertifiedDocs@fincen.gov.

If FinCEN can be of further assistance, please contact our office at (703) 905-5150.

Sincerely,



Office Director
Operational Information and Development

Attachments:

FinCEN Document Transmittal Form
Memorandum of Negative Certifications (2)

GOVERNMENT
EXHIBIT
**101**
19 CR 386 (S-1) (PKC)

GA002



July 23, 2020

## MEMORANDUM FOR CERTIFIED BSA RECORD REQUESTOR

**FROM:**

Office Director
Operational Information and Development

**SUBJECT:**       Certification of Search for FinCEN Form 107,
Registration of Money Services Business

As the federal government agency with primary responsibility for maintaining reports filed pursuant to the Bank Secrecy Act, 31 U.S.C. §5311, *et seq.*, the Financial Crimes Enforcement Network has conducted a diligent search for any FinCEN Form 107, Registration of Money Services Business under its control that relate to:

**SUBJECT:**   MUSTAFA GOKLU
**AKA:**       MICHAEL N. GOKLU
**DOB:**
**SSN:**

The above search of our records found no such forms filed by, or on behalf of, the above listed individual from 01/01/2001 through 07/20/2020.

GA003



July 23, 2020

**MEMORANDUM FOR CERTIFIED BSA RECORD REQUESTOR**

**FROM:**

Office Director
Operational Information and Development

**SUBJECT:** Certification of Search for FinCEN Form 107,
Registration of Money Services Business

As the federal government agency with primary responsibility for maintaining reports filed pursuant to the Bank Secrecy Act, 31 U.S.C. §5311, *et seq.*, the Financial Crimes Enforcement Network has conducted a diligent search for any FinCEN Form 107, Registration of Money Services Business under its control that relate to:

**SUBJECT:** MUSTANGY CORP USA
**EIN:**

The above search of our records found no such forms filed by, or on behalf of, the above listed entity from 01/01/2001 through 07/20/2020.

GA004

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

  - against -                    <u>CERTIFICATION</u>

MUSTAFA GOKLU,
       also known as "Mustangy,"

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      I, ROBERT TARWACKI, declare that I am a CRIMINAL INVESTIGATOR of THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES. I have legal custody of certain official records of the New York State Department of Financial Services; specifically, entities licensed to conduct the business of receiving money for transmission and transmitting the same pursuant to NY Banking Law § 641. Such records are kept in the course of regularly conducted business activity, and made at the time of the occurrence or event, or within a reasonable time thereafter.

      I have completed a diligent search of those records and concluded that there is no record of the following individuals or entities as ever holding a license from the New York State Department of Financial Services, or a predecessor agency, to conduct the business of receiving money for transmission or transmitting the same.

- Mustafa GOKLU, also known as Michael Goklu, (DOB: ███████████)

    Witness my hand and official seal the day and year aforesaid

*hable as a Class*
*45.*

9-14-22
———————
Date

GOVERNMENT
EXHIBIT
**102**
19 CR 386 (S - 1) (PKC)

GA005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

  - against -                                        <u>CERTIFICATION</u>

MUSTANGY CORP USA
             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

      I, ROBERT TARWACKI, declare that I am a CRIMINAL INVESTIGATOR of THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES. I have legal custody of certain official records of the New York State Department of Financial Services; specifically, entities licensed to conduct the business of receiving money for transmission and transmitting the same pursuant to NY Banking Law § 641. Such records are kept in the course of regularly conducted business activity, and made at the time of the occurrence or event, or within a reasonable time thereafter.

      I have completed a diligent search of those records and concluded that there is no record of the following individuals or entities as ever holding a license from the New York State Department of Financial Services, or a predecessor agency, to conduct the business of receiving money for transmission or transmitting the same.

- **MUSTANGY CORP USA (DOL ID:** ▮▮▮▮▮ )

    Witness my hand and official seal the day and year aforesaid



...nishable as a Class
...0.45.

9-14-22
                             Date

GOVERNMENT
EXHIBIT
**103**
19 CR 386 (S- 1) (PKC)

GA006

# STATE OF NEW YORK
# DEPARTMENT OF STATE

I hereby certify that the annexed copy for MUSTANGY CORP USA, File Number 121016000648 has been compared with the original document in the custody of the Secretary of State and that the same is true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on August 03, 2022.

Brendan C. Hughes
Executive Deputy Secretary of State

Authentication Number: 100001976201 To Verify the authenticity of this document you may access the Division of Corporation's Document Authentication Website at http://ccorp.dos.ny.gov

GOVERNMENT
EXHIBIT
**104**
19 CR 386 (S - 1) (PKC)

GA007

121016000648

**New York State Department of State**
Division of Corporations, State Records and Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231
www.dos.ny.gov

# CERTIFICATE OF INCORPORATION

## OF

### MUSTANGY CORP USA

*(Insert Corporate Name)*

#### Under Section 402 of the Business Corporation Law

**FIRST:** The name of the corporation is:

MUSTANGY CORP USA

**SECOND:** This corporation is formed to engage in any lawful act or activity for which a corporation may be organized under the Business Corporation Law, provided that it is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

**THIRD:** The county, within this state, in which the office of the corporation is to be located is: Queens County

**FOURTH:** The total number of shares which the corporation shall have authority to issue and a statement of the par value of each share or a statement that the shares are without par value are: 200 No Par Value

**FIFTH:** The Secretary of State is designated as agent of the corporation upon whom process against the corporation may be served. The address to which the Secretary of State shall mail a copy of any process accepted on behalf of the corporation is:

Mustafa GOKLU

DOS-1239-f-f (Rev. 02/12)

Page 1 of 2

10/16/2012  07:33 p  TO:+1 (518) 4741418  FROM:7187999185     Page: 10

1 2 1 0 1 6 0 0 0 C 6 4 8

RECEIVED
2012 OCT 16 PM 1: 16

## Incorporator Information Required

X 

(Signature)

Mustafa Goklu

(Type or Print Name)

(Address)

(City, State, Zip Code)

## CERTIFICATE OF INCORPORATION
## OF

MUSTANGY CORP USA

(Insert Corporate Name)

Under Section 402 of the Business Corporation Law

Filed by:  Mustafa GOKLU

(Name)

(City, State and Zip Code)

Note: This form was prepared by the New York State Department of State for filing a certificate of incorporation for a business corporation. It does not contain all optional provisions under the law. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that legal documents be prepared under the guidance of an attorney. The fee for a certificate of Incorporation is $125 plus the applicable tax on shares required by Section 180 of the Tax Law. The minimum tax on shares is $10. The tax on 200 no par value shares is $10 (total $135). Checks should be made payable to the Department of State for the total amount of the filing fee and tax.

For DOS use only

FILED
2012 OCT 16 PM 2:55

**STATE OF NEW YORK**
DEPARTMENT OF STATE

LED  OCT 16 2012

X $_____  10
Y:_____  LSO

Queens

DOS-1239-f-f (Rev. 02/12)

Page 2 of 2

LSO-10

684

GA009

**STATE OF NEW YORK**

**DEPARTMENT OF STATE**

Certificate of Status

I, ROBERT J. RODRIGUEZ, Secretary of State of the State of New York and custodian of the records required by law to be filed in my office, do hereby certify that upon a diligent examination of the records of the Department of State, as of the date and time of this certificate, the following entity information is reflected:

| | |
|---|---|
| **Entity Name:** | MUSTANGY CORP USA |
| **DOS ID Number:** | ▮▮▮▮ |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Entity Status:** | NO LONGER EXISTING |
| **Date of Initial Filing with DOS:** | 10/16/2012 |

No information is available from this office regarding the financial condition, business activity or practices of this entity.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on August 03, 2022 at 06:06 P.M.

ROBERT J. RODRIGUEZ, Secretary of State

By Brendan C. Hughes
Executive Deputy Secretary of State

Authentication Number: 100001976208 To Verify the authenticity of this document you may access the Division of Corporation's Document Authentication Website at http://ecorp.dos.ny.gov

GA010

## Advantage Funding
### Transportation Financing & Leasing Specialists

Account Name: **Mustangy Corp USA**
Account Number: **4032-21668**
Vehicle: **2013 Mercedes-Benz Sedan S350 BTC**
VIN: **WDDNG8DB2DA515230**

### Title Instructions

Advantage Funding hereby guaranties the title and/or lien release to be mailed within **10** business days from the payoff posting date if *guaranteed funds* are received.  If *personal funds* are received, the title and/or lien release will be mailed within **30** days from the payoff posting date. **If you have additional accounts that are delinquent or have property tax due, the title will be held by Advantage Funding until all accounts are current and/or all property taxes have been paid.**

Address to which the title and/or lien release for the vehicle listed above will be forwarded:

*Michael GOKLU*

Attn: _Michael Goklu_

**\*\*\* PLEASE NOTE: We Cannot Mail a Title to a P.O. Box. Please Supply Us with a Street Address\*\*\***

Contact for this account  *Michael Goklu*

Customer Name                Phone Number

x  _Meghli_                 _Michael Goklu_          _05/03/2018_
Customer Signature          Customer Name & Title        Date
                           *President*

*This form can be returned to Advantage Funding via mail, fax, or email to your Advantage Funding Customer Service Representative.*

ONE MARCUS AVENUE LAKE SUCCESS NEW YORK 11042
CUSTOMERSERVICEAF@SNB.COM
Website: www.advantagefund.com or www.sterlingnationalbank.com

**GOVERNMENT EXHIBIT**
**215**
**19 CR 386 (S-1) (PKC)**



GA012



## Case

| | |
|---|---|
| **Exhibit Number** | N132 |
| **Lab Number** | 2019-SFL9-00901 |
| **Agency / Department** | DEA / SFL9 |
| **Examiner** | DFE Anthony Mosher |



GOVERNMENT
EXHIBIT
**228**
19 CR 386 (S-1) (PKC)

**1**  **Messages 1 - Page 1 of 9**



| | Signal | | |
|---|---|---|---|
| KC | **Kn Cinli** You there? | NOW | |
| ML | **Moreli Lcl Yirmi** Hey | NOW | |
| | **+18454067016** (~EM) Hey | NOW | |
| | **+16462434281** Missed call | NOW | |
| | **+13153641894** Sorry 10k min | NOW | |
| | **+16467079753** (~Brucebruce) How much | NOW | |
| | **+16126437544** (~Fighting Irish) Maybe next week | NOW | |
| | **+12129206185** (~JL) Hi there, I'm interested in buying 1.4k USD... | NOW | |
| | **+17814923113** (~Connor O'Hara) Hey! I'm looking to get 1800$ in BTC | NOW | |
| | **+17325829660** (~Karma) I hope theres nothinng else on this app... | | |

| 2021-01-04 14:16:14 PM | MD5 | 34963280DADF90C5EEFE75166C89894F |
|---|---|---|

**2** Messages 1 - Page 2 of 9



| | | |
|---|---|---|
| 2021-01-04 14:16:55 PM | MD5 | 84DBEEE3CC530DBFDCF32610F9C0DE53 |

**3**    Messages 1 - Page 3 of 9



| 2021-01-04 14:17:11 PM | MD5 | 788E46F7AD476DB2CC3ED838AD4A2677 |

**4**    Messages 1 - Page 4 of 9



**Signal**

+17186184138 (~j)   NOW
hi, found you on localbitcoin. can you sell ...

+16464792658 (~Josh Verbitsky)   NOW
With potential for larger buys in the future...

Ali Qatar Diplomat   NOW
Ali Qatar Diplomat is on Signal!

Brianne Soner   NOW
Brianne Soner is on Signal!

+19179917017   NOW
In city until Sunday let me know if want ...

+16035156081 (~Mike)   NOW
Me to i dont scam but please understan...

Bryan Lcl   NOW
Bryan Lcl is on Signal!

+19148304819 (~z4ht00r)   NOW
Having issues verifying ID at terminal

+17732631785 (~Josh)   NOW
Hi, are you buying BTC at at 8% premium o...

+16463749529 (~The Grand Creator ...
Ok bro

| 2021-01-04 14:17:26 PM | MD5 | 289B7CF4E0460BF00C729D961CE806D5 |
|---|---|---|

## 5     Messages 1 - Page 5 of 9



| 2021-01-04 14:17:42 PM | MD5 | 6511FE4BC755B8F51FAC7273CBC81D21 |
|---|---|---|

**6**   Messages 1 - Page 6 of 9



| | | |
|---|---|---|
| 2021-01-04 14:17:54 PM | MD5 | 7A2BB9F218B24D64BD44DAE512D1DDA4 |

**7**    Messages 1 - Page 7 of 9



| | | |
|---|---|---|
| Signal | Q | ⋮ |
| **Long Branch Nj** | | NOW |
| Good luck | | ∞ |
| **+12097638346** (~Corey Hanson) | | NOW |
| I just steed up with phone | | |
| **+13329993322** | | NOW |
| Localbitcoin ? | | ∞ |
| **Arabi Kizoglan** | | NOW |
| If youre inside | | |
| **+12246881000** (~Angel Perez) | | NOW |
| Ok good luck | | ∞ |
| **+13479642859** (~1 347~964~2859) | | NOW |
| Yes ok | | ∞ |
| **+16099377924** (~Mykonos) | | NOW |
| Please check price at localbitcoin page | | ∞ |
| **+13479687715** | | NOW |
| Yes around new | | |
| **+13473239179** | | NOW |
| Can you tell in % | | |
| **+16097217055** (~Cocojumbo) | | |
| Hola | | |

| 2021-01-04 14:18:14 PM | MD5 | 23ABBC8F92926F2B22B9E77EB5B18365 |
|---|---|---|

**8**    Messages 1 - Page 8 of 9



| 2021-01-04 14:18:32 PM | MD5 | B811764E1BE442F46FFAEBA0E4EC54FF |

**9**    Messages 1 - Page 9 of 9



| 2021-01-04 14:18:46 PM | MD5 | 6450809815791C13CA595DF1932A8C3B |

## 10  Message Thread 1 - Page 1 of 12



| 2021-01-04 14:19:21 PM | MD5 | A9D3EF55078C245A849A54D586F1A8FA |

## 11  Message Thread 1 - Page 2 of 12





| 2021-01-04 14:19:49 PM | MD5 | 3281CEFCAC897391659E4239D5F55F92 |
|---|---|---|

**12**    Message Thread 1 - Page 3 of 12 



| 2021-01-04 14:20:35 PM | MD5 | F1DFFF490AEB7D43D8DDC09B2523E745 |
|---|---|---|

**13** Message Thread 1 - Page 4 of 12 



| 2021-01-04 14:20:49 PM | MD5 | 9957653D4AF9CA0DEF7C80EEF14CB5AE |
|---|---|---|

**14**  Message Thread 1 - Page 5 of 12





| 2021-01-04 14:21:07 PM | MD5 | 633F09A0D92BE5BD0D8A0A5094E00926 |

**15** Message Thread 1 - Page 6 of 12 



| 2021-01-04 14:21:28 PM | MD5 | FCEB52C634E053FD310535CCB5480327 |
| --- | --- | --- |

## 16 Message Thread 1 - Page 7 of 12



| 2021-01-04 14:21:55 PM | MD5 | B85AB999D465F4E85D04A02FD14F4A98 |

## 17  Message Thread 1 - Page 8 of 12



**+12016408859**
~Bigapple

**Big Apple Plug, [25.04.19 12:14]**
I definitely want to commit to tomorrow
if you're available

**Michi G, [25.04.19 12:15]**
afternoon is okay

**Big Apple Plug, [25.04.19 12:16]**
I'll work with whatever your timeframe
is.

**Big Apple Plug, [25.04.19 12:16]**
I really appreciate your response

**Big Apple Plug, [25.04.19 12:17]**
Thank you much

**Michi G, [25.04.19 12:24]**
No problem

**Michi G, [25.04.19 12:24]**
Text when ready

**Big Apple Plug, [25.04.19 12:25]**
Understood. I am always online. If
anything changes please feel free to let
me know.

Signal message

| 2021-01-04 14:22:11 PM | MD5 | EA75D55558E3CE773B9E2E0A7FF7A0F3 |

**18** Message Thread 1 - Page 9 of 12 



| 2021-01-04 14:22:23 PM | MD5 | 5E851B711A73DD5C9F1F3447F2782316 |

**19** Message Thread 1 - Page 10 of 12





| 2021-01-04 14:22:38 PM | MD5 | 666B068CF80D8363FDFF6FB0480080FF |

**20** Message Thread 1 - Page 11 of 12





| 2021-01-04 14:22:51 PM | MD5 | 573FAC3963DEE4F9719BE2D918AD8A39 |

**21** Message Thread 1 - Page 12 of 12 



| 2021-01-04 14:23:06 PM | MD5 | EF1C185FC7AE77AABF3D6386B854B6A1 |

**22**  Message Thread 2 - Page 1 of 4





| 2021-01-04 14:48:58 PM | MD5 | C7FEA7F5455E3FFBECFDEE837B7A3CA0 |
|---|---|---|

**23** Message Thread 2 - Page 2 of 4 



| 2021-01-04 14:49:22 PM | MD5 | 6E55B9CA557FD20F22D9823C8B51E13C |

## 26  Message Thread 3 - Page 1 of 4





| 2021-01-04 14:50:08 PM | MD5 | 460F7DF8220A5D8E22AF8E83385D743E |
|---|---|---|

**27**   Message Thread 3 - Page 2 of 4   



| 2021-01-04 14:50:26 PM | MD5 | A6C32C92537E8D41E126A6010CE9D93C |
|---|---|---|

**28**  Message Thread 3 - Page 3 of 4





| 2021-01-04 14:50:44 PM | MD5 | 86B61F6E208F8E5BF8BD51B942B8E7B8 |

**29**  Message Thread 3 - Page 4 of 4



| 2021-01-04 14:50:52 PM | MD5 | F0F5DA3B74FD697737C9B086542D0754 |

**40** Message Thread 12 - Page 1 of 7 



| 2021-01-04 14:54:16 PM | MD5 | 1DA998D94C74B045DD36EEEBA5E8DF54 |

**41** Message Thread 12 - Page 2 of 7 



| 2021-01-04 14:54:38 PM | MD5 | 24DF1D41346681DA72DDDA99AC5B2352 |



**42**   Message Thread 12 - Page 3 of 7



| 2021-01-04 14:54:51 PM | MD5 | 7111EC7369C9405E415B1C797F104BA2 |

**43** Message Thread 12 - Page 4 of 7





| 2021-01-04 14:55:02 PM | MD5 | EE61C32C9A3D5F0BA9558B58B28168B6 |

**44** Message Thread 12 - Page 5 of 7 



| 2021-01-04 14:55:16 PM | MD5 | 97D7852CBA26BFEA8B982B0C51AEA68B |

**45** Message Thread 12 - Page 6 of 7 



| 2021-01-04 14:55:29 PM | MD5 | 2BD1B7A11C2E0D7163ACBDB7435B1786 |

**46** Message Thread 12 - Page 7 of 7 



| 2021-01-04 14:55:40 PM | MD5 | 5DFC0FD6E1812E8EB774B16DBE7ABFAB |
|---|---|---|

**47** Message Thread 13 - Page 1 of 11





| 2021-01-04 14:56:07 PM | MD5 | B2E1BF4806C851283E1240761FEBEAE1 |
| --- | --- | --- |

## 48  Message Thread 13 - Page 2 of 11





| 2021-01-04 14:56:47 PM | MD5 | 45B297A56BCDBDA00500B067C4C967DF |

**49**  Message Thread 13 - Page 3 of 11





| 2021-01-04 14:56:56 PM | MD5 | 6ED3692BA1912DA9CAB7185E0CF23F1E |

**50** Message Thread 13 - Page 4 of 11





| 2021-01-04 14:57:08 PM | MD5 | BB5685148A7403E5837F775C06AC26C3 |

**51** Message Thread 13 - Page 5 of 11 



| 2021-01-04 14:57:19 PM | MD5 | 832F0848C32FE23147C5E286473D6212 |

**52** Message Thread 13 - Page 6 of 11





| 2021-01-04 14:57:30 PM | MD5 | 819B497C1FD821668F2A30F489EC19E8 |
|---|---|---|

## 53  Message Thread 13 - Page 7 of 11





| 2021-01-04 14:57:43 PM | MD5 | CC3B58569E7BC203CF70852EEEC2737C |

**54**     Message Thread 13 - Page 8 of 11 



| 2021-01-04 14:57:54 PM | MD5 | 6FB5BF8BE62B8D7F0778FBE8087AF6CB |
|---|---|---|



**55** Message Thread 13 - Page 9 of 11



| 2021-01-04 14:58:07 PM | MD5 | 3F5E6DAAB2E8C3253339EDD49E3129DF |
|---|---|---|

**56**    Message Thread 13 - Page 10 of 11





| 2021-01-04 14:58:20 PM | MD5 | 3197544C76CF89DB5CA2075FB152C2CA |
|---|---|---|

**57** Message Thread 13 - Page 11 of 11





| 2021-01-04 14:58:37 PM | MD5 | 475CF771A4D626ACAAFE5DCC59693A34 |

**58** Message Thread 14 - Page 1 of 3 



| 2021-01-04 14:59:20 PM | MD5 | C79E3AE201D1945E5E473511E70F01F7 |

**59** Message Thread 14 - Page 2 of 3





| 2021-01-04 14:59:34 PM | MD5 | 62FB4A98F8F8B57D68B84C14C0E9297D |

**60**  Message Thread 14 - Page 3 of 3





| 2021-01-04 15:00:04 PM | MD5 | 5BC0BD529944A324F4422933B98B553A |



## 61   Message Thread 15 - Page 1



| 2021-01-04 15:01:00 PM | MD5 | 62D95FF0B1A7C3C4EA9F8306C9979A1C |

## 62 Message Thread 16 - Page 1 of 3





| 2021-01-04 15:01:30 PM | MD5 | D66E2C9E98F65BD1A7CA8F0EBEBB783F |

**65** Message Thread 17 - Page 1 of 4 



| 2021-01-04 15:02:20 PM | MD5 | 9A65D5241E87C3BF8FE45ADD079E3E28 |

**66**  **Message Thread 17 - Page 2 of 4**



2021-01-04 15:02:40 PM    MD5    349C4811A9288AA6F2B6F95A0639D53E

**71** Message Thread 19 - Page 1 of 12





| | | |
|---|---|---|
| 2021-01-04 15:05:49 PM | MD5 | 227553AFE21FC79D31A46DCE1CAB124C |

**72** Message Thread 19 - Page 2 of 12





| 2021-01-04 15:06:05 PM | MD5 | C17DB947362EED85B6FB51A01E859842 |

**73** Message Thread 19 - Page 3 of 12 



| 2021-01-04 15:06:18 PM | MD5 | 27DD1C1527E5449B46C9D7BC210AAF73 |
| --- | --- | --- |

**74** Message Thread 19 - Page 4 of 12 



| 2021-01-04 15:06:34 PM | MD5 | 342DAD1178418770D03CBAC8AED1676F |

## 75 Message Thread 19 - Page 5 of 12





| 2021-01-04 15:06:48 PM | MD5 | C2C38A94023B1B01104B86183984496E |

## 76  Message Thread 19 - Page 6 of 12





| 2021-01-04 15:07:04 PM | MD5 | 07AFF2D187F3CB894F18344D74D9D1B1 |

**77**    Message Thread 19 - Page 7 of 12    



| 2021-01-04 15:07:40 PM | MD5 | F51FF922CA12E860CDDB7215B17BB86C |

**78** Message Thread 19 - Page 8 of 12





| 2021-01-04 15:07:52 PM | MD5 | B43FD0ED882E2FF47EABD277B55D4810 |

**79**   Message Thread 19 - Page 9 of 12





| 2021-01-04 15:08:04 PM | MD5 | 9CCD98994491A0FAD258BB8ED483F596 |

**80** Message Thread 19 - Page 10 of 12





| 2021-01-04 15:08:16 PM | MD5 | ACA05DD198F79E1FDE80B360CC92C6D8 |

**81** Message Thread 19 - Page 11 of 12





| 2021-01-04 15:08:33 PM | MD5 | 20F237E4CB2B4ED6C3D13C07F10D5CBF |
|---|---|---|

## 82  Message Thread 19 - Page 12 of 12





| 2021-01-04 15:08:43 PM | MD5 | 7A9D1B3CEBC1BFAE151F01C775FB07F4 |

**87** Message Thread 21 - Page 1 



| 2021-01-04 15:10:56 PM | MD5 | BF8DD4731DE01789909E5D69257DF728 |
|---|---|---|

**88** Message Thread 22 - Page 1 of 26





| 2021-01-04 15:11:29 PM | MD5 | 6F6DBCD70F40CB1F3C5AF595B7845ADD |

**89** Message Thread 22 - Page 2 of 26





| 2021-01-04 15:11:45 PM | MD5 | FEB09365421934553FF6FB0184F64D4B |

**90** Message Thread 22 - Page 3 of 26 



| 2021-01-04 15:11:59 PM | MD5 | 03DD575BC74AE20418DE87FA81B0FD4A |

**91** Message Thread 22 - Page 4 of 26





| 2021-01-04 15:12:09 PM | MD5 | 833B3A11225C34E0A621789123D46FCF |
|---|---|---|

**92**  Message Thread 22 - Page 5 of 26





| 2021-01-04 15:12:22 PM | MD5 | 3BC8D693671FF86C7213C513FEB18B2A |
|---|---|---|

**93**  Message Thread 22 - Page 6 of 26  



| 2021-01-04 15:12:36 PM | MD5 | 6F4898E831B1307CDE61A40C84906B5A |
| --- | --- | --- |

**94** Message Thread 22 - Page 7 of 26 



| 2021-01-04 15:12:49 PM | MD5 | 2C459DF7D93D695E659EB08D64C0ACC8 |
|---|---|---|

**95** Message Thread 22 - Page 8 of 26





| 2021-01-04 15:13:04 PM | MD5 | D7E68B19742633447106F3AF73B5746D |



**96** Message Thread 22 - Page 9 of 26



| 2021-01-04 15:13:15 PM | MD5 | 274596019BD3DE3E832F487DD6279FEE |
| --- | --- | --- |

**97** Message Thread 22 - Page 10 of 26





| 2021-01-04 15:13:27 PM | MD5 | 96B8FF2329BBA1FA0BC6A60C222B2758 |

**98** Message Thread 22 - Page 11 of 26 



| 2021-01-04 15:13:37 PM | MD5 | 066C314A72F019E6981A6558624BF228 |

**99** Message Thread 22 - Page 12 of 26 



| 2021-01-04 15:13:49 PM | MD5 | 0178C2C0F54DF1E83851720930206C58 |

## 100 Message Thread 22 - Page 13 of 26





| 2021-01-04 15:14:01 PM | MD5 | C4F8C893100EC14A811A18D3EBBE64A4 |

**101** Message Thread 22 - Page 14 of 26 



| 2021-01-04 15:14:13 PM | MD5 | 8732D52168C579530572098065427882 |

**102** Message Thread 22 - Page 15 of 26 



| 2021-01-04 15:14:23 PM | MD5 | 874086D2CAB70D5444209564C9CAFE13 |

**103** Message Thread 22 - Page 16 of 26





| 2021-01-04 15:14:33 PM | MD5 | FA54A6C37D5CE733CD03C831482834B3 |

**104** Message Thread 22 - Page 17 of 26





| 2021-01-04 15:14:45 PM | MD5 | F201E193DEAD0974C6C311D9DDF0CF1B |

**105** Message Thread 22 - Page 18 of 26





| 2021-01-04 15:14:58 PM | MD5 | 0787719EF028FC601B3CABC91893177D |



**106** Message Thread 22 - Page 19 of 26



| 2021-01-04 15:15:09 PM | MD5 | 663C73E13D00CA870BDA9EE223425E63 |

**107** Message Thread 22 - Page 20 of 26





| 2021-01-04 15:15:20 PM | MD5 | 0837BB8C23C17CF3254D95BA464BE31D |

**108** Message Thread 22 - Page 21 of 26





| 2021-01-04 15:15:32 PM | MD5 | AEA0AE816C93A01985DB518F55171FD7 |

**109** Message Thread 22 - Page 22 of 26





| 2021-01-04 15:15:46 PM | MD5 | E79B668356B8A6CE4DE3D10E7940BFEF |
|---|---|---|

**110** Message Thread 22 - Page 23 of 26





| 2021-01-04 15:15:57 PM | MD5 | 8343D5508F1D138BA058F683864A7C02 |

**111** Message Thread 22 - Page 24 of 26





| 2021-01-04 15:16:08 PM | MD5 | F4FFA4DF4040CA2EDFF3CC718028A6F9 |



**112** Message Thread 22 - Page 25 of 26



| 2021-01-04 15:16:22 PM | MD5 | 4F9459EC1E570649CDFFF84E1D8DAFA0 |

**113** Message Thread 22 - Page 26 of 26 



| 2021-01-04 15:16:34 PM | MD5 | F6C36F54AAD37E88E63937D44D3502F9 |

**114** Message Thread 23 - Page 1 of 8 



| 2021-01-04 15:17:13 PM | MD5 | DAAA8635BF47DC58B949AD047DCF1045 |

**115** Message Thread 23 - Page 2 of 8 



| | | |
|---|---|---|
| 2021-01-04 15:17:29 PM | MD5 | 5A4943C9492EC261119DFB7961663666 |

**116** Message Thread 23 - Page 3 of 8 



| 2021-01-04 15:17:41 PM | MD5 | 883D29058BFD0E8C90E1B97CB9D464EC |
|---|---|---|

**117** Message Thread 23 - Page 4 of 8 



| 2021-01-04 15:18:04 PM | MD5 | 24B527EEE3BA5A900738E9A5EF5F85F0 |



**118** Message Thread 23 - Page 5 of 8



| 2021-01-04 15:18:23 PM | MD5 | C97EF06240A22BE8E6EB75DEB282A8BA |
|---|---|---|

**119** Message Thread 23 - Page 6 of 8



| 2021-01-04 15:19:07 PM | MD5 | 5C33FD5B363750B4DE3B3A9FB664509C |
|---|---|---|

**120** Message Thread 23 - Page 7 of 8





| 2021-01-04 15:19:38 PM | MD5 | 789641EA7DD8BFC19012040FEEC22D0D |

**121** Message Thread 23 - Page 8 of 8 



| 2021-01-04 15:19:58 PM | MD5 | 6E9CEC17BF33FD0C620B63738E857069 |

**122** Message Thread 24 - Page 1 of 20 



| 2021-01-04 15:20:29 PM | MD5 | 7BC8D205753B99B66D210F0EF059362A |
|---|---|---|

**123** Message Thread 24 - Page 2 of 20 



| 2021-01-04 15:20:44 PM | MD5 | 50247147B93738FCC7C9E40D26B14D54 |
|---|---|---|

**124** Message Thread 24 - Page 3 of 20 



| 2021-01-04 15:20:55 PM | MD5 | F159EEA887F7A53013C9420C145C2793 |

**125** Message Thread 24 - Page 4 of 20 



| 2021-01-04 15:21:06 PM | MD5 | 72E1A7D4C20D8FA7BC71CBE2E550AEA3 |

**126** Message Thread 24 - Page 5 of 20 



2021-01-04 15:21:15 PM        MD5        EFADB32326769BFFF33AF3B4FA98A53D



**127** Message Thread 24 - Page 6 of 20



| 2021-01-04 15:21:27 PM | MD5 | 495D1EABD508B2E130E7A51A60FA175D |

**128** Message Thread 24 - Page 7 of 20 



| 2021-01-04 15:21:42 PM | MD5 | DD362F477466AE015BB57C58F61323AC |

**129** Message Thread 24 - Page 8 of 20





| 2021-01-04 15:21:54 PM | MD5 | B5E94844EBFEAE6B854F826E56561D14 |

**130** Message Thread 24 - Page 9 of 20 



| | | |
|---|---|---|
| 2021-01-04 15:22:04 PM | MD5 | 28AFAC70A75EDB5EC3C2BBDFD3F650BA |

**131** Message Thread 24 - Page 10 of 20 



| 2021-01-04 15:22:19 PM | MD5 | 45BD5CBEEAAAC25CF0A7023E6D75F4BB |

**132** Message Thread 24 - Page 11 of 20





| | | |
|---|---|---|
| 2021-01-04 15:22:28 PM | MD5 | BC16D4339E8090E828A80BAE964B5820 |

**133** Message Thread 24 - Page 12 of 20 



| 2021-01-04 15:22:40 PM | MD5 | 960B3EB94F5B29796882308945C272F5 |



**134** Message Thread 24 - Page 13 of 20



| | | |
|---|---|---|
| 2021-01-04 15:22:54 PM | MD5 | 035878B408C316287DF22F3270179C5A |

**135** Message Thread 24 - Page 14 of 20 



| 2021-01-04 15:23:04 PM | MD5 | BC0288D1F0457E76EE826A225A9E5638 |
|---|---|---|

**136** Message Thread 24 - Page 15 of 20





| 2021-01-04 15:23:13 PM | MD5 | 82D8064ABFD7A96FCAE7E7862D67B969 |

**137** Message Thread 24 - Page 16 of 20 



| 2021-01-04 15:23:24 PM | MD5 | 75CA4AF2E95ACD1D7CEB8301965225A5 |

**138** Message Thread 24 - Page 17 of 20 



| 2021-01-04 15:23:39 PM | MD5 | FAEDD7866DEFF9BBFB674DC513BF0977 |

**139** Message Thread 24 - Page 18 of 20 



| 2021-01-04 15:24:03 PM | MD5 | 4B2524E334CB7BE1A5335DAB9603536F |
| --- | --- | --- |

**140** Message Thread 24 - Page 19 of 20





| 2021-01-04 15:24:19 PM | MD5 | 13668D3B1BEFF00921B2D1BBD592FE73 |

### 141 Message Thread 24 - Page 20 of 20





| 2021-01-04 15:24:31 PM | MD5 | C4183990DEBAB5FE8486138CDF6B8B14 |

## 146 Message Thread 26 - Page 1



2021-01-04 15:26:17 PM         MD5         BF6DD0937FDDD60951B252DB6EFFA9B7

**147** Message Thread 27 - Page 1



| 2021-01-04 15:26:29 PM | MD5 | E06689C933F3EAF3200DAF5F012CEE8E |

**148** Message Thread 28 - Page 1 of 2





| 2021-01-04 15:26:54 PM | MD5 | BCC40A9C57A4E1113D3074FE8E85C6BC |

**149** Message Thread 28 - Page 2 of 2 



| 2021-01-04 15:27:09 PM | MD5 | 76A14CC3341CC0840893A975B20B927E |

**153** Message Thread 30 - Page 1 



| 2021-01-04 15:28:52 PM | MD5 | AD1C00819FBFB81FAFC83D4C5AC11DC2 |

**154** Message Thread 31 - Page 1





| 2021-01-04 15:29:12 PM | MD5 | 296B5428283411723DEFF84D095C5034 |

**155** Message Thread 32 - Page 1 



| 2021-01-04 15:29:31 PM | MD5 | FA47C43804CC9CACF8116F90956E3BD4 |

**157** Message Thread 34 - Page 1 of 2 



| | | |
|---|---|---|
| 2021-01-04 15:30:38 PM | MD5 | 9EBBECC1394F7A5A1F4CFC57B1A89130 |

**158** Message Thread 34 - Page 2 of 2 



| 2021-01-04 15:30:58 PM | MD5 | 97CDC59A05605A13B32B1F4AF4B6282A |

**159** Message Thread 35 - Page 1 of 2





| 2021-01-04 15:31:28 PM | MD5 | 81E4A638438E4A997806C187110DD307 |



**160** Message Thread 35 - Page 2 of 2



| 2021-01-04 15:31:41 PM | MD5 | B372E749E3684F3C98A544B508372D2E |
|---|---|---|

**161** Message Thread 36 - Page 1 of 2





| 2021-01-05 07:22:01 AM | MD5 | BE05B22BEC85C8F6049B71BA6C8F30A4 |

**162** Message Thread 36 - Page 2 of 2 



| 2021-01-05 07:22:20 AM | MD5 | 4A1A71AD429141AE21808D89F30B53A1 |

**168** Message Thread 38 - Page 1





| 2021-01-05 07:24:07 AM | MD5 | 68E5DB10614623255E0867F8C4033DBB |
|---|---|---|

**169** Message Thread 39 - Page 1 of 9 



| 2021-01-05 07:24:45 AM | MD5 | E00AF76D1AFCEBB31C1A686EB4D7B49C |

**170** Message Thread 39 - Page 2 of 9 



| 2021-01-05 07:24:58 AM | MD5 | 07948DBDA4244B3305AA57DA7024FAA3 |

**171** Message Thread 39 - Page 3 of 9





| 2021-01-05 07:25:08 AM | MD5 | 1FF01A73BE8149FF86B6D0C5DD55D7DC |

**172** Message Thread 39 - Page 4 of 9 



| 2021-01-05 07:25:18 AM | MD5 | 670F43014484710DD6B82D2BD75010D7 |
|---|---|---|

**173** Message Thread 39 - Page 5 of 9



| 2021-01-05 07:25:28 AM | MD5 | 8DA8059287BCA792858BB35746C98CEA |

**174** Message Thread 39 - Page 6 of 9





2021-01-05 07:25:38 AM       MD5     1B137F7CBCC2C4EB40C4419A43336F68

**175** Message Thread 39 - Page 7 of 9 



| 2021-01-05 07:25:47 AM | MD5 | 0D2D34CA987C4EED2C7963FC2A03DADB |

**176** Message Thread 39 - Page 8 of 9





| 2021-01-05 07:25:56 AM | MD5 | 6B277C8B25CB066F90281E3880B8E0B6 |
|---|---|---|

**177** Message Thread 39 - Page 9 of 9





| 2021-01-05 07:26:07 AM | MD5 | A234C0D02E084715E00BE53E3FB67DBD |



**178** Message Thread 40 - Page 1



| 2021-01-05 07:26:29 AM | MD5 | D1BC7DD5D79D4C20399B3056B5928473 |

**179** Message Thread 41 - Page 1



| 2021-01-05 07:26:48 AM | MD5 | F8EF00B18271AFF1EBFBF527289904D8 |

**180** Message Thread 42 - Page 1





| 2021-01-05 07:27:00 AM | MD5 | C66083B60858EEB2888795289F5A882D |

**181**  Message Thread 43 - Page 1 of 3





| 2021-01-05 07:27:19 AM | MD5 | 6EEA94EB39C4D9C5A45B1C09C726DD3F |

**182** Message Thread 43 - Page 2 of 3





| | | |
|---|---|---|
| 2021-01-05 07:27:29 AM | MD5 | 939ABEAFBCDE191E7EBED8A652274FA8 |

**183** Message Thread 43 - Page 3 of 3 



| 2021-01-05 07:27:38 AM | MD5 | E3FFE935BCFD04E0C9BD559262E8D324 |

**184** Message Thread 44 - Page 1 of 18



2021-01-05 07:28:01 AM          MD5          90C2F7BC15F965DF07AAC0E315C27FFC

**185** Message Thread 44 - Page 2 of 18



| 2021-01-05 07:28:13 AM | MD5 | AC4F2EF38B0151D6BFEC403072651463 |

**186** Message Thread 44 - Page 3 of 18 



| 2021-01-05 07:28:22 AM | MD5 | E3653572BC0ACD31FAA54EBD68FC2549 |

Transcription of message thread:

+16467085712
~Indi Romero

8% and you cant buy 100k in cash if stuck you can fill rest with me good luck
NOW

6% as Max and I'll go and I'll do 100-150k before end of year
NOW

My friend try fill and rest i ll do 7 really updown sucks many time now cheap everyone is buyer unfortunately
NOW

Wait until market breaks down to $3200 everyone will panic sell
NOW

Lol

Than I'll lose also
NOW

Yeah
NOW

How much you can buy tomorrow ? Max

Signal message

**187** Message Thread 44 - Page 4 of 18



| 2021-01-05 07:28:35 AM | MD5 | D7DDC21F5FD1F6194A4FCC5FC98E7FCE |

**188** Message Thread 44 - Page 5 of 18



| 2021-01-05 07:28:46 AM | MD5 | 3D18837353B33874B91D5A3E38DF0515 |

**189** Message Thread 44 - Page 6 of 18



+16467085712
—Indi Romaro

We need to be in a place where I have my laptop working: my office is very secure: not to worry. I have 30 Employees. And I can do 6 max coinbase. Sorry.
NOW

Than for first transaction my max is 2 BTC and than we go further i ll need 1 hour to access my wallet for More.
NOW

We can meet in my office you can take all the time you need. I thought you wanted a big purchase why are you saying 2BTC?
NOW

Saftey lets say
NOW

I will have the cash with me!

40k USD
NOW

Who walk around meet someone with 30 btc lol

Signal message

| 2021-01-05 07:28:56 AM | MD5 | FDDEEEC8C179345756ADB6394546E97C |

**190** Message Thread 44 - Page 7 of 18



| 2021-01-05 07:29:28 AM | MD5 | 4332ADADE09BE9D65753F63D54082950 |

**191** Message Thread 44 - Page 8 of 18 



| 2021-01-05 07:29:40 AM | MD5 | 7513F7B58BEA9F517D9ED62B9DF92A92 |

**192** Message Thread 44 - Page 9 of 18 



| 2021-01-05 07:29:50 AM | MD5 | 6E04571F16DCE228107300C0DBCB006A |

**193** Message Thread 44 - Page 10 of 18



| 2021-01-05 07:30:00 AM | MD5 | 157291E8DD24C7D49B99292AEA352D1F |



**194** Message Thread 44 - Page 11 of 18



| 2021-01-05 07:30:22 AM | MD5 | F3A6688DA8D1F6BC8AB85DBF1CD608DC |
|---|---|---|

**195** Message Thread 44 - Page 12 of 18



| 2021-01-05 07:30:32 AM | MD5 | FB7004B40FFC26A728CAFDC65DBDECE1 |



**196** Message Thread 44 - Page 13 of 18



| 2021-01-05 07:30:41 AM | MD5 | 653FB95A5BE7F7BF75DD00EAF4B1B014 |

**197** Message Thread 44 - Page 14 of 18 



| 2021-01-05 07:30:52 AM | MD5 | FA65C81F810327826DFB693DE4A5A66D |
|---|---|---|

**198** Message Thread 44 - Page 15 of 18



**+16467085712**
~Indi Romero

**I understand. Sorry.**
NOW

No problem
NOW

WED, NOV 28, 2018

**Have 10 BTC let me know if interested ?**
NOW

**Appreciate you following up**

**Client wants to wait until price crashes again. Will message you the second he does want to buy**
NOW

How about if goes backup lol

Ok
NOW

**Then he will re-evaluate. He is a very big client of mine I do whatever he tells me**

**I promise you when he does buy**

Signal message

| 2021-01-05 07:31:01 AM | MD5 | C21D90578D52EE7715417BDCC381DDEE |

Case: 24-767, 06/24/2025, DktEntry: 76.1, Page 263 of 465
(263 of 465), Page 263 of 465
GA176

**199** Message Thread 44 - Page 16 of 18 



| 2021-01-05 07:31:10 AM | MD5 | 5C81154F2044E5DB44E0C49E9E69EAE2 |

**200** Message Thread 44 - Page 17 of 18 



| 2021-01-05 07:31:19 AM | | MD5 | 41E7BAD09A3EBD82872F96BFBFDBFB6A |
| --- | --- | --- | --- |

**201** Message Thread 44 - Page 18 of 18



2021-01-05 07:31:27 AM         MD5     B696C166C79913E91F09AC46CE5902C9

**205** Message Thread 46 - Page 1



| 2021-01-05 07:32:47 AM | MD5 | BC745B7F4FDFC276879CE12081737755 |



**206** Message Thread 47 - Page 1 of 10



| 2021-01-05 07:33:16 AM | MD5 | 3BC5369AD5BEF9F8E8F7684C5DEA2E44 |

**207** Message Thread 47 - Page 2 of 10 



| 2021-01-05 07:33:29 AM | MD5 | BB7159B3F0A797A7966A1CE75499286B |
|---|---|---|

**208** Message Thread 47 - Page 3 of 10 



| 2021-01-05 07:33:38 AM | MD5 | 98D532B51FBCFBDA14CDB5E2BD607267 |

**209** Message Thread 47 - Page 4 of 10 



| 2021-01-05 07:33:49 AM | MD5 | 01BAA585CCE1CB17C8129A0EF0DA1F44 |

**210** Message Thread 47 - Page 5 of 10 



| 2021-01-05 07:34:00 AM | MD5 | CDD39D0F41F61715A32CABBF863AAA12 |



**211** Message Thread 47 - Page 6 of 10



| 2021-01-05 07:34:16 AM | MD5 | 5FB71D0B99DBEBBAD1D891D1107BE2A5 |

**212** Message Thread 47 - Page 7 of 10





| 2021-01-05 07:34:25 AM | MD5 | D22C18911AB3D09A82F63F7471C75DD3 |

**213** Message Thread 47 - Page 8 of 10 



| 2021-01-05 07:34:40 AM | MD5 | 629C84D5B23ECB7056E8FC60B49D8074 |

**214** Message Thread 47 - Page 9 of 10





| 2021-01-05 07:34:52 AM | MD5 | 2B737515ED90C3E1AE82A11C41ADE01E |
|---|---|---|



**215** Message Thread 47 - Page 10 of 10



| 2021-01-05 07:35:06 AM | MD5 | 2773E1C57AEC2EEB0454EAB08CEBB5B9 |

**216** Message Thread 48 - Page 1 of 36



Long Branch NJ
+19294604045

Hello I saw your add on ibc

Are u available tonight ?
NOW

Buyer seller?
NOW

I do both but I would like to sell this time
NOW

How much
NOW

I am short funds for a another business arrangement and my usual buyer bailed on me last minute

Whatever is comfortable for u for the first transaction
NOW

Up to u
NOW

Where are located/ where de u wanna meet up?

Signal message

| 2021-01-05 07:35:38 AM | MD5 | 2B9A52E8BAE0C9A9C39C10DDFD415234 |

**217** Message Thread 48 - Page 2 of 36 



| 2021-01-05 07:35:51 AM | MD5 | D93AD6247BAC9BFF599EA41EE8A8B4E4 |

**218** Message Thread 48 - Page 3 of 36 



| 2021-01-05 07:36:05 AM | MD5 | 264B3CACDCC357631BEDAAE44893C08F |

**219** Message Thread 48 - Page 4 of 36





| 2021-01-05 07:36:16 AM | MD5 | 44A23BCF115B8FA4A394E83CF7BB71EE |

**220** Message Thread 48 - Page 5 of 36





| 2021-01-05 07:36:26 AM | MD5 | E787AFDEDD22FDF32C6C49544376014A |

**221** Message Thread 48 - Page 6 of 36 



| 2021-01-05 07:36:37 AM | MD5 | C0DF914A0484CC20C94FAA24D41FCC52 |

**222** Message Thread 48 - Page 7 of 36 



| 2021-01-05 07:36:48 AM | MD5 | 1B55E5524A4592E0982F844C2F563E7C |

**223** Message Thread 48 - Page 8 of 36





| 2021-01-05 07:36:57 AM | MD5 | E26FA1B9FA43C3473A6078ED8E4F023F |



**224** Message Thread 48 - Page 9 of 36



| 2021-01-05 07:37:11 AM | MD5 | 60CE43CD691FF42CC8891DE14D157A81 |

 **225** Message Thread 48 - Page 10 of 36 



| 2021-01-05 07:37:23 AM | MD5 | 813A8179D61E4C3C7AF20C2B2EEE2E61 |
|---|---|---|

**226** Message Thread 48 - Page 11 of 36 



| 2021-01-05 07:37:32 AM | MD5 | 5FEA0C7C207A62BD0CBECE7F8A09F504 |

**227** Message Thread 48 - Page 12 of 36 



| | | |
|---|---|---|
| 2021-01-05 07:37:41 AM | MD5 | 5E96D4A5C0A3AA1AE5C85DE568F7F2C8 |

**228** Message Thread 48 - Page 13 of 36





| 2021-01-05 07:37:51 AM | MD5 | 7D43F7C839270A0890C910B1F48709E3 |



## 229 Message Thread 48 - Page 14 of 36



| 2021-01-05 07:38:00 AM | MD5 | 727BFBBC3F87668F4962B1DEF735D517 |

**230** Message Thread 48 - Page 15 of 36 



| 2021-01-05 07:38:23 AM | MD5 | 76A78E7CE5A4D9DD368E38AC29D881DE |

**231** Message Thread 48 - Page 16 of 36 



| 2021-01-05 07:38:33 AM | MD5 | 763D95A4135C2A3B6045B968A6FF4493 |
|---|---|---|

**232** Message Thread 48 - Page 17 of 36 



| 2021-01-05 07:38:41 AM | MD5 | 1D8709CEE93CAD0F72E8C29B3789D59B |

**233** Message Thread 48 - Page 18 of 36





| 2021-01-05 07:38:55 AM | MD5 | 4CDB1F3ACEB07D5E3B735C023CDD75A6 |

**234** Message Thread 48 - Page 19 of 36





| 2021-01-05 07:39:07 AM | MD5 | E76A4DAD20F1D90050C7BB2D6C6B6584 |
|---|---|---|

**235** Message Thread 48 - Page 20 of 36



| 2021-01-05 07:39:17 AM | MD5 | 654173F8BAE02D1115B12101BF4117A8 |

**236** Message Thread 48 - Page 21 of 36 



| 2021-01-05 07:39:25 AM | MD5 | 57A7610899ECC62516FF41333616B249 |

**237** Message Thread 48 - Page 22 of 36 



| 2021-01-05 07:39:35 AM | MD5 | 90F34BD06D7FB0C34C0DB92EDC045CC2 |
|---|---|---|

**238** Message Thread 48 - Page 23 of 36 



| 2021-01-05 07:39:44 AM | MD5 | DFF0DC074E294143B9700539E5BF1189 |

**239** Message Thread 48 - Page 24 of 36 



| 2021-01-05 07:39:59 AM | MD5 | 45C1EBBAFBC56ADDB142E34D5A212D77 |
| --- | --- | --- |

**240** Message Thread 48 - Page 25 of 36





| 2021-01-05 07:40:11 AM | MD5 | A70B66B1ED4A276ACABF767712AFB8AA |

**241** Message Thread 48 - Page 26 of 36 



| 2021-01-05 07:40:29 AM | MD5 | 6B447F395CF52035B18B7E49434735D8 |

**242** Message Thread 48 - Page 27 of 36 



| Location | Price/BTC | Limits |
|---|---|---|
| Midtown, New York, NY, USA | 7,142.40 USD | 100 - 20,000 USD |
| Hoboken, NJ, USA | 6,953.93 USD | 500 - 9,000 USD |
| Hoboken, NJ, USA | 7,122.82 USD | At least 4000 USD |
| Fort Lee, NJ, USA | 7,570.66 USD | At least 100 USD |
| Wall St, New York, NY, USA | 7,142.40 USD | 100 - 9,999 USD |

| 2021-01-05 07:40:58 AM | MD5 | 969B0BBC86FCAE99E8080C3602130788 |
|---|---|---|

**243** Message Thread 48 - Page 28 of 36





| 2021-01-05 07:41:51 AM | MD5 | CE3FBC8466B082680FE681B2E1C82088 |

**244** Message Thread 48 - Page 29 of 36 



| 2021-01-05 07:42:02 AM | MD5 | D9644A2311EDE668F356F6CF33879839 |

**245** Message Thread 48 - Page 30 of 36 



| 2021-01-05 07:42:11 AM | MD5 | 5FA026B714125B1DBDC42279F5E673CC |

**246** Message Thread 48 - Page 31 of 36 



| 2021-01-05 07:42:20 AM | MD5 | 471CD0A9A849CEA5E6BA7CD1AD99F9F1 |

**247** Message Thread 48 - Page 32 of 36





| 2021-01-05 07:42:29 AM | MD5 | DC220EC59F0919E1485840038F072FC7 |

**248** Message Thread 48 - Page 33 of 36 



| 2021-01-05 07:42:50 AM | MD5 | 9314A8183FCE3DAA40CBE0C39D24CCB8 |

**249** Message Thread 48 - Page 34 of 36





| 2021-01-05 07:42:59 AM | MD5 | 113F09CB4604C542F376778DB9B02100 |

**250** Message Thread 48 - Page 35 of 36





2021-01-05 07:43:09 AM                 MD5        F743B039476FEC2E1A1E52D49A950360

**251** Message Thread 48 - Page 36 of 36 



| 2021-01-05 07:43:24 AM | MD5 | E30D3BAD3429E70109DD2A0B1B04A841 |

**252** Message Thread 49 - Page 1 of 7 



| 2021-01-05 07:43:45 AM | MD5 | 2DF329986CA206E5913567E26A7957C4 |

**253** Message Thread 49 - Page 2 of 7 



| 2021-01-05 07:43:58 AM | MD5 | 487C7B007E005573C249243B54D4582B |
|---|---|---|

**254** Message Thread 49 - Page 3 of 7 



| 2021-01-05 07:44:12 AM | MD5 | 3E64A5F89EFD04BC6B34B7675A9F1F16 |

**255** Message Thread 49 - Page 4 of 7 



| | |
|---|---|
| 2021-01-05 07:44:23 AM | MD5    E3BD84D7FC7D6EB273B4B836BBC5DF0A |

**256** Message Thread 49 - Page 5 of 7 



| 2021-01-05 07:44:34 AM | MD5 | A7C80CC5201F5B0680761BC128CFDC43 |

**257**  Message Thread 49 - Page 6 of 7  



| | | |
|---|---|---|
| 2021-01-05 07:44:46 AM | MD5 | C4394BED3E624F3619F9CF282102DF0D |

**258** Message Thread 49 - Page 7 of 7 



| 2021-01-05 07:45:02 AM | MD5 | A6082C34CF36C9C2ECF6F09ED28582AF |
|---|---|---|

**259** Message Thread 50 - Page 1 



| 2021-01-05 07:45:17 AM | MD5 | 193ADF3AABB86443ACBFBE96D01486B6 |

**260** Message Thread 51 - Page 1 of 3 



| 2021-01-05 07:45:50 AM | MD5 | 379D1DD1EA00E394ACD0A5D478208D09 |

**261** Message Thread 51 - Page 2 of 3





| 2021-01-05 07:46:02 AM | MD5 | 053B717749999C7971FA6E8ACA4325C4 |
|---|---|---|

**262** Message Thread 51 - Page 3 of 3 



| 2021-01-05 07:46:15 AM | MD5 | C21880F37AA4349597A80DCEC697AC25 |

**263** Message Thread 52 - Page 1 of 2 



| 2021-01-05 07:46:36 AM | MD5 | C9CB41ABC9967FF6F1064E6D11F56863 |

**264** Message Thread 52 - Page 2 of 2 



| 2021-01-05 07:46:46 AM | MD5 | EB899EBF5AA7556B7FC708DA6E725442 |
|---|---|---|

**270** Message Thread 54 - Page 1





| 2021-01-05 07:48:18 AM | MD5 | E7C612E61DECCB602426596DCA5E345B |

**271** Message Thread 55 - Page 1 of 4 



| 2021-01-05 07:48:36 AM | MD5 | 5D27440AAEDA4A1D95C23CEFE67B0B81 |

**272** Message Thread 55 - Page 2 of 4





| 2021-01-05 07:48:57 AM | MD5 | F4BC5C62A43263320469D6991D771D58 |

**273** Message Thread 55 - Page 3 of 4 



| 2021-01-05 07:49:17 AM | MD5 | B18107EFA517F92B3D06A4C4A6979260 |
|---|---|---|

**274** Message Thread 55 - Page 4 of 4 



| 2021-01-05 07:49:24 AM | MD5 | EBA615472B84D6D91975AAC481AD58A3 |

**275** Message Thread 56 - Page 1 



| 2021-01-05 07:49:39 AM | MD5 | 1DCC7B6B6476DE754C4D0F173B53E347 |

GA245

**276** Message Thread 57 - Page 1 



| 2021-01-05 07:49:55 AM | MD5 | 85C48FBCDDD7016AB20348E6A8ECDD1F |



**277** Message Thread 58 - Page 1 of 3



| 2021-01-05 07:50:10 AM | MD5 | C46C6B5D396A2E4905EEDA64DEF88C70 |

**278** Message Thread 58 - Page 2 of 3 



| | | |
|---|---|---|
| 2021-01-05 07:50:23 AM | MD5 | AA64ABD17B0831732901884CD9999E26 |

**279** Message Thread 58 - Page 3 of 3





| 2021-01-05 07:50:44 AM | MD5 | 95F024127ECAB7761CFA22CFE0C5A96C |
|---|---|---|

**280** Message Thread 59 - Page 1 of 4 



| 2021-01-05 07:51:07 AM | MD5 | 0709BEF7C8FEB781222EFE52E89FF848 |

**281** Message Thread 59 - Page 2 of 4 



| 2021-01-05 07:51:22 AM | MD5 | 5D6215386DEE7A97D897EA2C45AF6C3E |
|---|---|---|

**282** Message Thread 59 - Page 3 of 4 



| 2021-01-05 07:51:33 AM | MD5 | 156C1FF9F134162F61B829A1076FF50F |
|---|---|---|

**283** Message Thread 59 - Page 4 of 4 



| 2021-01-05 07:51:42 AM | | MD5 | 72A129F0F3C99E16671D177CC283614D |



**284** Message Thread 60 - Page 1 of 13



| 2021-01-05 07:52:06 AM | MD5 | 400AEA47E732EDF1B91929BEBBC0D871 |

**285** Message Thread 60 - Page 2 of 13 



| 2021-01-05 07:52:19 AM | MD5 | C8F2BF79B58BD3CDD92D4F0AA6DD0BD1 |

**286** Message Thread 60 - Page 3 of 13 



| 2021-01-05 07:52:30 AM | MD5 | B220B53B98B214D6DF04EB122CB35878 |
|---|---|---|

**287** Message Thread 60 - Page 4 of 13 



| 2021-01-05 07:52:39 AM | MD5 | ED6396AEA5787DE9B37C41E45A2D5CE1 |

**288** Message Thread 60 - Page 5 of 13





| 2021-01-05 07:52:50 AM | | MD5 | 084FCD7B82ECD893140756FE9E9DEB0C |
|---|---|---|---|

**289** Message Thread 60 - Page 6 of 13





| 2021-01-05 07:53:01 AM | MD5 | A324A167A8C59A671E7A34EC1EAC316E |

**290** Message Thread 60 - Page 7 of 13 



| 2021-01-05 07:53:10 AM | MD5 | 74E615FE859A97C69BD03A96615994E1 |
|---|---|---|



**291** Message Thread 60 - Page 8 of 13



| 2021-01-05 07:53:19 AM | MD5 | B64B3D63C7DB8F4596EB15EC90DB10DC |

**292** Message Thread 60 - Page 9 of 13 



| | | |
|---|---|---|
| 2021-01-05 07:53:28 AM | MD5 | EB70E50387ECBB54ECD5A7659CA06615 |

**293** Message Thread 60 - Page 10 of 13 



| 2021-01-05 07:53:37 AM | MD5 | 8CD045609EF352BF69870512583B4DD3 |

**294** Message Thread 60 - Page 11 of 13





| 2021-01-05 07:53:46 AM | MD5 | EC6B6089DEB02BA90E7215986B33041E |
|---|---|---|

**295** Message Thread 60 - Page 12 of 13 



| 2021-01-05 07:54:02 AM | MD5 | 394C76C8E8061A4B3D8A71808675CCD3 |

**296** Message Thread 60 - Page 13 of 13 



| 2021-01-05 07:54:14 AM | MD5 | 188BFAECBA5CF7100653D723246A1B9C |

**297** Message Thread 61 - Page 1 of 6 



| 2021-01-05 07:54:38 AM | MD5 | 0D1C1B7F6BB5179D25F2EB00FD12FAD6 |

**298** Message Thread 61 - Page 2 of 6 



| 2021-01-05 07:54:52 AM | MD5 | CDD2CA5D4A65747BC6FB844604F4DCA1 |

**299** Message Thread 61 - Page 3 of 6





| 2021-01-05 07:55:07 AM | MD5 | 4C79A5EEFC85A42322BDE514F06E5F4F |
| --- | --- | --- |

**300** Message Thread 61 - Page 4 of 6 



| 2021-01-05 07:55:25 AM | MD5 | 843FB589C8A199192242802C64720383 |

**301** Message Thread 61 - Page 5 of 6 



| 2021-01-05 07:55:36 AM | MD5 | 5B016DA6179A36CC191A39B205298787 |

**302** Message Thread 61 - Page 6 of 6 



| 2021-01-05 07:55:44 AM | MD5 | 0A5D6B42A850C6C6469D48608E9DE44E |

**303** Message Thread 62 - Page 1 of 9 



| 2021-01-05 07:56:08 AM | MD5 | 6DCBB1B540947893E16DCEBB510D0F5C |
|---|---|---|

**304** Message Thread 62 - Page 2 of 9 



| 2021-01-05 07:56:20 AM | MD5 | E8477A759312D727080D06A46B3A91F5 |

**305** Message Thread 62 - Page 3 of 9 



| 2021-01-05 07:56:30 AM | MD5 | 7CBC807525EC88256FCF4230EF291101 |

**306** Message Thread 62 - Page 4 of 9 



| 2021-01-05 07:56:42 AM | MD5 | 44F5BA4FFFD2CFE247658BA55445EA71 |

**307** Message Thread 62 - Page 5 of 9 



| 2021-01-05 07:56:50 AM | MD5 | B298CF04932DA3D702E03CAB9343960F |
|---|---|---|

**308** Message Thread 62 - Page 6 of 9





| 2021-01-05 07:57:01 AM | MD5 | E4127945527835316C5E61B76F557F00 |

**309** Message Thread 62 - Page 7 of 9





| 2021-01-05 07:57:12 AM | MD5 | 8B8A1E521D0E18414E7968FEEE2B5FBD |
|---|---|---|

**310** Message Thread 62 - Page 8 of 9





| 2021-01-05 07:57:27 AM | MD5 | 746801D252FBA8EF2E9B71FCFE0E63DD |
|---|---|---|

**311** Message Thread 62 - Page 9 of 9





| 2021-01-05 07:57:35 AM | MD5 | AA14960E8EE2918A7068A4D979F59AA1 |

**312** Message Thread 63 - Page 1 of 2 



| 2021-01-05 07:57:59 AM | MD5 | 4A64A85F34FBE9F6A73588A8A17B991D |
|---|---|---|

**313** Message Thread 63 - Page 2 of 2 



| 2021-01-05 07:58:09 AM | MD5 | 27627BD88A99F67D31C44C367A13A832 |

**314** Message Thread 64 - Page 1 



| 2021-01-05 07:58:52 AM | MD5 | 750EEDB837C38F43EC38F4D9B5FE859B |

**315** Message Thread 65 - Page 1 of 5 



| 2021-01-05 07:59:10 AM | MD5 | A16C72AB11AC9474BC1F5A0C720EA175 |

**316** Message Thread 65 - Page 2 of 5





| 2021-01-05 07:59:21 AM | MD5 | 7F3092F4D2D5FB1F1398D60BD3892E66 |
|---|---|---|

**317** Message Thread 65 - Page 3 of 5 



| 2021-01-05 07:59:32 AM | MD5 | 586DD2571B5B2AB8639F0FBDA2B9CFE3 |

**318** Message Thread 65 - Page 4 of 5 



| | | |
|---|---|---|
| 2021-01-05 07:59:41 AM | MD5 | E23BE268F8E61711713621147C819CB0 |

**319** Message Thread 65 - Page 5 of 5





| 2021-01-05 07:59:49 AM | MD5 | 94F0C9B38FEC1ABE48B754725E12232F |
| --- | --- | --- |

**320** Message Thread 66 - Page 1 of 2





| 2021-01-05 08:00:08 AM | MD5 | BD093865835DC497F265D7432EB88EA2 |

**321** Message Thread 66 - Page 2 of 2





| 2021-01-05 08:00:18 AM | MD5 | 8F1D5949CD353743FD2427CCFA3EECED |

**322** Message Thread 67 - Page 1 



| 2021-01-05 08:00:36 AM | MD5 | 78FEE6EECD8869DD153EA83063EECB5D |
|---|---|---|

**323** Message Thread 68 - Page 1 



| 2021-01-05 08:00:58 AM | MD5 | 2392A161E2EBA9C101AB4EF752515676 |



**324** Message Thread 69 - Page 1



2021-01-05 08:01:13 AM          MD5     53F7F453F71D0149737CA17F49685598



**325** Message Thread 70 - Page 1 of 9



| 2021-01-05 08:01:29 AM | MD5 | 8B18AE787379FECA1ADEFCF71650F4A2 |

## 326 Message Thread 70 - Page 2 of 9 



| 2021-01-05 08:01:40 AM | MD5 | 546DC7F8E7D47EEBDBB302A9BB79BE72 |

**327** Message Thread 70 - Page 3 of 9 



| 2021-01-05 08:01:52 AM | MD5 | 39F9DC0E883060DF04EFD66AF35B5D6A |
|---|---|---|

**328** Message Thread 70 - Page 4 of 9





| 2021-01-05 08:02:02 AM | MD5 | 7E0617C2DC5784353256EC73C3C19CB9 |
|---|---|---|



**329** Message Thread 70 - Page 5 of 9



| 2021-01-05 08:02:12 AM | | MD5 | C9FA20C2CD3C014837FAE17C04E7E888 |
| --- | --- | --- | --- |

**330** Message Thread 70 - Page 6 of 9





| 2021-01-05 08:02:37 AM | MD5 | 19F05C3F9D7564A97D584EDFAD40FED7 |
|---|---|---|

**331** Message Thread 70 - Page 7 of 9





2021-01-05 08:02:46 AM          MD5          EB8DF4712A2D046A78CE4E3E841DC409

**332** Message Thread 70 - Page 8 of 9 



| 2021-01-05 08:02:55 AM | MD5 | AB228417272F20C7832B141299FDA438 |
|---|---|---|

**333** Message Thread 70 - Page 9 of 9 



| 2021-01-05 08:03:04 AM | MD5 | 58CE21A350DBA8CA93160B35CFF4DA92 |

**334** Message Thread 71 - Page 1 of 65





| 2021-01-05 08:03:35 AM | MD5 | 4222E704B753EBB2613310ED7261B5FF |

**335** Message Thread 71 - Page 2 of 65



Kn Cinli
+19173611446

Okay. Where are you located? I'm looking to meet tomorrow
NOW

Queens

Sunnyside Starbucks
NOW

451 UNREAD MESSAGES

Okay. I will let you know. If you send me your btc address, I can prepare everything before I go
NOW

Qr code when meet
NOW

449 UNREAD MESSAGES

My wallet is on my laptop so if you send it here, I'd be able to input it. Or we could do it when we meet. Whichever is more comfortable with you

Signal message

| 2021-01-05 08:03:53 AM | MD5 | B97D98459950CA5DD7613E831424DABD |
|---|---|---|

**336** Message Thread 71 - Page 3 of 65 



| 2021-01-05 08:04:02 AM | MD5 | DE9AD53AAABF3CBACC32BF8DA0F4FEE9 |

**337** Message Thread 71 - Page 4 of 65 



2021-01-05 08:04:11 AM          MD5      83E8E80FBB559F9E402708C6BEDC648C



**338** Message Thread 71 - Page 5 of 65



| 2021-01-05 08:04:20 AM | MD5 | 8F6EEB59BDFFE44408181423FA8E810B |

**339** Message Thread 71 - Page 6 of 65





| 2021-01-05 08:04:30 AM | MD5 | 6386743F63C673411265A54510D7309E |

**340** Message Thread 71 - Page 7 of 65 



| 2021-01-05 08:04:40 AM | MD5 | 081C8F3D153499305BCC17D7A6445FCC |

**341** Message Thread 71 - Page 8 of 65 



| 2021-01-05 08:04:50 AM | | MD5 | 212F7FDE9EB77CE1FD1F6E782AD6D535 |

**342** Message Thread 71 - Page 9 of 65 



| 2021-01-05 08:05:00 AM | | MD5 | E3BB86D5204618D7D0B1A7A1F838AE4C |

**343** Message Thread 71 - Page 10 of 65 



| 2021-01-05 08:05:09 AM | MD5 | 255454289F23A2509F4FEEAAA6C751C4 |



**344** Message Thread 71 - Page 11 of 65



2021-01-05 08:05:18 AM          MD5          0BE121AF7913DC60C67C6375E7D16436

**345** Message Thread 71 - Page 12 of 65 



| 2021-01-05 08:05:38 AM | MD5 | 42199101C6252FA65BCCB4404B303553 |

**346** Message Thread 71 - Page 13 of 65 



| | | |
|---|---|---|
| 2021-01-05 08:05:47 AM | MD5 | 805AE74C7DAF69E0C9526B75D9B3E950 |

**347** Message Thread 71 - Page 14 of 65 



| 2021-01-05 08:06:00 AM | MD5 | 040D3F1ECD241B5E72076355EF56A5CA |

**348** Message Thread 71 - Page 15 of 65 



| 2021-01-05 08:06:09 AM | MD5 | 83FB3611807BDC4C233F386C5DA8E44B |

**349** Message Thread 71 - Page 16 of 65 



| 2021-01-05 08:06:18 AM | MD5 | 133D621FA3F6F75BE1835CF3B1F106D4 |

**350** Message Thread 71 - Page 17 of 65 



| 2021-01-05 08:06:31 AM | MD5 | 8A76EECA8002960A99C494C5D5851E34 |

**351** Message Thread 71 - Page 18 of 65 



2021-01-05 08:06:43 AM          MD5          0C33038D28F402BCAF1245E6A414D3A1

**352** Message Thread 71 - Page 19 of 65 



| 2021-01-05 08:07:01 AM | MD5 | 5ADD2C168A852A3491D383DD9889B652 |

**353** Message Thread 71 - Page 20 of 65 



| 2021-01-05 08:07:10 AM | | MD5 | 979241DB3972B72A85E9F2E17719BE50 |

**354** Message Thread 71 - Page 21 of 65 



| 2021-01-05 08:07:41 AM | MD5 | F97AE05ED34C3F82CE4592E747226FFD |

**355** Message Thread 71 - Page 22 of 65 



2021-01-05 08:07:50 AM · MD5 · 3834F942E962D4148C477EACFC6C5509

**356** Message Thread 71 - Page 23 of 65 



| | | |
|---|---|---|
| 2021-01-05 08:07:58 AM | MD5 | EFDA1CFC81B4DA7CEBB0958BD69C2E15 |

**357** Message Thread 71 - Page 24 of 65 



| 2021-01-05 08:08:17 AM | MD5 | 29127E03B3DAAD9E1305FAE52C39A3F9 |

**358** Message Thread 71 - Page 25 of 65 



2021-01-05 08:08:27 AM      MD5      40FD7FA33D3096D6EA9554204753F472

**359** Message Thread 71 - Page 26 of 65 



| 2021-01-05 08:08:43 AM | MD5 | E8DF2FB0BFBB73E495EDF490B50927D6 |

**360** Message Thread 71 - Page 27 of 65 



| 2021-01-05 08:08:54 AM | MD5 | B3C8F9682C5E1C321EF8ACA344C4A1C6 |

**361** Message Thread 71 - Page 28 of 65





| 2021-01-05 08:09:05 AM | MD5 | A0CBFF9E0D913EC267FD7BA1A6648D65 |

**362** Message Thread 71 - Page 29 of 65 



2021-01-05 08:09:17 AM          MD5          C6824A5ECFAFFC084743ABAE4C09470C

**363** Message Thread 71 - Page 30 of 65 



| 2021-01-05 08:09:27 AM | MD5 | 4161388E8C4AE635A9E810DFACB44669 |

**364** Message Thread 71 - Page 31 of 65





| 2021-01-05 08:09:39 AM | MD5 | E03A7D2DCBE72647A9C4724FE6FD38FA |

**365** Message Thread 71 - Page 32 of 65 



| 2021-01-05 08:09:59 AM | MD5 | 79E271167B4B7CE42DE0F47AA551CAD5 |

**366** Message Thread 71 - Page 33 of 65 



| 2021-01-05 08:10:17 AM | MD5 | BB53179A701482AFDB735E8294DF2AFE |

**367** Message Thread 71 - Page 34 of 65 



| 2021-01-05 08:10:29 AM | MD5 | 7682F9A90F210B6F00C84629E8CA066C |

**368** Message Thread 71 - Page 35 of 65 



| 2021-01-05 08:10:39 AM | MD5 | D0DA066447CB0C5C2452061FF6ACE761 |

**369** Message Thread 71 - Page 36 of 65 



| 2021-01-05 08:10:50 AM | MD5 | 4924642424FC4B900F4997483035B2F6 |

**370** Message Thread 71 - Page 37 of 65 



| | | |
|---|---|---|
| 2021-01-05 08:11:01 AM | MD5 | 529FB70B043E8D4BEEDC43C6DA930AFD |

**371** Message Thread 71 - Page 38 of 65 



| 2021-01-05 08:11:10 AM | MD5 | 464CC8BEDA74CEDFB50B52E07E6DFEF8 |

**372** Message Thread 71 - Page 39 of 65 



| 2021-01-05 08:11:23 AM | MD5 | 0E08D8E3369B8C789FFDC1E99AFD6BC3 |



**373** Message Thread 71 - Page 40 of 65



| 2021-01-05 08:11:33 AM | MD5 | 1BCCB03F4C77BA75E5A73465967D4D45 |

**374** Message Thread 71 - Page 41 of 65 



| 2021-01-05 08:11:41 AM | MD5 | 70079B4AAC6B136C332BE02719B07D40 |

**375** Message Thread 71 - Page 42 of 65 



2021-01-05 08:11:49 AM          MD5          AE54337D73D61753378BA152327BEE91

**376** Message Thread 71 - Page 43 of 65





| 2021-01-05 08:11:58 AM | MD5 | 8FF20AE4B4E8F402DA5AB82FCCF8129B |
| --- | --- | --- |

**377** Message Thread 71 - Page 44 of 65





| 2021-01-05 08:12:08 AM | MD5 | D264A4956F558F44453267FED3E7707E |

**378** Message Thread 71 - Page 45 of 65





| 2021-01-05 08:12:18 AM | MD5 | ACAC77D13E0F6C98668D73D0F99EC81C |
|---|---|---|

**379** Message Thread 71 - Page 46 of 65





| 2021-01-05 08:12:29 AM | MD5 | B2A6EF8E616BFAD2A422DA623A2C9B74 |

**380** Message Thread 71 - Page 47 of 65





2021-01-05 08:12:37 AM       MD5     B0003EB7F741B570182AAE24942D7C11

**381** Message Thread 71 - Page 48 of 65 



2021-01-05 08:12:45 AM     MD5     CD68C6373FBD6B0B9B06CB7D141A693D

**382** Message Thread 71 - Page 49 of 65 



| 2021-01-05 08:12:56 AM | MD5 | 2A70BFB118F345EE16D24BCE8ACD5D59 |



## 383 Message Thread 71 - Page 50 of 65



| 2021-01-05 08:13:05 AM | MD5 | 03766AE8B496833F0367677DB963D5CF |
|---|---|---|

**384** Message Thread 71 - Page 51 of 65 



| 2021-01-05 08:13:42 AM | MD5 | E0125C81EE7CEB84C163AAFE0C6A706B |

**385** Message Thread 71 - Page 52 of 65 



| 2021-01-05 08:13:53 AM | MD5 | C9BF169EEB68C47C3394FAF8FE3C8F05 |
|---|---|---|

**386** Message Thread 71 - Page 53 of 65 



| 2021-01-05 08:14:02 AM | MD5 | 408C81C7999361F4BB4F34193CE53E5B |

**387** Message Thread 71 - Page 54 of 65 



| 2021-01-05 08:14:19 AM | MD5 | 8B7EF2C9BFF307B224CBB0B79D83B3D6 |

**388** Message Thread 71 - Page 55 of 65





| 2021-01-05 08:14:27 AM | MD5 | 7DFA25EBC8EE1FC580BE0D1CC336EFFE |

**389** Message Thread 71 - Page 56 of 65





| 2021-01-05 08:14:44 AM | MD5 | DD65AC94FA944D59C1E27B9586B567B5 |

**390** Message Thread 71 - Page 57 of 65





| 2021-01-05 08:15:16 AM | MD5 | 9D6FD16717CA4EC741C2614A2FBDAD0B |

**391** Message Thread 71 - Page 58 of 65





| 2021-01-05 08:15:27 AM | MD5 | 3C7F6042F7BF207546634FD5D4452C4E |

**392** Message Thread 71 - Page 59 of 65 



| 2021-01-05 08:15:35 AM | MD5 | 8C1FCAEE4BE5300081FA15617C4E6140 |

**393** Message Thread 71 - Page 60 of 65 



| 2021-01-05 08:15:43 AM | MD5 | A42A8EA8E4C9D0E9E952B27EA4F7EF49 |

**394** Message Thread 71 - Page 61 of 65 



2021-01-05 08:15:53 AM          MD5      F3B3D87AB4E935456297332B43ACF86D

**395** Message Thread 71 - Page 62 of 65 



| 2021-01-05 08:16:02 AM | MD5 | 427A632C15BFEC4C596D067F94648FF5 |

**396** Message Thread 71 - Page 63 of 65





| 2021-01-05 08:16:15 AM | MD5 | DA4CAFDC68BFD6273ECA7F7524871B96 |

**397** Message Thread 71 - Page 64 of 65



Kn Cinli
+19173611446

Flyed away hope you have in hand i m
all cash
NOW

6 UNREAD MESSAGES

I don't understand?
NOW

I buy only BTC
NOW

4 UNREAD MESSAGES

Ok
NOW

Signal message

2021-01-05 08:16:23 AM          MD5          7D901B521BE1830889598786DD00933B

# mustangy

## Information on mustangy

**Trade volume**

0.5-1 BTC

**Number of confirmed trades**

2

…with **2 different partners**

**Feedback score**

100 %

**First purchase**

7 months, 1 week ago

**Account created**

1 year ago

**Last seen**

23 hours, 21 minutes ago

**Language**

English

GOVERNMENT
EXHIBIT

**401**

19 CR 386 (5-1) (PKC)

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCPOWD

GA368



**Email**

☑ Verified 1 year ago

**Phone number**

☑ Verified 1 year ago

**ID, Passport or Driver's license**

☑ Verified 1 year ago

**Trust**

Trusted by **1** person

**Blocks**

Blocked by **0** people

★ Trust mustangy

Please 👤 log in or ☑ sign up to give your trust to **mustangy**.

Signing up is free and takes only 30 seconds.

🏴 Report this user

## Buy bitcoins with cash from mustangy

| Seller | Distance | Location | Price/BTC | Limits |
|--------|----------|----------|-----------|--------|

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCPOWD

GA369

| | | | | | |
|---|---|---|---|---|---|
| mustangy (2; 100%) | 0 km | Midtown, New York, NY, USA | 7,274.45 USD | 100 - 20,000 USD | Buy |
| mustangy (2; 100%) | 0 km | Wall St, New York, NY, USA | 7,274.45 USD | 100 - 9,999 USD | Buy |

» Show all user's ads to buy bitcoins with cash

## Sell bitcoins for cash to mustangy

| Buyer | Distance | Location | Price/BTC | Limits | |
|---|---|---|---|---|---|
| mustangy (2; 100%) | 0 km | Jersey City, NJ, USA | 6,338.38 USD | 100 - 99,999 USD | Sell |
| mustangy (2; 100%) | 0 km | Manhattan, New York, NY, USA | 6,332.12 USD | 100 - 9,999 USD | Sell |
| mustangy (2; 100%) | 0 km | Sheepshead Bay, Brooklyn, NY, USA | 6,332.06 USD | 100 - 99,999 USD | Sell |
| mustangy (2; 100%) | 0 km | Atlantic City, NJ, USA | 6,184.45 USD | 200 - 29,999 USD | Sell |

» Show all user's ads to sell bitcoins for cash

## Feedback

Feedback left by users with noticeable trade volume.

May 24, 2018, 12:52 a.m.

Fast painless transaction. Pleasure to do business with.

Create PDF in your applications with the Pdfcrowd HTML to PDF API

PDFCPOWD

GA370

ABOUT
About us
Careers
Fees
Security bounties
Statistics
Terms of service
Privacy policy
SUPPORT
Contact support
FAQ
Guides
Forgot password
SERVICES
English
API documentation
LocalBitcoins ATM
Affiliate
Block Explorer
FOLLOW US
f    Facebook
Twitter
Instagram
Reddit
#    IRC
Blog
Chinese Blog

Create PDF in your applications with the Pdfcrowd HTML to PDF API    PDFCPOWD

GA371

 **Bank**
America's Most Convenient Bank®

E    STATEMENT OF ACCOUNT

MUSTANGY CORP USA
5030 39TH PL
SUNNYSIDE NY 11104-4103

| | |
|---|---|
| Page: | 1 of 7 |
| Statement Period: | May 01 2017-May 31 2017 |
| Cust Ref #: | |
| Primary Account #: | |



## TD Business Simple Checking

MUSTANGY CORP USA

Account # 428-3590440

### ACCOUNT SUMMARY

| | | | |
|---|---|---|---|
| Beginning Balance | 7,939.91 | Average Collected Balance | 6,305.81 |
| Electronic Deposits | 7,353.24 | Interest Earned This Period | 0.00 |
| | | Interest Paid Year-to-Date | 0.00 |
| Checks Paid | 2,966.50 | Annual Percentage Yield Earned | 0.00% |
| Electronic Payments | 7,251.57 | Days in Period | 31 |
| Other Withdrawals | 2,000.00 | | |
| Service Charges | 8.00 | | |
| Ending Balance | 3,067.08 | | |

### DAILY ACCOUNT ACTIVITY

#### Electronic Deposits

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/01 | ACH DEPOSIT, SQUARE INC 170429P2 L201200289333 | 389.00 |
| 05/02 | ACH DEPOSIT, AIRBNB PAYMENTS SIRX62SNDS G-TGQO5OSA6FLSU | 1,490.00 |
| 05/02 | ACH DEPOSIT, AIRBNB PAYMENTS T3FXZLUVJ4 G-ER2VZIB34UVJU | 218.00 |
| 05/03 | ACH DEPOSIT, SQUARE INC 170503P2 L201201209930 | 320.92 |
| 05/05 | ACH DEPOSIT, SQUARE INC 170505P2 L201201863622 | 641.84 |
| 05/08 | ACH DEPOSIT, AIRBNB PAYMENTS NRFJXMYTZ4 G-JZAEFVZAFXDM6 | 100.00 |
| 05/08 | ACH DEPOSIT, AMAZON ADJUSTMENT 99539142 | 86.00 |
| 05/09 | ACH DEPOSIT, SQUARE INC 170509P2 L201202893724 | 364.69 |
| 05/11 | ACH DEPOSIT, SQUARE INC 170511P2 L201203514568 | 380.21 |
| 05/12 | ACH DEPOSIT, SQUARE INC 170512P2 L201203894504 | 452.21 |
| 05/15 | ACH DEPOSIT, SQUARE INC 170513P2 L201204240297 | 379.27 |
| 05/16 | ACH DEPOSIT, AIRBNB PAYMENTS 5B4FUJF62J G-YP7QGM7RCBZL3 | 50.00 |
| 05/17 | ACH DEPOSIT, SQUARE INC 170517P2 L201205199951 | 116.70 |
| 05/18 | ACH DEPOSIT, SQUARE INC 170518P2 L201205518074 | 627.26 |
| 05/22 | ACH DEPOSIT, SQUARE INC 170520P2 L201206192884 | 641.84 |
| 05/23 | ACH DEPOSIT, AIRBNB PAYMENTS WVYUAZ3EFC G-WJJNWTFOFUTEN | 568.00 |
| 05/23 | ACH DEPOSIT, SQUARE INC 170523P2 L201206811592 | 160.46 |
| 05/25 | DEBIT CARD CREDIT, AUT 052517 VISA DDA REF SMARTTHINGS   6506008159  * CA 4085404016159331 | 89.10 |
| 05/30 | ACH DEPOSIT, AMAZON ADJUSTMENT 99283428 | 96.74 |
| 05/31 | ACH DEPOSIT, AIRBNB PAYMENTS HWNCRF4U2B G-6UXDYKNLNK52I | 181.00 |

Subtotal:    7,353.24

GOVERNMENT
EXHIBIT
**763**
19 CR 386 (S-1) (PKC)

Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

# How to Balance your Account

Page: 2 of 7

**Begin by adjusting your account register as follows:**

- Subtract any services charges shown on this statement.

- Subtract any automatic payments, transfers or other electronic withdrawals not previously recorded.

- Add any interest earned if you have an interest-bearing account.

- Add any automatic deposit or overdraft line of credit.

- Review all withdrawals shown on this statement and check them off in your account register.

- Follow instructions 2-5 to verify your ending account balance.

Your ending balance shown on this statement is:

List below the amount of deposits or credit transfers which do not appear on this statement. Total the deposits and enter on Line 2.

Subtotal by adding lines 1 and 2.

List below the total amount of withdrawals that do not appear on this statement. Total the withdrawals and enter on Line 4.

Subtract Line 4 from 3. This adjusted balance should equal your account balance.

| ❶ Ending Balance | 3,067.08 |
| ❷ Total Deposits | + |
| ❸ Sub Total | |
| ❹ Total Withdrawals | - |
| ❺ Adjusted Balance | |

| ❷ DEPOSITS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Deposits** | | ❷ |

| ❹ WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Withdrawals** | | ❹ |

**FOR CONSUMER ACCOUNTS ONLY — IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

If you need information about an electronic fund transfer or if you believe there is an error on your bank statement or receipt relating to an electronic fund transfer, telephone the bank immediately at the phone number listed on the front of your statement or write to:

**TD Bank, N.A., Deposit Operations Dept, P.O. Box 1377, Lewiston, Maine 04243-1377**

We must hear from you no later than sixty (60) calendar days after we sent you the first statement upon which the error or problem first appeared. When contacting the Bank, please explain as clearly as you can why you believe there is an error or why more information is needed. Please include:

- Your name and account number.
- A description of the error or transaction you are unsure about.
- The dollar amount and date of the suspected error.

When making a verbal inquiry, the Bank may ask that you send us your complaint in writing within ten (10) business days after the first telephone call.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error, so that you have the use of the money during the time it takes to complete our investigation.

**INTEREST NOTICE**

Total interest credited by the Bank to you this year will be reported by the Bank to the Internal Revenue Service and State tax authorities. The amount to be reported will be reported separately to you by the Bank.

**FOR CONSUMER LOAN ACCOUNTS ONLY — BILLING RIGHTS SUMMARY**

In case of Errors or Questions About Your Bill:

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at P.O. Box 1377, Lewiston, Maine 04243-1377 as soon as possible. We must hear from you no later than sixty (60) days after we sent you the FIRST bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

FINANCE CHARGES: Although the Bank uses the Daily Balance method to calculate the finance charge on your MoneyLine/Overdraft Protection account (the term "ODP" or "OD" refers to Overdraft Protection), the Bank discloses the Average Daily Balance on the periodic statement as an easier method for you to calculate the finance charge. The finance charge begins to accrue on the date advances and other debits are posted to your account and will continue until the balance has been paid in full. To compute the finance charge, multiply the Average Daily Balance times the Days in Period times the Daily Periodic Rate (as listed in the Account Summary section on the front of the statement). The Average Daily Balance is calculated by adding the balance for each day of the billing cycle, then dividing the total balance by the number of Days in the Billing Cycle. The daily balance is the balance for the day after advances have been added and payments or credits have been subtracted plus or minus any other adjustments that might have occurred that day. There is no grace period during which no finance charge accrues. Finance charge adjustments are included in your total finance charge.

GA373



America's Most Convenient Bank®

MUSTANGY CORP USA

STATEMENT OF ACCOUNT

| | |
|---|---|
| Page: | 3 of 7 |
| Statement Period: | May 01 2017-May 31 2017 |
| Cust Ref #: | |
| Primary Account #: | |

## DAILY ACCOUNT ACTIVITY

### Checks Paid          No. Checks: 2          *Indicates break in serial sequence or check processed electronically and listed under Electronic Payments

| DATE | SERIAL NO. | AMOUNT |
|---|---|---|
| 05/09 | 171 | 2,398.00 |
| 05/12 | 172 | 568.50 |
| | Subtotal: | 2,966.50 |

### Electronic Payments

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/01 | DEBIT POS, AUT 050117 DDA PURCHASE<br>COSTCO WHSE  0243      LONG ISLAND C * NY<br>4085404016159331 | 141.04 |
| 05/01 | DEBIT CARD PURCHASE, AUT 043017 VISA DDA PUR<br>AIRBNB  HM4DMD2FA3      415 800 5959  * CA<br>4085404016159331 | 29.00 |
| 05/01 | DEBIT POS, AUT 043017 DDA PURCHASE<br>GREEN POINT FARM        SUNNYSIDE    * NY<br>4085404016159331 | 23.91 |
| 05/01 | DEBIT CARD PURCHASE, AUT 042817 VISA DDA PUR<br>CITGO QUEENS BL FILL N    LONG ISLAND C * NY<br>4085404016159331 | 10.99 |
| 05/01 | DEBIT CARD PURCHASE, AUT 042817 VISA DDA PUR<br>IKEA LONG ISLAND        HICKSVILLE   * NY<br>4085404016159331 | 10.84 |
| 05/02 | DEBIT POS, AUT 050217 DDA PURCHASE<br>ASTORIA HI TEK         EAST ELMHURST * NY<br>4085404016159331 | 11.00 |
| 05/03 | NONTD ATM DEBIT, AUT 050317 DDA WITHDRAW<br>10 01 40TH AVENUE       LIC        * NY<br>4085404016159331 | 201.75 |
| 05/03 | DEBIT CARD PURCHASE, AUT 050217 VISA DDA PUR<br>BP 3034253GLV SERVICE IN    GREENVALE    * NY<br>4085404016159331 | 20.00 |
| 05/03 | NONTD ATM FEE | 3.00 |
| 05/04 | DEBIT CARD PURCHASE, AUT 050317 VISA DDA PUR<br>SPEEDWAY 07830        LONG ISLAND C * NY<br>4085404016159331 | 53.72 |
| 05/05 | DEBIT CARD PURCHASE, AUT 050317 VISA DDA PUR<br>DUNKIN 308598    Q35     GREENVALE   * NY<br>4085404016159331 | 4.38 |
| 05/08 | DEBIT POS, AUT 050717 DDA PURCHASE<br>STEVE S C TOWN         SUNNYSIDE    * NY<br>4085404016159331 | 24.36 |
| 05/08 | DEBIT CARD PURCHASE, AUT 050717 VISA DDA PUR<br>BLUE Z LIQUOR         SUNNYSIDE    * NY<br>4085404016159331 | 23.94 |
| 05/09 | DEBIT CARD PURCHASE, AUT 050717 VISA DDA PUR<br>GREEN POINT FARM      718 7845081 * NY<br>4085404016159331 | 14.35 |

Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

GA374



**America's Most Convenient Bank®**

STATEMENT OF ACCOUNT

MUSTANGY CORP USA

| | |
|---|---|
| Page: | 4 of 7 |
| Statement Period: | May 01 2017-May 31 2017 |
| Cust Ref #: | |
| Primary Account #: | |



---

**DAILY ACCOUNT ACTIVITY**

**Electronic Payments (continued)**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/09 | DEBIT CARD PURCHASE, AUT 050717 VISA DDA PUR CITGO QUEENS BL FILL N    LONG ISLAND C * NY 4085404016159331 | 10.99 |
| 05/10 | DEBIT CARD PURCHASE, AUT 050917 VISA DDA PUR AIRBNB   HMYH9WSQYY      415 800 5959 * CA 4085404016159331 | 71.00 |
| 05/10 | DEBIT CARD PURCHASE, AUT 050817 VISA DDA PUR SUNOCO 0297238800       UNION     * NJ 4085404016159331 | 36.81 |
| 05/10 | DEBIT POS, AUT 051017 DDA PURCHASE 7 ELEVEN         JAMAICA     * NY 4085404016159331 | 5.52 |
| 05/11 | DEBIT CARD PAYMENT, AUT 051017 VISA DDA PUR SMARTTHINGS        650 600 8159 * CA 4085404016159331 | 89.10 |
| 05/11 | DEBIT CARD PURCHASE, AUT 051017 VISA DDA PUR CROSS BAY CAR WASH  LUB   OZONE PARK  * NY 4085404016159331 | 11.00 |
| 05/12 | ELECTRONIC PMT-WEB, AMAZON MARKETPLA INTERNET 091000016995432 | 154.99 |
| 05/15 | eTransfer Debit, Online Xfer Transfer to CK 4283590416 | 1,346.09 |
| 05/15 | DEBIT POS, AUT 051317 DDA PURCHASE LOWERYS WFO        SUNNYSIDE   * NY 4085404016159331 | 124.08 |
| 05/15 | DEBIT CARD PURCHASE, AUT 051217 VISA DDA PUR SUNOCO 0368300001      E BRUNSWICK * NJ 4085404016159331 | 37.66 |
| 05/15 | DEBIT CARD PURCHASE, AUT 051317 VISA DDA PUR NYCDOT PARKING METERS   LONG IS CITY * NY 4085404016159331 | 1.00 |
| 05/16 | ELECTRONIC PMT-WEB, AMAZON MARKETPLA INTERNET 091000018286292 | 299.00 |
| 05/16 | ELECTRONIC PMT-WEB, AMAZON MARKETPLA INTERNET 091000018286294 | 147.61 |
| 05/16 | DEBIT CARD PURCHASE, AUT 051517 VISA DDA PUR CITGO QUEENS BL FILL N    LONG ISLAND C * NY 4085404016159331 | 10.99 |
| 05/18 | DEBIT CARD PURCHASE, AUT 051617 VISA DDA PUR EZPASS PREPAID TOLL     800 333 8655 * NY 4085404016159331 | 300.00 |
| 05/19 | TD ATM DEBIT, AUT 051917 DDA WITHDRAW 31 90 STEINWAY STREET     ASTORIA     * NY 4085404016159331 | 750.00 |

---

GA375





MUSTANGY CORP USA

| | |
|---|---|
| Page: | 5 of 7 |
| Statement Period: | May 01 2017-May 31 2017 |
| Cust Ref #: | |
| Primary Account #: | |

---

## DAILY ACCOUNT ACTIVITY

### Electronic Payments (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/19 | DEBIT POS, AUT 051917 DDA PURCHASE<br>STEVE S C TOWN        SUNNYSIDE    * NY<br>4085404016159331 | 21.84 |
| 05/22 | DEBIT POS, AUT 052117 DDA PURCHASE<br>MARSHALLS 71 COLLEGE P    SELDEN     * NY<br>4085404016159331 | 216.93 |
| 05/22 | DEBIT CARD PURCHASE, AUT 051917 VISA DDA PUR<br>CONCORD LIMOUSINE      718 965 6150 * NY<br>4085404016159331 | 116.38 |
| 05/22 | DEBIT POS, AUT 052017 DDA PURCHASE<br>THE HOME DEPOT  1255     LONG ISLAND C * NY<br>4085404016159331 | 33.21 |
| 05/22 | DEBIT CARD PURCHASE, AUT 051917 VISA DDA PUR<br>CITGO LONG ISLAND CITY    LONG ISLAND C * NY<br>4085404016159331 | 30.00 |
| 05/22 | DEBIT CARD PURCHASE, AUT 051917 VISA DDA PUR<br>21ST WASH AND LUBE      LONG ISLAND C * NY<br>4085404016159331 | 11.98 |
| 05/22 | DEBIT CARD PURCHASE, AUT 052017 VISA DDA PUR<br>STARBUCKS STORE 11764    NEW YORK    * NY<br>4085404016159331 | 7.12 |
| 05/23 | DEBIT CARD PURCHASE, AUT 052217 VISA DDA PUR<br>SPEEDWAY 07830       LONG ISLAND C * NY<br>4085404016159331 | 46.85 |
| 05/26 | eTransfer Debit, Online Xfer<br>Transfer to CK 4283590416 | 2,000.00 |
| 05/26 | DEBIT CARD PURCHASE, AUT 052517 VISA DDA PUR<br>ADRIA MOTORS AUTO REPA    LONG ISLAND C * NY<br>4085404016159331 | 217.75 |
| 05/26 | eTransfer Debit, Online Xfer<br>Transfer to CK 4283590416 | 105.00 |
| 05/26 | ELECTRONIC PMT-WEB, AMAZON INTERNET 091000012479904 | 56.33 |
| 05/26 | DEBIT POS, AUT 052617 DDA PURCHASE<br>SUNOCO 02671683      CORTLAND    * NY<br>4085404016159331 | 51.63 |
| 05/30 | DEBIT CARD PURCHASE, AUT 052917 VISA DDA PUR<br>TMOBILE POSTPAID WEB     800 937 8997 * WA<br>4085404016159331 | 163.15 |

GA376



**America's Most Convenient Bank®**

STATEMENT OF ACCOUNT

MUSTANGY CORP USA

| | |
|---|---|
| Page: | 6 of 7 |
| Statement Period: | May 01 2017-May 31 2017 |
| Cust Ref #: |  |
| Primary Account #: | |

## DAILY ACCOUNT ACTIVITY

### Electronic Payments (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/30 | DEBIT CARD PURCHASE, AUT 052517 VISA DDA PUR<br>TWC TIME WARNER NYC     718 358 0900 * NY<br>4085404016159331 | 89.98 |
| 05/30 | DEBIT POS, AUT 052917 DDA PURCHASE<br>LOWERYS WFO          SUNNYSIDE    * NY<br>4085404016159331 | 65.30 |
| 05/30 | ELECTRONIC PMT-WEB, COINBASE.COM/BTC 8003435845 Y20XRRMV | 50.00 |
| | Subtotal: | 7,251.57 |

### Other Withdrawals

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/10 | DEBIT | 2,000.00 |
| | Subtotal: | 2,000.00 |

### Service Charges

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/31 | MAINTENANCE FEE | 8.00 |
| | Subtotal: | 8.00 |

## DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 04/30 | 7,939.91 | 05/15 | 5,335.03 |
| 05/01 | 8,113.13 | 05/16 | 4,927.43 |
| 05/02 | 9,810.13 | 05/17 | 5,044.13 |
| 05/03 | 9,906.30 | 05/18 | 5,371.39 |
| 05/04 | 9,852.58 | 05/19 | 4,599.55 |
| 05/05 | 10,490.04 | 05/22 | 4,825.77 |
| 05/08 | 10,627.74 | 05/23 | 5,507.38 |
| 05/09 | 8,569.09 | 05/25 | 5,596.48 |
| 05/10 | 6,455.76 | 05/26 | 3,165.77 |
| 05/11 | 6,735.87 | 05/30 | 2,894.08 |
| 05/12 | 6,464.59 | 05/31 | 3,067.08 |

Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

GA377



America's Most Convenient Bank®

MUSTANGY CORP USA

STATEMENT OF ACCOUNT

| | |
|---|---|
| Page: | 7 of 7 |
| Statement Period: | May 01 2017-May 31 2017 |
| Cust Ref #: | |
| Primary Account #: | |





**#171**      05/09      $2,398.00

**#172**      05/12      $568.50

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

CAPTION:

UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE***

Docket Number(s): 24-747

v.

GOKLU

I, ___Wendell Bennett___, hereby certify under penalty of perjury that on
(print name)

___June 17, 2025___, I served two copies of ___the Government's Brief and Appendix,___
(date)

including compact disc that contains media files.
(list all documents)

by (select all applicable)**

☐ Hand/Personal Delivery    ☑ United States Mail    ☐ Federal Express or other Overnight Courier

☐ Commercial Carrier    ☐ E-mail (on consent)    ☐ Facsimile

on the following parties:

Matthew Brissenden, Matthew W. Brissenden, P.C. 666 Old Country Road Suite 501 Garden City, NY 11530

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

___6/17/2025___
Today's Date

___/s/___
Signature